**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JO ALLOWAY, DON BALDWIN, RICK BEA, JOANNE BENGIVENO, LARRY BERNSTEIN, GLEN BERRY, STEVE BOGGIO, BART BONIOL, ANTHONY BOZZO, RANDY BUSTILLOS, TONY CAINS, MARY CHASE, SHONA CHOUDHURY, MICHAEL CLARK, STEFAN COX, FRED CRAMTON, ADAM CSERNAY, FRED DAHLKE, JAMES DEVITA, LYNN DUFFY, JOSEPH DZIEMIANUK, BOB EDWARDS, SARAH EVANS, SUZANNE FRAZIER, ROY FREER, MARK HATCHER, MICHAEL HOERNER, BILL HOGGATT, MICHAEL HORSELY, TYRONE JULIAN, JOSEPH KELLY, GLEN KIEFER, KRISTINA KITTIDUMRONGKOOL, KEITH KITTIDUMRONGKOOL, PAMELA KLOSIEWSKI, JEFF LERNER, PETER MacCRACKEN, PAT MARINO, MIGUEL MARTINEZ, BARBARA MCBRIDE, MARK MEINHOFER, BRADY NELSON, GREG NICHOLS, PAUL NILSEN, BARBARA NUSS, PETER ORTEGA, GARY PAONE, DEBORAH PARLETTE, MARK PETERS, JIM REED, DAVID REESE, MARGIE RENSTROM, SAMI RICE, KEVIN SASS, MATTHEW SCHNEIDER, TRACY SCHNEIDER, KATHY SEGERS, MICHAEL SERIGNANO, SABRA SHAFER, KELLY SHANNON-CARR, KEN SNYDER, STEVEN SYLVESTER, THERESA SYNOL, TOM TANASE, DON TUTTLE, RICH VALENTINE, RICHARD VAN GILDER, DAN VAN WART, DAVID VAN WYK, JANICE WAITE, ANDREW WEIMER, RENEE WEST, ROBERT WINKLER, JAMES WOODWARD, and TERESA ZAWICKI-CHAPMAN,<br><br>                                    Plaintiffs,<br><br>         v.<br><br>BOWLERO CORP., AMF BOWLING CENTERS, INC., and BOWLMOR AMF CORP. aka BOWLERO CORP.,<br><br>                                    Defendants. | Index No. 24-cv-4738<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## **NATURE OF THE ACTION**

This is an action under the Age Discrimination in Employment Act seeking damages for 75 Plaintiffs whose employment was unlawfully terminated by Defendants because of their age or in retaliation for their opposition to the unlawful employment practices of Defendants. As alleged with greater particularity below, Defendants have engaged in planned and willful systemic conduct demonstrating a pattern or practice of (i) terminating the employment of persons age 40 and over (the protected age group or "PAG") for primarily customer-facing positions at their bowling centers nationwide, (ii) terminating the employment of persons who opposed such discriminatory actions, and (iii) engaging in hiring practices designed to preclude potential candidates in the PAG from securing employment, all in violation of federal anti-discrimination laws.  The Plaintiffs have suffered lost wages, pecuniary losses, and were subject to extreme emotional distress and suffering as a result of losing their employment and benefits at a late stage in life as a result of Defendants' discriminatory practices.

All 75 Plaintiffs filed Charges of Discrimination ('COD') with the United States Equal Employment Opportunity Commission ("EEOC").  The EEOC issued Letters of Determination ("LOD") in connection with 57 of the CODs.  In all 57 LODs the EEOC found reasonable cause that the Defendants violated federal anti-discrimination laws, with not one ruling in Defendants' favor on any of the 75 CODs, notwithstanding the Defendants' vigorous opposition to the CODs. The EEOC further rejected Defendants' assertions of untimely filings and waivers.

The EEOC commenced the statutory Conciliation process which Defendants rebuffed thereby terminating Conciliation.  After Defendants' refusal to engage in meaningful Conciliation with the EEOC, Plaintiffs' counsel requested that the EEOC issue Right to Sue letters for all of the Plaintiffs, which were provided.  Accordingly, all Plaintiffs have exhausted

their administrative remedies and have commenced this action in federal court to secure a judgment for their losses.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343.  This action is also authorized and instituted pursuant to Section 7(a) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(c) (the "ADEA"), This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII").  This action is also authorized and instituted pursuant to Section 10 of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

## PLAINTIFFS (75)

3.      Plaintiff Jo Alloway is a resident of the State of Colorado.   For 14 years, Ms. Alloway was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Alloway was 61 years old at the time her employment was terminated.

4.      Plaintiff Don Baldwin is a resident of the State of Wisconsin.  For 36 years, Mr. Baldwin was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Baldwin was 56 years old at the time his employment was terminated.

5.     Plaintiff Rick Bea is a resident of the State of California.  For 33 years, Mr. Bea was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Bea was 56 years old at the time his employment was terminated.

6.     Plaintiff Joanne Bengiveno is a resident of the State of California.  For 41 years, Ms. Bengiveno was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Bengiveno was 63 years old at the time her employment was terminated.

7.     Plaintiff Larry Bernstein is a resident of the State of New Jersey.  For 37 years, Mr. Bernstein was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Bernstein was 63 years old at the time his employment was terminated.

8.     Plaintiff Glen Berry is a resident of the State of Florida.  For 6 years, Mr. Berry was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Berry was 48 years old at the time his employment was terminated.

9.     Plaintiff Steve Boggio is a resident of the State of California.  For 7 years, Mr. Boggio was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Boggio was 46 years old at the time his employment was terminated.

10.     Plaintiff Bart Boniol is a resident of the State of Texas.  For 5 years, Mr. Boniol was employed by Defendants' predecessors and then briefly by Defendants until he was

unlawfully discharged by Defendants because of age. Mr. Boniol was 48 years old at the time his employment was terminated.

11.     Plaintiff Anthony Bozzo is a resident of the State of Florida. For 12 years, Mr. Bozzo was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age. Mr. Bozzo was 73 years old at the time his employment was terminated.

12.     Plaintiff Randy Bustillos is a resident of the State of California. For 4 years, Mr. Bustillos was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age. Mr. Bustillos was 51 years old at the time his employment was terminated.

13.     Plaintiff Tony Cains is a resident of the State of Georgia. For 5 years, Mr. Cains was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age. Mr. Cains was 59 years old at the time his employment was terminated.

14.     Plaintiff Mary Chase is a resident of the State of New York. For 34 years, Ms. Chase was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age. Ms. Chase was 60 years old at the time her employment was terminated.

15.     Plaintiff Shona Choudhury is a resident of the State of Maryland. For 8 years, Mr. Choudhury was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age. Mr. Choudhury was 52 years old at the time his employment was terminated.

16.     Plaintiff Michael Clark is a resident of the State of Wisconsin.  For 3 years, Mr. Clark was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Clark was 59 years old at the time his employment was terminated.

17.     Plaintiff Stefan Cox is a resident of the State of Texas.  For 22 years, Mr. Cox was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Cox was 45 years old at the time his employment was terminated.

18.     Plaintiff Fred Cramton is a resident of the State of Florida.  For 23 years, Mr. Cramton was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Cramton was 76 years old at the time his employment was terminated.

19.     Plaintiff Adam Csernay is a resident of the State of New York.  For 5 years, Mr. Csernay was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Csernay was 51 years old at the time his employment was terminated.

20.     Plaintiff Fred Dahlke is a resident of the State of Illinois.  For 16 years, Mr. Dahlke was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Dahlke was 59 years old at the time his employment was terminated.

21.     Plaintiff Joseph DeVita is a resident of the State of New York.  For 2Fd8 years, Mr. DeVita was employed by Defendants' predecessors and then briefly by Defendants until he

was unlawfully discharged by Defendants because of age.  Mr. DeVita was 57 years old at the time his employment was terminated.

22.     Plaintiff Lynn Duffy is a resident of the State of California.  For 10 years, Ms. Duffy was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Duffy was 56 years old at the time her employment was terminated

23.     Plaintiff Joseph Dziemianuk is a resident of the State of Florida. For 5 years, Mr. Dziemianuk was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Dziemianuk was 50 years old at the time his employment was terminated.

24.     Plaintiff Bob Edwards is a resident of the State of California.  For 40 years, Mr. Edwards was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Edwards was 58 years old at the time his employment was terminated.

25.     Plaintiff Sarah Evans is a resident of the State of Maryland.  For 6 years, Ms. Evans was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants in retaliation for her opposition to Defendants' discriminatory practices.  Ms. Evans was 38 years old at the time her employment was terminated.

26.     Plaintiff Suzanne Frazier is a resident of the State of Washington.  For 8 years, Ms. Frazier was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Frazier was 54 years old at the time her employment was terminated.

27.     Plaintiff Roy Freer is a resident of the State of New York.  For 8 years, Mr. Freer was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Freer was 46 years old at the time his employment was terminated.

28.     Plaintiff Mark Hatcher is a resident of the State of Virginia.  For 19 years, Mr. Hatcher was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Hatcher was 59 years old at the time his employment was terminated.

29.     Plaintiff Michael Hoerner is a resident of the State of New York. For 9 years, Mr. Hoerner was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Hoerner was 62 years old at the time his employment was terminated.

30.     Plaintiff Bill Hoggatt is a resident of the State of California. For 38 years, Mr. Hoggatt was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Hoggatt was 62 years old at the time his employment was terminated.

31.     Plaintiff Bill Horsely is a resident of the State of Arizona.  For 17 years, Mr. Horsely was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Horsely was 45 years old at the time his employment was terminated.

32.     Plaintiff Tyrone Julian is a resident of the State of California.  For 8 years, Mr. Julian was employed by Defendants' predecessors and then briefly by Defendants until he was

unlawfully discharged by Defendants because of age.  Mr. Julian was 48 years old at the time his employment was terminated.

33.     Plaintiff Joseph Kelly is a resident of the State of Pennsylvania.  For 26 years, Mr. Kelly was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Kelly was 53 years old at the time his employment was terminated.

34.     Plaintiff Glen Kiefer is a resident of the State of New York.  For 9 years, Mr. Kiefer was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Kiefer was 47 years old at the time his employment was terminated.

35.     Plaintiff Kristina Kittidumrongkool is a resident of the State of California.  For 4 years, Ms. Kittidumrongkool was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants in retaliation for her opposition to Defendants' discriminatory practices.  Ms. Kittidumrongkool was 32 years old at the time her employment was terminated.

36.     Plaintiff Keith Kittidumrongkool is a resident of the State of Colorado.  For 16 years, Mr. Kittidumrongkool was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Kittidumrongkool was 40 years old at the time his employment was terminated.

37.     Plaintiff Pamela Klosiewski is a resident of the State of Wisconsin. For 31 years, Ms. Klosiewski was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Klosiewski was 57 years old at the time her employment was terminated.

38.     Plaintiff Jeff Lerner is a resident of the State of California.  For 37 years, Mr. Lerner was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Lerner was 65 years old at the time his employment was terminated.

39.     Plaintiff Peter MacCracken is a resident of the State of New York.  For 18 years, Mr. MacCracken was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. MacCracken was 61 years old at the time his employment was terminated.

40.     Plaintiff Pat Marino is a resident of the State of New York.  For 9 year, Mr. Marino was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Marino was 64 years old at the time his employment was terminated.

41.     Plaintiff Miguel Martinez is a resident of the State of New York.  For 34 years, Mr. Martinez was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Martinez was 55 years old at the time his employment was terminated.

42.     Plaintiff Barbara McBride is a resident of the State of California.  For 8 years, Ms. McBride was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. McBride was 67 years old at the time her employment was terminated.

43.     Plaintiff Mark Meinhofer is a resident of the State of California.  For 6 years, Mr. Meinhofer was employed by Defendants' predecessors and then briefly by Defendants until he

was unlawfully discharged by Defendants.  Mr. Meinhofer was 41 years old at the time his employment was terminated.

44.     Plaintiff Brady Nelson is a resident of the State of Missouri.  For 14 years, Mr. Nelson was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Nelson was 41 years old at the time his employment was terminated.

45.     Plaintiff Greg Nichols is a resident of the State of New York.  For 14 years, Mr. Nichols was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Nichols was 41 years old at the time his employment was terminated.

46.      Plaintiff Paul Nilsen is a resident of the State of California.  For 5 years, Mr. Nilsen was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Nilsen was 57 years old at the time his employment was terminated.

47.     Plaintiff Barbara Nuss is a resident of the State of Arizona.  For 10 years, Ms. Nuss was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Nuss was 55 years old at the time her employment was terminated.

48.     Plaintiff Peter Ortega is a resident of the State of New York.  For 14 years, Mr. Ortega was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Ortega was 47 years old at the time his employment was terminated.

49.     Plaintiff Gary Paone is a resident of the State of Michigan.  For 16 years, Mr. Paone was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Paone was 56 years old at the time his employment was terminated.

50.     Plaintiff Deborah Parlette is a resident of the State of Maryland.  For 36 years, Ms. Parlette was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Parlette was 59 years old at the time her employment was terminated.

51.     Plaintiff Mark Peters is a resident of the State of Colorado.  For 2 years, Mr. Peters was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants in retaliation for his opposition to Defendants' discriminatory practices.  Mr. Peters was 35 years old at the time his employment was terminated.

52.     Plaintiff Jim Reed is a resident of the State of California.  For 5 years, Mr. Reed was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Reed was 66 years old at the time his employment was terminated.

53.     Plaintiff David Reese is a resident of the State of Arizona.  For 24 years, Mr. Reese was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Reese was 64 years old at the time his employment was terminated.

54.     Plaintiff Margie Renstrom is a resident of the State of Arizona.  For 21 years, Ms. Renstrom was employed by Defendants' predecessors and then briefly by Defendants until she

was unlawfully discharged by Defendants because of age.  Ms. Renstrom was 51 years old at the time her employment was terminated.

55.     Plaintiff Sami Rice is a resident of the State of California.  For 13 years, Ms. Rice was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Rice was 65 years old at the time her employment was terminated.

56.     Plaintiff Kevin Sass is a resident of the State of Pennsylvania. For 20 years, Mr. Sass was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Sass was 58 years old at the time his employment was terminated.

57.     Plaintiff Matthew Schneider is a resident of the State of Ohio.  For 25 years, Mr. Schneider was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Schneider was 47 years old at the time his employment was terminated.

58.     Plaintiff Tracy Schneider is a resident of the State of California.  For 31 years, Ms. Schneider was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Schneider was 58 years old at the time her employment was terminated.

59.     Plaintiff Kathy Segers is a resident of the State of Virginia.  For 24 years, Ms. Segers was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Segers was 55 years old at the time her employment was terminated.

60.     Plaintiff Michael Serignano is a resident of the State of New York.  For 27 years, Mr. Serignano was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Serignano was 58 years old at the time his employment was terminated.

61.     Plaintiff Sabra Shafer is a resident of the State of New York.  For 26 years, Ms. Shafer was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Shafer was 64 years old at the time her employment was terminated.

62.     Plaintiff Kelly Shannon-Carr is a resident of the State of Virginia.  For 2 years, Ms. Shannon-Carr was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants in retaliation for her opposition to Defendants' discriminatory practices.  Ms. Shannon-Carr was 32 years old at the time her employment was terminated.

63.     Plaintiff Ken Snyder is a resident of the State of California.  For 4 years, Mr. Synder was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Snyder was 43 years old at the time his employment was terminated.

64.     Plaintiff Steven Sylvester is a resident of the State of Connecticut.  For 34 years, Mr. Sylvester was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Sylvester was 55 years old at the time his employment was terminated.

65.     Plaintiff Theresa Synol is a resident of the State of Pennsylvania.  For 29 years, Ms. Synol was employed by Defendants' predecessors and then briefly by Defendants until she

was unlawfully discharged by Defendants because of age.  Ms. Synol was 61 years old at the time her employment was terminated.

66.     Plaintiff Tom Tanase is a resident of the State of Virginia.  For 22 years, Mr. Tanase was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Tanase was 61 years old at the time his employment was terminated.

67.     Plaintiff Don Tuttle is a resident of the State of Virginia.  For 3 years, Mr. Tuttle was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Tuttle was 50 years old at the time his employment was terminated.

68.     Plaintiff Rich Valentine is a resident of the State of Georgia.  For 40 years, Mr. Valentine was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Valentine was 67 years old at the time his employment was terminated.

69.     Plaintiff Richard Van Gilder is a resident of the State of Pennsylvania.  For 7 years, Mr. Van Gilder was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Van Gilder was 55 years old at the time his employment was terminated.

70.     Plaintiff Dan Van Wart is a resident of the State of Virginia.  For 28 years, Mr. Van Wart was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Van Wart was 61 years old at the time his employment was terminated.

71.     Plaintiff David Van Wyk is a resident of the State of Illinois.  For 20 years, Mr. Van Wyk was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Van Wyk was 53 years old at the time his employment was terminated.

72.     Plaintiff Janice Waite is a resident of the State of California.  For 32 years, Ms. Waite was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants because of age.  Ms. Waite was 54 years old at the time her employment was terminated.

73.     Plaintiff Andrew Weimer is a resident of the State of New York.   For 25 years, Mr. Weimer was employed by Defendants' predecessors and then briefly by Defendants until he unlawfully discharged by was because of age.  Mr. Weimer was 56 years old at the time his employment was terminated.

74.     Plaintiff Renee West is a resident of the State of Virginia.  For 2 years, Ms. West was employed by Defendants' until she was unlawfully discharged by Defendants in retaliation for opposing age discrimination.  Ms. West was 54 years old at the time her employment was terminated.

75.     Plaintiff Robert Winkler is a resident of the State of Colorado.  For 29 years, Mr. Winkler was employed by Defendants' predecessors and then briefly by Defendants until he was unlawfully discharged by Defendants because of age.  Mr. Winkler was 51 years old at the time his employment was terminated.

76.     Plaintiff James Woodward is a resident of the State of Georgia.  For 37 years, Mr. Woodward was employed by Defendants' predecessors and then briefly by Defendants until he

was unlawfully discharged by Defendants because of age.  Mr. Woodward was 59 years old at the time his employment was terminated.

77.     Plaintiff Teresa Zawicki-Chapman is a resident of the State of New York.  For 5 years, Ms. Zawicki-Chapman was employed by Defendants' predecessors and then briefly by Defendants until she was unlawfully discharged by Defendants in retaliation for her opposition to Defendants' discriminatory practices.  Ms. Zawicki-Chapman was 36 years old at the time her employment was terminated.

### **DEFENDANTS**

78.     Upon information and belief, Defendant Bowlero Corp. (formerly known as Bowlmor AMF Corp.) is a Delaware corporation having its principal executive offices at 7313 Bell Creek Road, Mechanicsville, Virginia 23111 ("Bowlero") and directly or indirectly employed the Plaintiffs.

79.     Upon information and belief, Defendant Bowlmor AMF Corp. is a Delaware corporation having its principal executive offices at 222 West 44th Street, New York, New York 10036 ("Bowlmor AMF") and directly or indirectly employed the Plaintiffs.

80.     Upon information and belief, AMF Bowling Centers, Inc. is a Virginia corporation owned and controlled by Bowlero and directly or indirectly employed the Plaintiffs.

81.     At all relevant times, Defendant Bowlero, and its wholly-owned subsidiaries, Defendant Bowlmor AMF Corp., and Defendant AMF Bowling Centers, Inc. (collectively, "Bowlero") have continuously been corporations doing business in the State of New York and at locations throughout the United States, and have each continuously had at least 15 employees.

82.     At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

83.     Defendants also operate as an integrated enterprise, or single employer, by virtue of: (1) their common management; (2) the interrelations between their operations; (3) the centralized control over their labor relations; and (4) their common ownership.

84.     According to the Defendants' Annual Report for fiscal year ended July 2, 2023 filed with the United States Securities and Exchange Commission (the "SEC") on Form 10-K ("Form 10-K"), "Bowlero Corp., is a Delaware corporation, and together with its subsidiaries (collectively, the "Company") is the world's largest operator of bowling entertainment centers." Within the United States, Bowlero operates 322 bowling centers in 34 states under different brand names.

85.     Bowlero's Form 10-K defines "we" as "Bowlero," and, without differentiating among its affiliates and subsidiaries, states that "[A]s of July 2, 2023, we employed approximately 10,083 employees, including approximately 9,611 in the operation of our centers and approximately 472 at the corporate level.

86.     Defendants share top officers and management.

87.     Defendants' unified headquarters in Mechanicsville, Virginia operates as the support center for Bowlero bowling centers nationwide.

88.     Defendants are jointly and severally liable for the discriminatory acts and claims asserted herein because all of the acts and failures to act alleged herein were duly performed by and attributable to each Defendant, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, and/or under the direction and control of

18

the other Defendants. Said acts and failures to act were within the scope of such agency and/or

employment, and each Defendant participated in, approved and/or ratified the unlawful acts and

omissions by Defendants complained of herein. Whenever and wherever reference is made in

this Complaint to any act by a Defendant, such allegations and reference shall also be deemed to

mean the acts and failures to act of all three of the Defendants acting individually, jointly, and/or

severally.

## **PROCEDURAL HISTORY**

89.     Commencing in November 2016, each of the 75 Plaintiffs, through counsel, have

filed with the EEOC, CODs against Defendants for age discrimination, retaliation for opposition

to discriminatory practices and/or discriminatory hiring practices based on age in violation of

ADEA.

90.     At filing the first COD in-person at the EEOC's Baltimore Office, Plaintiffs'

counsel shared with the EEOC investigator a detailed analysis of employees over the age of 40

that had been terminated shortly after the Defendants acquired 300 bowling centers once owned

by AMF and Brunswick. ("ADEA Analysis").  The ADEA Analysis reflected that 87% of all

managers located across the United States had been terminated and replaced.

91.     The rapid change-over of the newly-acquired traditional staid bowling centers

operated by AMF and Brunswick, into young, hip entertainment centers (discussed in greater

detail below) was the sole basis for the massive terminations of older employees and rehiring of

much younger replacements nationwide as evidenced in the ADEA Analysis.

92.     Recognizing that Plaintiffs' claims could evolve into a class-action-like

proceeding, the EEOC quickly classified Plaintiffs' claims as one national systemic investigation

against a common employer and required Plaintiffs' counsel to file all future CODs with the

EEOC's Baltimore, Maryland office versus in the other 18 EEOC regional state offices where the Plaintiffs reside.

93.     Until each Plaintiff met with Plaintiffs' counsel and reviewed the ADEA Analysis, Plaintiffs were misled into believing they were terminated for a variety of reasons - performance, a minor policy violation, the consolidations of districts, the elimination of a position, a decision to close a bowling center, not being the 'right fit' and the like.  None of the Plaintiffs had any knowledge that Defendants' explanation for their discharge was a pretext for age discrimination that was being conducted at Defendants' bowling centers across the country.

94.     Accordingly, in those instances where a Plaintiff filed a COD more than 180 days or 300 days from the date of termination (as prescribed on a state-by-state basis), the respective Plaintiff successfully plead and proved equitable tolling or equitable estoppel as a legal basis for filing the COD beyond the applicable period.

95.     The EEOC accepted all 75 CODs in the consolidated proceeding as timely filed.

96.     The EEOC also rejected Defendants' subsequent defenses that certain CODs were invalid because the Plaintiffs therein had signed waivers.   The EEOC rejected the Defendants' opposition on grounds that the waivers were not "knowingly and voluntarily" entered into and were therefore void.

97.     The EEOC then conducted an exhaustive 6-year investigation of Plaintiffs' CODs that was supplemented significantly by the investigation and fact-finding of Plaintiff's counsel, including nearly 300 interviews of party and non-party witnesses and the production of substantial documents in connection with its investigation of Plaintiffs' CODs.

98.     The sheer depth of compelling direct and indirect evidence showing unlawful employment practices by Defendants in the hiring and termination of employees based on age

20

that was uncovered in the EEOC's investigation of Plaintiff's CODs, prompted the EEOC to commence a second investigation, sua sponte, to address a much wider pool of employees and potential candidates for employment who may have been harmed by the Defendants' unlawful employment practices based on age ("Pattern or Practice Investigation")

99.     The EEOC's second Pattern or Practice Investigation also resulted in a determination of reasonable cause that the Defendants violated the ADEA.

100.     The EEOC has issued Letters of Determination ("LOD") finding reasonable cause of discrimination by Defendants in connection with 57 of the 75 CODs, with the remaining CODs still undecided at the time Plaintiffs' counsel requested Right to Sue letters for all 75 Plaintiffs.

101.     Not one COD was ruled in favor of the Defendants resulting in a 57-0 record at the filing of this lawsuit, as the Defendants conduct was that pervasive and obvious and grounded in fact with significant and compelling anecdotal and statistical evidence to support the CODs and the EEOC's unanimous rulings in favor of the Plaintiffs.

102.     The EEOC's representatives attempted to effect a voluntary settlement with Defendants in connection with Plaintiffs' CODs alleged herein, and to eliminate the unlawful employment practices alleged in connection with the EEOC's own Pattern or Practice Investigation, through informal methods of conciliation, which the Defendants refused to negotiate in good faith, notwithstanding offers by the Plaintiffs to resolve all CODs on reasonable terms.

103.     Earlier this year, after issuing LODs in the two most recent CODs filed by Plaintiffs Thomas Tanase and Fred Cramton, the EEOC graciously offered Defendants a second opportunity to resolve all Plaintiffs CODs and the Pattern or Practice Investigation in a new

Conciliation with the goal that the Defendants would come to grips with the unanimous adverse rulings attributable to its unlawful conduct and resolve all CODs and the Pattern & Practice Investigation without exposing Defendants' bad acts and flagrant and nationwide violation of federal anti-discrimination to public scrutiny from the filing of a federal lawsuit.

104.   The Defendants again refused to participate in Conciliation.  Defendants twice mislead Plaintiffs and the EEOC into believing Defendants had a sincere interest in resolving the CODs and the Pattern & Practice Investigations through requests for additional time to prepare for Conciliation meetings, which were merely delay tactics.

105.   There have been substantial delays since filing the CODs attributable to the pandemic, Defendants' continued abuse of EEOC filing deadlines and the Conciliation process, and the significant number of Plaintiffs' CODs, as well as the magnitude of two investigations vis-a-vis the limited resources of the already-burdened EEOC.  For this reason, counsel for Plaintiffs requested Right to Sue letters in connection with all 75 Plaintiffs to bring this matter forward in earnest and secure a judgment for the Plaintiffs.

## **THE FACTS**

106.   In 1997, current CEO and President of Bowlero, Tom Shannon ("Shannon"), owned and operated the original Bowlmor Lanes in Greenwich Village, NY.

107.   Shannon operated approximately 11 facilities in and around New York City that were reputed to be "hot spots" with bowling, special lighting to enhance the environment, music, arcade and video games, better food & beverage offerings all to appeal to 'date night' bowling to attract a much young consumer, versus the more staid league bowler who engaged in bowling as a sport.

108.    Shannon saw the opportunity to take his Bowlmor concept across the country and, using excessive amounts of private equity and banks loans, acquired in 2013 AMF Bowling out of its 2nd bankruptcy (which excessive leverage/debt placed on the business by private equity owners caused it to file for bankruptcy twice), and in 2014, he acquired Brunswick to became the largest operator of bowling centers in the United States operating as "Bowlmor AMF".  In or about 2014, Defendants launched the "Bowlmor" then the "Bowlero" concepts to replace the roughly 350 traditional bowling centers with hip new entertainment centers.

109.    Consistent with the company's culture, brand, and image, Defendants terminated the employment of its older employees who did not fit the new image of a Bowlero-branded bowling center with total disregard of federal anti-discrimination laws.

110.    On numerous occasions, bowling center managers were instructed by Defendants' top management to **"manage out"** older employees wherein Defendants' officials would harass and closely scrutinize such workers looking for purported pretextural justifications to discharge an employee they felt was too old in appearance to be part of the new Bowlero image.  Such conduct included unwarranted hostility, frequent criticism, unnecessary correction of employee's work, embarrassment and undermining the employee's authority and role vis-à-vis subordinates, as cited in very detail findings by the EEOC in numerous DOLs.

111.    In many instances, Plaintiffs were led to believe they were being terminated for a variety of reasons—allegations of performance, minor policy violations, the consolidations of districts, the elimination of a position, a decision to close a bowling center, an employee not being the 'right fit' and for a myriad of pre-textual reasons, and at times, no reason at all – just a cold, abrupt baseless termination when, in fact, such "reasons" were only a pre-text for terminating employees based on age.

112.     The Defendants' scheme to mask age discrimination as it converted its bowling centers was perpetuated by active and passive acts of its human resources department as directed by senior management.   The Plaintiffs' CODs reflect a pattern of papering over terminations that were pre-textual as confirmed in the CODs filed by former senior human resource Plaintiffs Shannon Carr and West, that were once employed by the Defendants and opposed its unlawful conduct.  In many cases, human resources' personnel outright refused to return phone calls to Plaintiffs who were terminated and confused as to the basis for their termination causing even more distress to the former employees.

113.     While Plaintiffs (employed at various locations across the country) may have been shocked or confused as to why their employment was terminated, notwithstanding their many years of success working diligently for AMF and Brunswick prior to their bowling centers being acquired by Defendants, each understood their termination to be isolated incidents.

114.     It was not until Plaintiffs' counsel agreed to investigate the termination of a childhood friend (whose credibility is beyond reproach) that the rampant scheme by Defendants--to terminate older employees as they began to convert traditional staid bowling centers into hip and cool Bowlmor (or Bowlero) entertainment centers designed to attract young consumers—was uncovered.

115.     The Defendants' pursuit of a multi-billion-dollar business plan when taken across the country far outweighed any potential penalties Defendants might pay for, or legal fees it might spend to defend, its unlawful conduct as a cost of doing business.

116.     By its own actions the Defendants confirmed this to be true as over the six-year investigation, it has ignored Plaintiffs' counsel, it has ignored the EEOC, and failed to timely file Position Statements in response to Plaintiffs' CODs requiring the EEOC to grant Defendants

24

numerous extensions of time to further defend the serious allegations Defendants have treated as trivial and a mere distraction.

117.    Had Plaintiffs' counsel not known Plaintiff Weimer and undertaken the ADEA Analysis, the Defendants would have "gotten away with" this unlawful scheme with impunity.

118.    For this reason, Defendants have tried to discredit and deter Plaintiffs' counsel from pursuing these claims by filing a frivolous complaint against him with the 9th Judicial Department and seeking sanctions in a state court matter for counsel's tenacity in pursuing these claims since 2016 which have left older workers unemployed, households in financial ruin, and leading some workers to mental breakdowns due to the stress.

119.    Defendants' unlawful conduct which it perceives as just a cost of doing business has cost Plaintiffs their livelihoods, their careers and subjected them to financial ruin and substantial emotional distress.

120.    Compelling statistics in support of the 75 Plaintiffs claims of age discrimination are summarized as follows:

**Average Years of Employment** – 18 years

**Average Age at Termination** – 54 years

**Average Annual Compensation** - $83,795.00

**Lost Wages (through June 30, 2024)** - $58,872,950.00 (including statutory compounding quarterly interest)

**Liquidated Damages (through June 30, 2024) -** $35,185,428.00 that Plaintiffs demand for the Defendants willful discriminatory conduct.

121.    The discrimination complained of was not limited to any specific bowling center nor was it restricted to any particular geographic district or region in which Defendants' operated

bowling centers.  Rather the discrimination complained of took place nationwide in a context of

pervasive age bias toward older workers with Plaintiffs residing in multiple states across the

country, as follows:

| State of Discharge | No. of Plaintiffs Discharged in that State |
| --- | --- |
| Arizona | 3 |
| California | 17 |
| Colorado | 4 |
| Connecticut | 1 |
| Florida | 4 |
| Georgia | 3 |
| Illinois | 2 |
| Maryland | 3 |
| Michigan | 1 |
| Missouri | 2 |
| New Jersey | 1 |
| New York | 15 |
| Pennsylvania | 3 |
| South Dakota | 1 |
| Texas | 4 |
| Virginia | 7 |
| Washington | 1 |
| Wisconsin | 3 |

## STATEMENT OF CLAIMS

122.     Plaintiff Jo Alloway was employed in the bowling industry for 14 years until she

was unlawfully discharged by the Defendants at the age of 61 years old.  Ms. Alloway filed a

COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a.   Ms. Alloway was employed by the Defendants as general manager at Defendants'
        Wheat Ridge, Colorado facility.

    b.   Ms. Alloway's employment began in July 2002 at an entry level after which she
        rapidly advanced to sales and operating positions and ultimately became a general
        manager. She was rewarded with increased responsibilities and compensation
        based on her favorable annual performance reviews. She worked approximately
        12 years for Brunswick, and for a brief period after it was acquired by
        Defendants. After it acquired Brunswick, Defendants imposed (without any
        training) "new" standard operating procedures to grade employee performance.
        All employees were made aware of company policies and disciplinary measures
        were in place to address any deficient conduct. The cost associated with the cited

violation was nominal and an isolated event and did not suggest any mismanagement.

c. Annually, Ms. Alloway received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d. Upon conducting a field audit, it was determined that Ms. Alloway's score was low and there was a citing of a snack bar employee consuming food at no charge. Prior to this audit, Jody Pastula, Regional VP, and Larry Ross, Senior VP, both advised Ms. Alloway on several occasions that she was doing a great job.  On October 23, 2015, Bowlmor executives, Robert Russell and Floyd Lindsey terminated her employment at the age of 61.

e. Ms. Alloway was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner.  She subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

f. After terminating Ms. Alloway, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Alloway had been performing.

g. As a result of being discharged after 14 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Alloway suddenly found herself in desperate financial straits, unable to find a job at age 61 causing emotional pain & suffering.

123.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Alloway filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Ms. Alloway to be discharged because of age in violation of the ADEA, that Ms. Alloway was discharged as part of a company-wide Pattern or Practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Ms. Alloway's discharge was a pretext for age discrimination.

124.    Plaintiff Donald Baldwin was employed in the bowling industry for 36 years when he was unlawfully discharged by the Defendants on July 3, 2014.  Mr. Baldwin was 56 years old at the time his employment was terminated.  Mr. Baldwin filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.   In 1978 Mr. Baldwin was initially employed as a general manager at a bowling center that would be later acquired by the Defendants.

    b.   In his 36-year career, Mr. Baldwin also held senior roles in food and beverage operations as a vice president.

    c.   Mr. Baldwin earned numerous awards for operating bowling centers profitably and for being consumer-friendly establishments.

    d.   Mr. Baldwin was also assigned to train new managers.

    e.   Annually, Mr. Baldwin received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    f.   In his final role before being terminated, Mr. Baldwin, was serving as a general manager of two bowling centers.

    g.   After the defendants purchased the bowling centers managed by Mr. Baldwin, a senior manager of the Defendants, Zac Sulma, contacted him to meet two days' later where Mr. Sulma advised Mr. Baldwin that his employment was terminated.

    h.   When Mr. Baldwin asked for an explanation to his termination, he was not given one.

    i.   When Mr. Baldwin inquired about positions openings in the company he was refused any consideration.

    j.   Two bowling centers in the area where Mr. Baldwin managed were assigned to two females in their early thirties, Jessie McNamara and Angela Lamb.

    k.   After Mr. Baldwin's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Baldwin had been performing.

    l.   As a result of being discharged after 36 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Baldwin suddenly found

himself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

125.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Baldwin filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Baldwin to be discharged because of age in violation of the ADEA, that Mr. Baldwin was discharged as part of a company-wide Pattern or Practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Mr. Baldwin's discharge was a pretext for age discrimination.

126.    Plaintiff Rick Bea was employed in the bowling industry for 33 years when he was unlawfully discharged by the Defendants at the age of 56 years old.  Mr. Bea filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  Mr. Bea's employment with Defendants began in March 1982, working for over 33 years consistently progressing to new and higher levels of responsibilities in marketing, operations, training and management of bowling centers and ultimately becoming a district manager.  Mr. Bea was the oldest of three regional district managers when his employment was terminated in March 2016 by senior vice president, Larry Ross. Because he desperately needed the position to support his family, when Bowlmor offered one month of severance, he advised that it was an unacceptable offer especially after 33 years of exceptional service. Heather Webb, a vice president in human resources contacted him the following day to advise that his severance would be increased to two months provided he execute the severance agreement within 24 hours.  Under severe pressure to support his family, he signed the agreement.

b.  Annually, Mr. Bea received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.  Mr. Bea was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner.

d. In March 2016, Defendants terminated Mr. Bea's employment because of his age. Mr. Bea was 56 years old at the time of his termination.

e. After terminating Mr. Bea, Defendants hired employees for its Murietta, California, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Bea had been performing.

f. As a result of being discharged after 33 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Bea suddenly found himself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

127.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Bea filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Bea to be discharged because of age in violation of the ADEA, that Mr. Bea was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Bea's discharge was a pretext for age discrimination.

128.    Plaintiff Joanne Bengiveno was employed in the bowling industry for 41 years when she was unlawfully discharged by the Defendants on July 12, 2013.  Ms. Bengiveno was 63 years old at the time her employment was terminated.  Ms. Bengiveno filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. On October 19, 1972, Ms. Bengiveno's employment began as a general manager.

b. Mr. Bengiveno successfully operated bowling centers for 40 years.

c. Annually, Ms. Bengiveno received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d. After the Defendants acquired the bowling center where Ms. Bengiveno worked, she was called into a meeting with her manager, Shawn Shuhnazi and a

representative of the Defendants' human resource department and advised that her employment was being terminated because 'she was not a good fit".

e. After Ms. Bengiveno's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Bengiveno had been performing.

f. As a result of being discharged after 41 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Bengiveno suddenly found herself in desperate financial straits, unable to find a job at age 63 causing emotional pain & suffering.

129.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Bengiveno filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence revealed there being three individuals all of whom were significantly younger than Ms. Bengiveno employed as General Managers following her discharge, Ms. Bengiveno's position had not been eliminated, and finding reasonable cause to believe that Defendants caused Ms. Bengiveno to be discharged because of age in violation of the ADEA, that Ms. Bengiveno was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA, and that Defendants' explanation for Ms. Bengiveno's discharge was a pretext for age discrimination.

130.    Plaintiff Larry Bernstein was employed in the bowling industry for 37 years when he was unlawfully discharged by the Defendants at 63 years old.  Mr. Bernstein filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. Mr. Bernstein's employment with Defendants' predecessor began in 1978.  He managed bowling centers until 1991 when he was promoted to a regional marketing manager working with four regional managers to oversee 24 bowling centers in seven states. In January 1998 this office was closed due to a company downsizing and he returned to managing a facility as its general manager. He had

worked for Brunswick for approximately 37 when Bowlmor purchased Brunswick.  From the 2014 acquisition to July 23, 2015, his center's financial performance increased.

b.  Annually, Mr. Bernstein received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.  On July 23, 2015, he was advised that he was terminated for not following an unspecified company policy against allowing free games of bowling.  Over the course of his career, the center used free games as a marketing promotion.  His experience and proven track record for excellence and overall financial performance were strong indicators that the discretion he exercised to promote our center was well within accepted company policy and certainly not grounds for termination.

d.  Mr. Bernstein was able to perform the duties of District Manager and, in fact, did perform those duties in a satisfactory manner.   He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

e.  On or about July 23, 2015, Defendants terminated Mr. Bernstein's employment because of his age.  Mr. Bernstein was 63 years old at the time of his termination.

f.  After terminating Mr. Bernstein, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Bernstein had been performing for that region.

g.  As a result of being discharged after 37 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Bernstein suddenly found himself in desperate financial straits, unable to find a job at age 63 causing emotional pain & suffering.

131.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Bernstein filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that Mr. Bernstein had no prior related disciplinary history and was replaced with someone significantly younger, and finding reasonable cause to believe that Defendants caused Mr. Bernstein to be discharged because of age in violation of the ADEA, that Mr. Bernstein was discharged as part of a company-wide

pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' reasons for terminating Mr. Bernstein was a pretext for age discrimination.

132.    Plaintiff Glen Berry was employed in the bowling industry for 6 years when he was unlawfully discharged by the Defendants on May 22, 2015.  Mr. Berry was 48 years old at the time his employment was terminated.  Mr. Berry filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

      a.  In March 3, 2009, Mr. Berry's employment began as a general manager of a bowling center in Alexandria, Virginia that would be later acquired by the Defendants.

      b.  Shortly thereafter, Mr. Berry was assigned a 2nd bowling center to manage in additional to Alexandria, VA, that was located in Annandale, VA.

      c.  Annually, Mr. Berry received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

      d.  In Mr. Berry's last review, he received the highest level of increase at 3% per annum.

      e.  Mr. Berry's employment was terminated based on the Defendants' representation that one of his bowling centers lost its lease.

      f.  Mr. Berry sought employment opportunities in the defendants' business that he was qualified for and was told 'we have nothing available for you."

      g.  As a result of being discharged after 6 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Berry suddenly found himself in financial straits, unable to find a job at age 48 causing emotional pain & suffering.

133.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Berry filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Mr Berry to be discharged because of age in violation of the ADEA.  Mr. Berry was discharged as

part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Berry was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Berry.

134.    Plaintiff Steve Boggio was employed in the bowling industry for 7 years when he was unlawfully discharged by the Defendants on March 12, 2014.  Mr. Boggio was 46 years old at the time his employment was terminated.  Mr. Boggio filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  Mr. Boggio's was initially employed as an assistant general manager that would be later acquired by the Defendants.

    b.  Mr. Boggio was then promoted to being a general manager of a bowling center.

    c.  At one time Mr. Boggio was managing 3 bowling centers and his compensation was increased from $45,000-$62,000 reflecting the significant responsibilities he undertook.

    d.  Annually, Mr. Boggio received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    e.  Once the Defendants acquired the bowling centers Mr. Boggio managed, he was placed under the supervision of a district manager, Nick Scaccio who immediately began a targeted campaign to 'manage out' Mr. Boggio.  His constant scrutiny, relentless challenges to even the smallest detail and issuing write-ups notwithstanding the successful operation and good financial standing of the bowling centers all created an objectively intolerable working environment.

    f.  At a meeting called by Mr. Scaccio, with another manager, Jeff Varney and Suzanne Brown, a senior member of the Defendants human resources department, Mr. Boggio's employment was terminated immediately.

    g.  Mr. Boggio was older in appearance, large in size and a homosexual who did not fit the new young, hip appearance the Defendants desired.

h.  After Mr. Boggio's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Boggio had been performing.

i.  As a result of being discharged after 7 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Boggio suddenly found himself in desperate financial straits, unable to find a job at age 46 causing emotional pain &suffering.

135.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Boggio filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Boggio to be discharged because of age in violation of the ADEA, that Mr. Boggio was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Boggio's discharge was a pretext for age discrimination.

136.  Plaintiff Bart Boniol was employed in the bowling industry for 5 years when he was unlawfully discharged by the Defendants on September 1, 2016.  Mr. Boniol was 48 years old at the time his employment was terminated.  Mr. Boniol filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  In 2011, Mr. Boniol's employment began as an assistant general manager working at the Garland, Texas bowling center that would be later acquired by the Defendants.

b.  Six months later, Mr. Boniol was then promoted to be a Food & Beverage Manager at a bowling center in Euless, Texas.

c.  Five months later, Mr. Boniol, was promoted to be a General Manager of a bowling center in Austin, Texas.

    d.   One year later the Austin, Texas bowling center was closed and Mr. Boniol was transferred back to the Garland, Texas bowling center as a General Manager.

    e.   Mr. Boniol had a good working relationship with his District Manager, Donnie Griffin.

    f.   While he was general manager, revenues increased in the bowling centers and his bowling center hosted the U.S. Open Bowling Competition.

    g.   Mr. Boniol earned an Eagle Club Award given to the managers of the Top 50 of the 350+ bowling centers operated by the Defendants that included a travel voucher for $2,000 and a restricted stock award of $20,000.

    h.   Annually, Mr. Boniol received positive annual performance reviews and never once was the subject of a disciplinary incident or write-up.

    i.   The defendants' CEO Tom Shannon visited his bowling center and thereafter Mr. Boniol's employment was terminated without reason.

    j.   The termination of his employment cancelled the travel voucher and stock awards Mr. Boniol earned based on his positive performance.

    k.   As a result of being discharged after 5 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Boniol suddenly found himself in desperate financial straits, unable to find a job at age 48 causing emotional pain & suffering.

137.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Boniol filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Mr Boniol to be discharged because of age in violation of the ADEA.  Mr. Boniol was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Boniol was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Boniol.

138.     Plaintiff Anthony Bozzo was employed in the bowling industry for 12 years when he was unlawfully discharged by the Defendants at the age of 73 years old.  Mr. Bozzo filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

  a.   Mr. Bozzo's employment with Defendant began at the Woodside Bowling Center in Queens, NY in September 2003 which was then owned by AMF.  He was 62 when hired by AMF, knew the game thoroughly, and had deep roots in the bowling community knowing many of the avid bowlers in the area.

  b.   In his capacity as a shift manager, all employees working at the bowling center reported to him. Mr. Bozzo took great pride in his work and loved his job as well as the wealth of relationships he had developed with league bowlers over the years.  At no time did he ever receive a poor performance evaluation nor was he ever written-up for inappropriate conduct or a decision made against company policy.

  a.   Annually, Mr. Bozzo received positive annual performance reviews and never once was the subject of a disciplinary incident or write-up.

  c.   In or about July 2013 AMF was acquired by Bowlmor and became known as Bowlmor AMF.  Prior to the acquisition, AMF encouraged employees to offer discount pricing for large groups so as to encourage repeat business. Shortly after the acquisition, however, Mr. Bozzo was terminated for not charging the full price for the rental of bowling shoes for a large party.

  d.   Mr. Bozzo learned later that a few weeks prior to his termination, District Manager Justin Hake and a senior executive of Bowlmor AMF, Josh Silverstein, visited the Queen's NY facility and saw Mr. Bozzo standing at the front desk. They then made it clear to Mr. Bozzo's general manager that Mr. Bozzo was to be terminated because he was too old and heavy-set to be representing the company at the front desk.  Mr. Bozzo later learned that Mr. Csernay's employment was terminated for his refusing to fire Mr. Bozzo.

  e.   Mr. Bozzo was able to perform the duties of Shift Manager and, in fact, did perform those duties in a satisfactory manner.   He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

  f.   On or about October 1, 2015, Defendants terminated Mr. Bozzo's employment because of his age.  Mr. Bozzo was 73 years old at the time of his termination.

g.   After terminating Mr. Bozzo, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Bozzo had been performing for that region.

h.   As a result of being discharged after 12 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Bozzo suddenly found himself in desperate financial straits, unable to find a job at age 73 causing emotional pain & suffering.

139.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Bozzo filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating that the evidence revealed that Area Manager Justin Hake in the presence of Vice President Josh Silverstein stated that Mr. Bozzo was "too old and had to go," and further pressured Mr. Bozzo's manager (Plaintiff Adam Csernay) to discharge Mr. Bozzo.  The evidence also revealed that Mr. Bozzo's actions were able to be approved by the manager on duty and were not generally conduct that resulted in discharge.  The EEOC found reasonable cause to believe that Defendants caused Mr. Bozzo to be discharged because of age in violation of the ADEA, that Mr. Bozzo was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for terminating Mr. Bozzo was a pretext for age discrimination.

140.   Plaintiff Randy Bustillos was employed in the bowling industry for 4 years until he was unlawfully discharged by the Defendants at the age of 51 years old.  Mr. Bustillos filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.   At all relevant times, Mr. Bustillos was employed by the Defendants as a district manager for all facilities in the Phoenix, Arizona region.

b.   Mr. Bustillos' employment with Defendants began on March 8, 2011, as a district manager for the Phoenix, Arizona-East market covering seven centers. Six months later he was promoted to district manager for all 14 Phoenix, AZ,

locations. He worked nearly four years for AMF, and for a brief period after it was acquired by Bowlmor. During that time, he not only received positive performance reviews from Jody Pastula, Regional VP, but his district progressed from being the worst performing district to a district performing in the top third of the company.

c.  In December 2013 Mr. Bustillo was offered a special bonus due to his positive job performance and in January 2014, he was promoted to a higher volume district in Northern California where he continued to receive positive performance reviews. In July 2014 he was promoted to regional VP for California and received a relocation package.

d.  Mr. Bustillos received positive performance reviews annually and never once was the subject of a disciplinary incident or write-up.

e.  In May 2015 his employment was terminated by Larry Ross, Senior VP.

f.  Defendants terminated Mr. Bustillos's employment because of his age.  Mr. Bustillos was 51 years old at the time of his termination.

g.  After terminating Mr. Bustillos, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Bustillos had been performing.

141.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Bustillos filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that senior management officials directed Mr. Bustillos to eliminate older, well performing employees who were deemed not to be a fit for the youthful image Defendants sought to project for Mr. Bustillos' locations; that Mr. Bustillos opposed the termination of older, qualified employees and advanced qualified applicants who did not satisfy Defendants' desire to employ workers with a youthful appearance; that after opposing Defendants' direction to follow discriminatory employment practices, Mr. Bustillos was discharged and that Defendants' explanation that Mr. Bustillos was discharged because his position had been eliminated is a pretext for Defendants' retaliatory practices

directed against other employees who oppose the Defendants' pattern or practice of age discrimination against older workers. The EEOC found reasonable cause to believe that Defendants caused Mr. Bustillos to be discharged in retaliation for engaging in a protected activity (opposition) in violation of the ADEA, that Mr. Bustillos was discharged as part of a company-wide pattern or practice of discharging employees who engaged in protected activity in violation of the ADEA.

142.   Plaintiff Tony Cains was employed in the bowling industry for 5 years when he was unlawfully discharged by Defendants at the age of 59 years old.  Mr. Cains filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

   a.   Mr. Cains' employment began in April 2008 as a mechanic for bowling centers. From the time his employment began with the company, he received excellent annual performance evaluations. He eventually became a Facilities Manager responsible for training and supervising 4 junior mechanics. Because of his experience and skill, he was relocated by the company from Atlanta to one of its best performing bowling centers in Anaheim, California.

   b.   Annually, Mr. Cains received positive performance reviews and never once was the subject of a disciplinary incident or write-up

   c.   After the acquisition by Bowlmor AMF, numerous changes were made to Mr. Cains' position, including a shift in his normal work hours and the manner in which he was treated. Shortly thereafter, he was abruptly told his position was terminated for no justifiable reason.

   d.   As a result of being discharged after 5 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Cains suddenly found himself in desperate financial straits, unable to find a job at age 59 causing emotional pain & suffering.

143.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Cains filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr.

Cains to be discharged because of age in violation of the ADEA, that Mr. Cains was discharged

as part of a company-wide pattern or practice of discharging employees because of their age, 40

years and older and that Defendants' explanation for Mr. Cains' discharge was a pretext for age

discrimination.

144.    Plaintiff Mary Chase was employed in the bowling industry for 34 years when she

was unlawfully discharged by Defendants at the age of 60 years old.  Ms. Chase filed a COD

with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a.  At all relevant times, Ms. Chase was employed by the Defendants as general
       manager at Defendants' Cheektowaga, New York facility.

    b.  Ms. Chase's 34-year career with Bowlmor began on August 1, 1981, in an entry
       level position from which she was promoted to a program director and on to
       general manager in December 1997.  For the next 18 years she successfully
       managed her bowling center and received positive performance reviews. On July
       11, 2014, after Bowlmor's acquisition of AMF, Tom Shannon, Chief Executive
       Officer, visited Ms. Chase's bowling center for a 15-minute meeting at which
       nothing was mentioned about her tenure, skills or performance. Later that month
       immediately following a national tournament that she personally brought to the
       Buffalo, NY, area, that increased revenues by 400% in each of three bowling
       centers, Ms. Chase was told she had to sign a Performance Improvement Plan
       (PIP) or resign from her job immediately. When she attempted to contact the HR
       department to question the PIP, none of her calls were returned. Two weeks later
       after following up with a letter, Ms. Chase was advised that her district manager
       decided to drop the issue.

    c.  On January 19, 2015, Ms. Chase was notified that the company was closing her
       center. She was not offered another position. When she contacted managers of
       other area centers to which she could relocate, she learned that senior
       management had issued instructions that she was not to be hired.   Additionally,
       she learned that the PIP she had signed nullified any bonuses she was to receive,
       including those based on the revenues from the national tournament.

    d.  Annually, Ms. Chase received positive performance reviews and never once was
       the subject of a disciplinary incident or write-up

    e.  Ms. Chase was able to perform the duties of general manager and, in fact, did
       perform those duties in a satisfactory manner.   She subsequently learned that
       Defendants used similar tactics as a pretext for discharging employees based on
       their age.

    f.    On or about January 19, 2015, Defendants terminated Ms. Chase's employment because of her age.  Ms. Chase was 60 years old at the time of her termination.

    g.    After terminating Ms. Chase, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Chase had been performing.

    h.    As a result of being discharged after 34 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Chase suddenly found herself in desperate financial straits, unable to find a job at age 60 causing emotional pain & suffering.

145.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Chase filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Ms. Chase's resignation and that [s]he was subject to disparate terms and conditions of employment due to [his] age.  The EEOC found reasonable cause to believe that Defendants caused Ms. Chase to be constructively discharged because of age in violation of the ADEA, and that Ms. Chase was constructively discharged and subjected to disparate terms and conditions of employment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

146.    Plaintiff Shona Choudhury was employed in the bowling industry for 8 years when he was unlawfully discharged by Defendants at the age of 52 years old.  Mr. Choudhury filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.    At all relevant times, Mr. Choudhury was employed by the Defendants as district manager for Defendants' Columbia, Maryland, facility.

b. Mr. Choudhury's employment with Defendants began in November 2006, working for nearly 8 years receiving consistent satisfactory performance reviews. Shortly before his termination, Mr. Choudhury was required to report directly to Vice President, Larry Ross. Mr. Ross repeatedly harassed Mr. Choudhury subjecting him to greater scrutiny unlike other district managers in the area. Mr. Choudhury was 52 years old when Larry Ross terminated him without a valid reason after many years of positive performance reviews

c. Annually, Ms. Choudhury received positive performance reviews and never once was the subject of a disciplinary incident or write-up

d. Mr. Choudhury was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner for many years.

e. In March 2014, Defendants terminated Mr. Choudhury's employment because of his age. Mr. Choudhury was 56 years old at the time of his termination.

f. After terminating Mr. Choudhury, Defendants hired employees for its Columbia, Maryland, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Choudhury had been performing.

g. As a result of being discharged after 8 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Choudhury suddenly found himself in desperate financial straits, unable to find a job at age 52 causing emotional pain & suffering.

147. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Mr. Choudhury filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Choudhury to be discharged because of age in violation of the ADEA, that Mr. Choudhury was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Choudhury's discharge was a pretext for age discrimination.

148.    Plaintiff Michael Clark was employed in the bowling industry for 3 years when he was unlawfully discharged by Defendants at the age of 59 years old.  Mr. Clark filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Mr. Clark's His employment began on August 16, 2010, as a general manager of an AMF bowling center where he worked for three years managing the center consistently and profitably. After AMF was acquired by Bowlmor, Tom Shannon, Chief Executive Officer, visited Mr. Clark's center very briefly.  Following Mr. Shannon's visit, Mr. Clark's district manager, Mr. Van Wyck, came to his center on September 11, 2013, to advise Mr. Clark that his employment was terminated immediately.

b.  Mr. Clark later learned that Bill Essex, a young man who had been bar manager at Mr. Clark's facility, became general manager.  Mr. Clark was forced to sign a waiver agreement, without which he was told he would not receive any monies that were owed to him by Bowlmor.

c.  Annually, Mr. Clark received positive performance reviews and never once was the subject of a disciplinary incident or write-up

d.  On or about September 11, 2013, Defendants terminated Mr. Clark's employment because of his age.  Mr. Clark was 51 years old at the time of his termination

e.  After terminating Mr. Clark, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Clark had been performing.

f.  As a result of being discharged after 3 years of dedicated service to Defendants, Mr. Clark suddenly found himself in desperate financial straits, unable to find a job at age 59 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

149.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Clark filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that Defendants did not discharge Mr. Clark due to any facility closing or position elimination.  Instead, Defendants' personnel including CEO Tom Shannon specifically targeted Mr. Clark for immediate discharge following

a site visit because Mr. Clark's physical appearance was deemed to be inconsistent with Defendants' age-discriminatory appearance standards and was replaced by a substantially younger employee.  The EEOC found reasonable cause to believe that Defendants caused Mr. Clark to be discharged because of age in violation of the ADEA, that Mr. Clark was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Mr. Clark's discharge was a pretext for age discrimination.

150.    Plaintiff Stefan Cox was employed in the bowling industry for 22 years when he was unlawfully discharged by the Defendants on July 20, 2015.  Mr. Cox was 45 years old at the time his employment was terminated.  Mr. Cox filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

   a.  Mr. Cox was initially employed on June 3, 1993 as a general manager in training at a bowling center that would be later acquired by the Defendants.

   b.  From 1994 to 2003 Mr. Cox served as a general manager for various bowling centers in Tennessee, Texas, California and Georgia.

   c.  During 1994 to 2003, Mr. Cox received four (4) Executive Awards for management excellence, which only the top 10-20% of managers are granted such an award annually.

   d.  From 2003-2011, Mr. Cox was assigned a more senior level position as National Marketing Manager.

   e.  From 2011 to 2015, Mr.  Cox was assigned a more senior level position as Director of Operations and District Manager in the Chicago, Illinois Region.

   f.  Annually, Mr. Cox received positive annual performance reviews and never once was the subject of a disciplinary incident or write-up.

   g.  After the Defendants acquired the bowling center, Mr. Cox was called into a meeting with a senior official of the Defendant, Mr. Darren Tipton and a human resource official, Bobbie Sherman and was advised his position was being eliminated.

h.  Mr. Cox sought employment in other open positions of which he was extremely qualified to fill and was denied even an interview.

i.  Mr. Cox was then replaced by a much younger employee who was 29 years old even though Mr. Cox was advised his position was eliminated, which it was not.

j.  As a result of being discharged after 22 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Cox suddenly found himself in desperate financial straits, unable to find a job at age 45 causing emotional pain & suffering.

151.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Cox filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LODs finding reasonable cause to believe that Defendants caused Mr. Cox to be discharged because of age in violation of the ADEA, that Mr. Cox was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Cox's discharge was a pretext for age discrimination.

152.  Plaintiff Fred Cramton was employed in the bowling industry for 23 years when he was unlawfully discharged by the Defendants on September 26, 2021.  Mr. Cramton was 76 years old at the time his employment was terminated.  Mr. Cramton filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  On February 13, 1999, Mr. Cramton was hired as a general manager for a bowling center owned by Bowl America that owned 16 bowling centers and would be later acquired by the Defendants.

b.  The bowling center Mr. Cramton oversaw was located in Jacksonville, Florida and was the most profitable bowling center based on lanes operated where we had 32 bowling lanes.

c.  Mr. Cramton achieved this level of success from 23 consistent years of dedicated services as a general manager working long hours including

evenings, weekends and holidays that created high customer loyalty and continued patronage of his bowling center.

d. When the Defendant was seeking to purchase the Bowl America business, several meetings took place and the Defendants senior vice-president, Larry Ross represented to several managers that the Defendants had no intention to close any of the Bowl American bowling centers.

e. Within weeks of dosing on the Bowl American acquisition, the Defendants immediately dosed 3 Bowl America bowling centers and terminated my position.

f. At a meeting to discuss Mr. Cramton's termination the Defendants representatives were dishonest just as they were dishonest about the plans to close bowling centers.   Mr. Cramton was 'told' that he was perceived to not be interested in working evenings and weekends and because of this his employment was terminated forthwith.

g. There was absolutely no merit to the statements made by the Defendants as Mr. Cramton never made them and from his past practice over 23 years as a general manager he always worked evenings and weekends as an accepted requirement of his job.

h. Annually, Mr. Cramton received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

i. After terminating Mr. Cramton Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Cramton had been performing.

j. As a result of being discharged after 23 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Cramton suddenly found himself in desperate financial straits, unable to find a job at age 76 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

153.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Cramton filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that Mr. Cramton's decision to

tender a resignation letter was made after he was expressly informed by Defendants that he was being discharged, that the adverse employment action was completed at the moment Mr. Cramton was advised of his discharge and that the resignation letter does not vitiate the Defendants' liability. The LOD further states that 'Mr. Cramton's decision to execute a resignation letter was not voluntary, as a reasonable person in like circumstances would have felt compelled to sign the letter in order to temporarily maintain their income and to avoid having their termination documented as a discharge', and that 'Defendants' actions took place in a context of **pervasive age bias toward older workers'** where Defendants' officials, like Mr. Ross, 'having direct or successively higher supervisory authority over Mr. Cramton's bowling center, frequently made age-biased remarks about older workers and stated a desire to hire younger workers.' The EEOC found reasonable cause to believe that Defendants caused Mr. Cramton to be discharged because of age in violation of the ADEA, that Mr. Cramton was discharged as part of a company-wide Pattern or Practice of discharging employees because of their age, and that Defendants' explanation for Mr. Cramton's discharge was a pretext for age discrimination.

154. Plaintiff Adam Csernay was employed in the bowling industry for 5 years when he was unlawfully discharged by the Defendants on July 6, 2015. Mr. Csernay was 51 years old at the time his employment was terminated. Mr. Csernay filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a. In April 2009, Mr. Csernay became an assistant general manager at one of the Defendants most prized locations at Chelsea Piers in New York City that would be later acquired by the Defendants.

    b. In April 2015, Mr. Csernay was promoted to general manager of a large bowling center in Woodside (Queens), New York that the Defendants upon acquiring the bowling center earmarked the location to become a new modern Bowlero bowling center.

c.  In a visit to the Woodside bowling center, Mr. Csernay's District Manager, Justin Hake along with a senior Vice President, Josh Silverstein asked to meet with Mr. Csernay.

d.  Messrs. Hake and Silverstein walked Ms. Csernay to an area of the bowling center where they could all look directly at the front desk where Plaintiff, Anthony Bozzo was siting and Mr. Hake asked Mr. Csernay "What is wrong with this picture?"

e.  Mr. Hake then asked Mr. Csernay another question, "when are you going to fire him?"  This was a director reference to Mr. Bozzo who was an older and large man.

f.  When the question was posed, both Messrs. Hake and Silverstein laughed in a direct and mocking manner at Mr. Bozzo, which Mr. Csernay took great offense.

g.  Mr. Csernay declined to terminate Mr. Bozzo citing his good performance, wealth of knowledge on the game of bowling and the bowling business.

h.  Shortly after this meeting, it was demanded of Mr. Csernay that he remove a tree that was on adjacent property owned by the City of New York.  Mr. Csernay found this request to be extraordinary especially after advising management that such removal of government property was subject to fines and jail for destroying government property.

i.  Shortly thereafter CEO Tom Shannon made an announced visit to meet Mr. Csernay on a day on which there happened to be a large event at the center. Because the person responsible for managing the event had called in sick that morning, Mr. Csernay had to assist in serving customers for the event.

j.  Citing Mr. Csernay's refusal to spend time with Mr. Shannon, Mr. Csernay's employment was terminated.

k.  Annually, Mr. Csernay received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

l.  After terminating Mr. Csernay, the Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Csernay had been performing.

m.  As a result of being discharged after 5 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Csernay suddenly found himself in desperate financial straits, unable to find a job at age 51 causing emotional pain & suffering.

155.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Csernay filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Csernay to be discharged because of age in violation of the ADEA, that Mr. Csernay was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Csernay's discharge was a pretext for age discrimination.

156.    Plaintiff Fred Dahlke was employed in the bowling industry for 16 years when he was unlawfully discharged by the Defendants on April 28, 2015.  Mr. Dahlke was 59 years old at the time his employment was terminated.  Mr. Dahlke filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

  a.  In 1999, Mr. Dahlke was hired as a general manager in a bowling center for a bowling company that would be later acquired by the Defendants.

  b.  In 2001, Mr. Dahlke was promoted to District Manager (Chicago area)

  c.  In 2001, Mr. Dahlke was asked to be GM of the largest bowling center in Illinois – Hoffman Lanes.

  d.  In 2009-2010, Mr. Dahlke was granted awards for High Customer Service.

  e.  In 2012, Mr. Dahlke was asked to become the General Manager of another bowling center needing senior management skills.

  f.  In 2013, Mr. Dahlke earned an award for being Executive of the Year.

  g.  In 2015, a small shortfall of $200.00 was identified for league prize money and notified his direct supervisor, Plaintiff, Stefan Cox, who advised him to notify the Defendants' League Banking Officials of the discrepancy and seek their assistance, which Mr. Dahlke complied.

h.  The bowling league having the prize money issue was one of the largest customers producing $20,000.00 in annual revenues for the bowling center and Mr. Dahlke wanted to be sure they received all prize money.

i.  As the league season was coming to an end requiring all the prize money to be turned over the Defendants League Banking Officials had not completed its review, Mr. Dahlke with full knowledge of his assistant manager, Chris Simonson, took a $200.00 deposit for a private party and allocated it to the bowling league shortfall so that the bowling league received all its funds when due, which it did.

j.  The private party was then held to everyone's satisfaction.

k.  On April 25, 2015, Mr. Dahlke met with company auditors to explain the details involving the bowling prize money without there being any question over misappropriation of any funds even as small as $200.00.

l.  On April 28, 2015, a member of the Defendants' human resources department terminated Mr. Dahlke's employment giving no reason.

m.  A senior executive Bobbie Sherman advised Mr. Dahlke privately that upper management did not believe Mr. Dahlke misappropriated any funds.

n.  Annually, Mr. Dahlke received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

o.  Mr. Dahlke was replaced by a young male Gus Kokonas who was 28 years old.

p.  After terminating Mr. Dahlke Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Horsley had been performing.

q.  As a result of being discharged after 16 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Dahlke suddenly found himself in desperate financial straits, unable to find a job at age 59 causing emotional pain & suffering.

157.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Dahlke filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr.

Dahlke to be discharged because of age in violation of the ADEA, that Mr. Dahlke was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Dahlke's discharge was a pretext for age discrimination.

158. Plaintiff Joseph DeVita was employed in the bowling industry for 28 years when he was unlawfully discharged by Defendants at the age of 57 years old. Mr. DeVita filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a. Mr. DeVita's employment with Bowlero began as a general manager of a bowling center in the New York City region. He then became the general manager of other bowling centers in the New York City region and at one point was acting district manager for Nassau County and Queens centers. Mr. DeVita was also the District TIPS Trainer and District ServSafe Trainer which meant he was responsible for training assistant managers, food & beverage managers, and new general managers in his district and several from around the northeast region. He worked approximately 28 years for AMF, and for a brief period after it was acquired by Bowlmor. At all times during his employment, his centers were among the highest volume centers in Bowlmor.

b. Toward the end of his employment, Mr. DeVita was required to work extra hours while management imposed additional pressures to perform that he believes now were intended to make him appear as if he were failing. In August 2013, Mr. DeVita's employment was terminated by new district manager, Roy Freer, and a local HR manager, Tim Walton, who advised that he was not following up fast enough on directions showing a "lack of respect" for his district manager.

c. Mr. DeVita was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner.

d. Annually, Mr. DeVita received positive performance reviews and never once was the subject of a disciplinary incident or write-up

e. In August 2013, Defendants discharged Mr. DeVita's employment because of his age through the company-wide policy of "managing out" whereby Defendants placed such additional burdens on their duties, wrongly accused them of bad conduct, or imposed upon them unreasonable schedules that would provide management with "justification" to terminate their employment. Mr. DeVita was 57 years old at the time he was constructively terminated.

    f.   After terminating Mr. DeVita, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. DeVita had been performing.

    g.   As a result of being discharged after 28 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. DeVita suddenly found himself in desperate financial straits, unable to find a job at age 57 causing emotional pain & suffering.

159.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. DeVita filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed Mr DeVita's district manager was directed to find reason to justify the discharge of Mr. DeVita because he was not a fit for Defendants' plans for his bowling location and finding reasonable cause to believe that Defendants caused Mr. DeVita to be discharged because of age in violation of the ADEA, that Mr. DeVita was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. DeVita's discharge was a pretext for age discrimination.

160.    Plaintiff Lynn Duffy was employed in the bowling industry for 10 years when she was unlawfully discharged by the Defendants on July 1, 2015.  Ms. Duffy was 56 years old at the time her employment was terminated.  Ms. Duffy filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.   Ms. Duffy was initially employed on an hourly basis in a food and beverage capacity serving customers at a bowling center that would be later acquired by the Defendants.

    b.   In time Ms. Duffy was promoted and given much higher compensation and several persons reporting to her.

c. Annually, Ms. Duffy received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d. After the Defendants acquired the bowling center where Ms. Duffy worked: i) her weekly works were substantially reduced from 32 hours or more, to even as low as 4 hours per week, ii) she was removed from the hourly work schedule and forced to call in to learn her scheduled hours, iv) when calling in she was often placed on hold for 15-20 minutes; v) the Defendants assigned her to work a shift with no advance notice to Ms. Duffy; vi) excluded from group texts that involved work for parties and events and paid favorable tips.

e. When Ms. Duffy did not report to work for a shift she was never notified of, the defendants terminated her employment.

f. Ms. Duffy came to learn a young exotic dancer was one of the persons that replaced her, and who had been found to be intoxicated while employed and allowed to keep her employment.

g. After Ms. Duffy's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Duffy had been performing.

h. As a result of being discharged after 10 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Duffy suddenly found herself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

161. The unlawful employment practices complained of in the foregoing paragraph were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. Duffy filed a COD with the EEOC alleging age discrimination under ADEA. After investigating her claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Ms. Duffy to be discharged because of age in violation of the ADEA, that Ms. Duffy was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Ms. Duffy's discharge was a pretext for age discrimination.

162.     Plaintiff Joseph Dziemianuk was employed in the bowling industry for 5 years when he was unlawfully discharged by the Defendants on January 13, 2015.  Mr. Dziemianzik was 50 years old at the time his employment was terminated.  Mr. Dziemianzik filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  Mr. Dziemianzik employment began in April, 2010 working as a district manager for a bowling company that would be later acquired by the Defendants

    b.  He was a highly successful manager and never had a negative annual review or blemish on his performance record and received annual raises in his compensation.

    c.  Mr. Dziemianzik skills warranted him be given two additional bowling centers to manage as part of his district and to oversee national event sales for the company.

    d.  Annually, Mr. Dziemianzik received positive performance reviews and never once was the subject of a disciplinary incident or write-up

    e.  In October 2014, after AMF Bowlmor had taken control of his center and his employment was terminated.

    f.  Mr. Dziemianzik was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner.

    g.  On or about January 13, 2015 Defendants terminated Mr. Dziemianzik employment because of his age.  Mr. Dziemianzik was 50 years old at the time of his termination.

    h.  After terminating Mr. Dziemianzik Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Dziemianzik had been performing.

    i.  As a result of being discharged after 5 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Dziemianuk suddenly found himself in desperate financial straits, unable to find a job at age 50 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

163.     The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr.

Dziemianuk filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Dziemianuk to be discharged because of age in violation of the ADEA, that Mr. Dziemianuk was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Dziemianuk's discharge was a pretext for age discrimination.

164.    Plaintiff Bob Edwards was employed in the bowling industry for 40 years when he was unlawfully discharged by the Defendants at the age of 58 years old. Mr. Edwards filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Mr. Edwards employment began in 1974 as a mechanic and later a facilities manager for Brunswick. He then worked at AMF, starting as a facilities manager, becoming a company trainer for mechanics and eventually becoming a general manager and a district trainer for the company's TIPS program. He worked approximately 34 years for Brunswick and AMF, and for a brief period after AMF was acquired by Bowlmor. During his employment, he was a highly-successful manager and consistently earned positive performance reviews that resulted in increased annual compensation, bonuses, and promotions.

b.  After Bowlmor's acquisition of AMF, Mr. Edwards was instructed by senior management to "work out of the system" a female employee in her mid-60's. This meant to challenge the employee, closely monitor them for technical defaults of policies, change their work responsibilities and hours, and do whatever it took to create an intimidating, unfriendly environment to justify the dismissal of an employee or have them resign. he refused to follow management's instructions because this employee was the hardest worker he had on his staff and there was no legitimate basis to terminate her.

c.  In the interim, Mr. Edwards had notified management that the local safe in the bowling center was damaged and not locking properly. Shortly thereafter, his manager, Nick Scaccio, accused Mr. Edwards of leaving the safe open even though Mr. Edwards had not placed any cash in the safe (knowing it was not locking properly). Instead, Mr. Edwards secured the cash to be deposited in his own possession until he made the deposit, notwithstanding Mr. Scaccio's lack of proof that Mr. Edwards had negligently left the safe open or that any funds were missing.

d.   Mr. Edwards was terminated in March 2014 at the age of 58 years old.

e. Annually, Mr. Edwards received positive performance reviews and never once was the subject of a disciplinary incident or write-up

f. Mr. Edwards was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner, using his own funds and performing his duties all to maximize the performance of the bowling center. He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

g. After terminating Mr. Edwards, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Edwards had been performing.

h. As a result of being discharged after 40 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Edwards suddenly found himself in desperate financial straits, unable to find a job at age 58 causing emotional pain & suffering.

165. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Mr. Edwards filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD stating the evidence revealed that senior management officials directed Mr. Edwards to "manage-out" older, well performing employees who were deemed not to be a fit for the youthful vision Defendants had for Mr. Edward's locations; that Mr. Edwards was directed to find reasons to justify ending their employment; that when he failed to do so senior management questioned why those employees remained; that after opposing Defendants' direction to follow discriminatory employment practices, Mr. Edwards was discharged and that Defendants' explanation that Mr. Edwards was discharged because of his poor performance is a pretext for Defendants' retaliatory practices directed against other employees who oppose the Defendants' pattern or practice of age discrimination against older workers. The EEOC found reasonable cause to believe that Defendants caused Mr. Edwards to be discharged in retaliation

for engaging in a protected activity (opposition) in violation of the ADEA, that Mr. Edwards was discharged as part of a company-wide pattern or practice of discharging employees who engaged in protected activity in violation of the ADEA.

166.    Plaintiff Sarah Evans was employed in the bowling industry for 6 years when she was unlawfully discharged by the Defendants on March 17, 2014.  Ms. Evans was 38 years old at the time her employment was terminated.  Ms. Evans filed a COD with the EEOC alleging retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

    a.  Ms. Evans was initially employed as an assistant manager at a bowling center that would be later acquired by the Defendants

    b.  Ms. Evans then became the general manager of the bowling center where she was employed.

    c.  Ms. Evans was advised by her District Manager she was just 1 of the 2 general managers given annual salary increases placing her among the highest level of general managers in the company.

    d.  Ms. Evans was also awarded recognition for managing her bowling center with high customer service levels.

    e.  Greg Nichols, one of the named plaintiffs, was once a general manager of the bowling center, when Ms. Evans was an assistant general manager and also gave her favorable performance reviews.

    f.  Annually, Ms. Evans received positive annual performance reviews and never once was the subject of a disciplinary incident or write-up.

    g.  When the defendants acquired the bowling center that Ms. Evans managed, she came under heavy pressure to terminate employees that had solid performance reviews and handled their responsibilities properly because they were old and did not fit the new young, hip appearance the defendants desired.

    h.  This pressure came from Defendants' senior vice president, Larry Ross and a district manager, Bob Moore, with Mr. Ross having earned a reputation within the company of a being a 'hatchet man' used to carry out the demands of the defendants' CEO Tom Shannon.

    i.  Ms. Evans refused the demands to terminate solid employees that she relied upon to properly operate her bowling center.

> j. Ms. Evans' employment was terminated in retaliation for not undertaking acts that would violate the ADEA.

> k. Ms. Evans was replaced by an attractive person in in their mid-30's.

167. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. Evans filed a COD with the EEOC alleging age discrimination under ADEA. After investigating her claims, the EEOC issued an LOD stating the evidence revealed that Ms. Evans questioned the termination of an employee within the protected age group and opposed directives from higher management which would violate the ADEA; that soon after opposing Defendants' discriminatory employment practices, Ms. Evans was discharged with no prior disciplinary action and a vague explanation and that Defendants' subsequent assertion that Ms. Evans was discharged because of her poor performance is a pretext for Defendants' retaliatory practices directed against other employees who oppose the Defendants' pattern or practice of age discrimination against older workers. The EEOC found reasonable cause to believe that Defendants caused Ms. Evans to be discharged in retaliation for engaging in a protected activity (opposition) in violation of the ADEA, that Ms. Evans was discharged as part of a company-wide pattern or practice of discharging employees who engaged in protected activity in violation of the ADEA.

168. Plaintiff Suzanne Frazier was employed in the bowling industry for 8 years when she was unlawfully discharged by the Defendants at the age of 54 years old. Ms. Frazier filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

> a. When AMF was acquired by Bowlmor, and with virtually no input, she was reverted to an hourly worker with lower commissions and a myriad of rules on calculating overtime pay, sick time and personal leave. Benefits and commissions were reduced.

b.  Annually, Ms. Frazier received positive performance reviews and never once was the subject of a disciplinary incident or write-up

c.  The bowling center's lead mechanic, Danny Paden, openly expressed his dissatisfaction of new management's overreaching ways and unfair and disrespectful treatment of its employees.  An assistant general manager, Jennifer Kraus, who was seeking to gain favor from Bowlmor executives contrived evidence against Paden who was fired for purportedly removing equipment that was photographed in his office. Ms. Frazier knew the photographs were not representative of Mr. Paden's office as Ms. Frazier had been in Mr. Paden's office two days prior and Mr. Paden was off work for the previous two days when he had allegedly removed the equipment.

d.  When presented with the photos of Mr. Paden's office (intentionally done in the presence of the bowling center's general manager, Krystal), Ms. Frazier purposely gave no reaction, although she subsequently expressed to Ms. Kraus in private that she found it offensive that Mr. Paden was being wrongfully set-up. The very next day Krystal made an off-handed comment about Ms. Frazier defending Mr. Paden. Days later Ms. Frazier and her sales coordinator were transferred to a new bowling center in Cupertino, CA to be 'trained on sales' even though she had occupied the same sales position with consistent positive annual reviews.

e.  After being transferred to Cupertino, she was subjected to very personal, direct and demeaning remarks by the new Sales Director and often in the presence of her peers. She was made to feel incompetent, behind-the-times and not hip enough. Although we had great success with calling customers versus sending emails, we were chastised because 'young employees' prefer emails -- even though they got poorer results.

f.  Ms. Frazier's commissions were diminished as only calls for small children's parties were referred to me to handle.

g.  Ms. Frazier was then called into a meeting by the local general manager and the new Sales Director and lectured on her allegiance to Defendants all the while being coerced to saying something negative about CEO Shannon, which she refused to do as she knew she was being set up like Mr. Paden had been.

h.  Ms. Frazier had a hearing problem for which she sought treatment and new hearing aids that would be compatible with the Defendants' telephone relay system between all bowling centers.

i.  The problem significantly exacerbated when she was transferred to a small office at the Cupertino, CA bowling center next to loud pin-setting machines. Between her increased hearing issues (of which Bowlmor was aware when they transferred her to the office in Cupertino) and the constant harassment and

embarrassment she routinely endured by management, Ms. Frazier resigned from her employment as a constructive termination.

j.  As a result of being discharged after 8 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Frazier suddenly found herself in desperate financial straits, unable to find a job at age 54 causing emotional pain & suffering.

169.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Frazier filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Ms. Frazier to be discharged because of age in violation of the ADEA.  Mr. Frazier was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Frazier was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Frazier.

170.  Plaintiff Roy Freer was employed in the bowling industry for 8 years when he was unlawfully discharged by the Defendants on September 10, 2015.  Mr. Freer was 46 years old at the time his employment was terminated.  Mr. Freer filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  In April 2007, Mr. Freer was hired as a District Manager covering Connecticut, Westchester County and Long Island in New York Stated for a bowling company that would be later acquired by the Defendants.

b.  Mr. Freer's reputation for redirecting underperforming bowling centers to successful bowling centers resulted in the company granting him three additional bowling centers to oversee.

c.  Mr. Freer witnessed numerous instances of irrational, baseless employment decisions to terminate employees after the Defendants acquire his company.

d. Mr. Freer refused to terminate employees that had successful track records but were older.

e. Annually, Mr. Freer received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

f. The Defendants in reaction to Mr. Freer's resistance to terminating employees based on age, began to reassign bowling centers once managed by Mr. Freer to other managers.

g. Mr. Freer was then discharged from his employment without an explanation.

h. After terminating Mr. Freer Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Freer had been performing.

i. As a result of being discharged after 8 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Freer suddenly found himself in desperate financial straits, unable to find a job at age 46 causing emotional pain & suffering.

171.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Freer filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that senior management officials directed Mr. Freer to eliminate older, well performing employees who were deemed not to be a fit for the image Defendants sought for Mr. Edward's locations and that Mr. Freer hire younger workers; that Mr. Freer questioned the termination of an older, qualified employee and advanced qualified applicants who did not satisfy Defendants' desire to employ workers with a youthful appearance employee; and that after opposing Defendants' direction to follow discriminatory employment practices, Mr. Freer was discharged. In the letter of determination, the EEOC further stated that Defendants' subjective, vague and shifting explanations for discharging Mr. Freer were all a pretext for age discrimination and retaliation.  The EEOC found reasonable

cause to believe that Defendants caused Mr. Freer to be discharged in retaliation for engaging in a protected activity (opposition) in violation of the ADEA, that Mr. Freer was discharged as part of a company-wide pattern or practice of discharging employees who engaged in protected activity in violation of the ADEA.

172. Plaintiff Mark Hatcher was employed in the bowling industry for 19 years when he was unlawfully discharged by the Defendants at the age of 59 years old.  Mr. Hatcher filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

   a. At all relevant times, Mr. Hatcher was employed by the Defendants as a Vice President of Real Estate at Defendants' corporate headquarters in Mechanicsville, Viriginia.

   b. Mr. Hatcher's employment with began in 1995 with AMF as director of real estate from which he was promoted in 1997 to vice president real estate.  He worked approximately 20 years for AMF, and for a brief period after it was acquired by Defendants.  Mr. Hatcher's direct supervisor from 2006 to June 2013 was Fred Hipp, the former CEO of AMF. During this period, Mr. Hipp provided in-person oral quarterly and annual reviews --no written reports were generated.

   c. Annually, Mr. Hatcher received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

   d. On June 20, 2014, Jenifer Thoma, VP of HR, came to Mr. Hatcher's office to advise him that his position was being terminated and provided him with a confidential separation and release agreement that he had to sign in order to receive the compensation that was owed to Mr. Hatcher. During this meeting Mr. Hatcher was introduced to his replacement, David Hochberg, who appeared to be in his late 30's.  At no time prior to the June 2014 meeting did Mr. Parker advise him of any negative job performance issues or problems, and he never mentioned his termination.

   e. On June 20, 2014, Defendants terminated Mr. Hatcher's employment because of his age.  Mr. Hatcher was 59 years old at the time of his termination

   f. After terminating Mr. Hatcher, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Hatcher had been performing.

   g. As a result of being discharged after 19 years of dedicated service to an industry which supported his household and in which he had developed close personal

relationships with co-workers and customers alike, Mr. Hatcher suddenly found himself in desperate financial straits, unable to find a job at age 59 causing emotional pain & suffering.

173.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Defendants caused Mr Hatcher to be discharged because of age in violation of the ADEA.  Mr. Hatcher was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Hatcher was a pretext for age discrimination.   Mr. Hatcher filed a COD with the EEOC alleging age discrimination under ADEA.  As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Hatcher.

174.    Plaintiff Michael Hoerner was employed in the bowling industry for 9 years when he was unlawfully discharged by the Defendants on July 7, 2015.  Mr. Hoerner was 62 years old at the time his employment was terminated.  Mr. Hoerner filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  At all relevant times, Mr. Hoerner was employed as a general manager for a bowling center that would be later acquired by the Defendants.

    b.  Annually, Mr. Hoerner received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    c.  After the bowling center Mr. Hoerner was employed at was purchased by the Defendants, he continued to hear news and witness first-hand that managers like him with solid track records were being summarily dismissed for apparently no logical reason.

    d.  Mr. Hoerner's senior leaders would find criticism with his work where such was not identified prior to the Defendants acquiring ownership of the bowling center that Mr. Hoerner managed.

e.   The unfounded criticism created substantial daily mental pressure on Mr. Hoerner creating an objectively intolerable working environment caused escalating health problems for Mr. Hoerner.

f.   Mr. Hoerner's health concerns arising from the mistreatment of him in a manner to manage him out of his employment resulted in a constructive termination of his employment.

g.   Mr. Hoerner was a targeted subject of being managed out of his employment via a program plan of harassment, and repeated and unnecessary reviews of his work and undue scrutiny.

h.   After Mr. Hoerner employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Hoerner had been performing.

i.   As a result of being discharged after 9 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Hoerner suddenly found himself in desperate financial straits, unable to find a job at age 62 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

175.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Hoerner filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Hoerner's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Hoerner to be constructively discharged because of age in violation of the ADEA, and that Mr. Hoerner was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

176.    Plaintiff Bill Hoggatt was employed in the bowling industry for 38 years when he was unlawfully discharged by the Defendants at the age of 62 years old.  Mr. Hoggatt filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  Mr. Hoggatt's employment with Bowlero's predecessor began in October 1975. He worked for 30 years for Brunswick, before moving to AMF in 2005.  Hired as a junior-level B mechanic he worked his way up through Senior-level A mechanic and ultimately became Facilities Manager.

b.  Throughout his employment he consistently earned positive annual written performance reviews.  In his last review, prior to AMF's acquisition by Bowlmor AMF, he earned an excellent review and a 3% annual pay increase

c.  Shortly after AMF's acquisition by Bowlmor AMF, Mr. Hoggatt was treated very unfairly and in a derogatory manner. After 38 years of service, he was transferred to late night shifts and weekends creating substantial pressure on him. He was so harassed by management that he was compelled to leave his employment to sustain his health.   Mr. Hoggatt was 62 years old at the time of his termination.

d.  Mr. Hoggatt was able to perform the duties of facilities manager and, in fact, did perform those duties in a satisfactory manner.

e.  The Defendants constructively terminated Mr. Hoggatt's employment because of his age through the company-wide policy of "managing out" whereby employees were forced to leave their employment because Defendants placed such additional burdens on their duties or schedules that it became unbearable to work there.

f.  After terminating Mr. Hoggatt, Defendants hired employees for its Garden Grove, California, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Hoggatt had been performing.

g.  As a result of being discharged after 38 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Hoggatt suddenly found himself in desperate financial straits, unable to find a job at age 62 causing emotional pain & suffering.

177.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Hoggatt filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an

objectively intolerable working environment because of age that caused Mr. Hoggatt's resignation and that he was subject to discriminatory treatment due to his age. The EEOC found reasonable cause to believe that Defendants caused Mr. Hoggatt to be constructively discharged because of age in violation of the ADEA, and that Mr. Hoggatt was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

178.    Plaintiff Michael Horsley was employed in the bowling industry for 17 years when he was unlawfully discharged by the Defendants on December 1, 2015. Mr. Horsley was 45 years old at the time his employment was terminated. Mr. Horsely filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  In 1998, Mr. Horsley was hired on an hourly basis to work in a bowling center for a bowling company that would be later acquired by the Defendants.

b.  Mr. Horsley continued to advance in his employment to become an assistant manager, then a general manager and then Director of Operations for his region.

c.  His compensation increases for $35,000 to $90,000 reflected his value to the company.

d.  Annually, Mr. Horsley received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

e.  On five occasions, Mr. Horsely was granted the Executive Award given to the highest performing managers in the company.

f.  When Defendants acquired the business Mr. Horsley role was changed to be being an acting general manager of a bowling center.

g.  Mr. Horsley was then directed to 'manage-out' employees the Defendants felt were too old and no longer desired in the company.

h.  As one example, Mr. Horsley was directed to radically change the schedule to make Plaintiff, Dan Van Vart work late nights and weekends as a means to frustrate him and work him out of the company, which Mr. Horsley protested

because of the valuable service and steady performance Mr. Van Vart gave in his 28 years of service.

i.   Mr. Horsley was directed by senior vice president, Larry Ross and a regional vice president, Jody Pastola, to terminate Mr. Van Vart and stated, 'if you cannot do what you asked to do, they will find someone who could" as a clear threat to Mr. Horsley's employment.

j.   Mr. Horsley was constantly challenged and harassed by Larry Ross that he was not moving fast enough to terminated older employees.

k.   To set up Mr. Horsley for a termination, the Defendants created a false report of Mr. Horsley making an inappropriate remark to a female employee, Kristin Zydzik who was terminated one month before Mr. Horsley was terminated after she had rebuffed sexual advances by Mr. Pastola.

l.   Mr. Horsley approached Mr. Ross to address his concerns about pressure to terminate the employment of people with no basis for doing so except for their older age, and his frustration over it made him considering quitting, Mr. Ross immediately seized the moment and advised Mr. Horsley that 'he quit' and he would make Mr. Horsley's file that he quit to deny him from securing unemployment benefits.

m.   After terminating Mr. Horsley Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Horsley had been performing.

n.   As a result of being discharged after 17 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Horsley suddenly found himself in desperate financial straits, unable to find a job at age 45 causing emotional pain & suffering.

179.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Horsley filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence revealed that senior management officials directed Mr. Horsley to "manage-out" Dan Van Wart, i.e. to make his working conditions difficult in order to induce his resignation and/or to find reasons to justify ending his employment; that Mr. Van Wart was an older, well performing worker who was deemed not to

be a fit for the vision Defendants had for Mr. Van Wart's location; that when Mr. Horsley declined to "manage-out" Mr. Van Wart and Defendants questioned why Mr. Van Wart remained, Defendants threatened Mr. Horsley's employment; that after opposing Defendants' direction to follow discriminatory employment practices, Mr. Horsley was discharged and replaced by a younger employee outside the protected group; and that Defendants' explanation for Mr. Horsley's discharge was a pretext for age discrimination and Defendants' retaliatory intent for Mr. Horsley's opposition to age-based employment practices.  The EEOC found reasonable cause to believe that Defendants caused Mr. Horsley to be discharged in retaliation for engaging in a protected activity (opposition) in violation of the ADEA, that Mr. Horsley was discharged as part of a company-wide pattern or practice of discharging employees who engaged in protected activity in violation of the ADEA.

180.    Plaintiff Tyrone Julian was employed in the bowling industry for 8 years when he was unlawfully discharged by the Defendants on January 1, 2014.  Mr. Julian was 48 years old at the time his employment was terminated.  Mr. Julian filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.    Mr. Julian's employment began as an assistant general manager working a bowling center that would be later acquired by the Defendants.

    b.    Over an eight-year period Mr. Julian worked at three different bowling centers.

    c.    Annually, Mr. Julian received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

    d.    After acquiring the bowling center where Mr. Julian was employed, the scrutiny of Mr. Julian became excessive and his new general manager, German Melgar, would cite to circumstances to write-up Mr. Julian on minor issue and with exaggerated and false claims.

    e.    In one instance, Mr. Melgar was aware Mr. Julian has a pre-scheduled vacation and he offered to complete a portion of a report Mr. Julian was doing prior to

leaving for his vacation.  Upon his return from vacation, Mr. Julian was made aware of a write-up placed in his file that he failed to timely complete 'the report' Mr. Melgar offered to complete while he was away.

f.  Unrelated to Mr. Julian but of a concern to him, Mr. Melgar directed female waitress staff to wear short dresses and sexy clothing versus uniforms.

g.  Mr. Julian was clearly being managed out of his employment.

h.  Mr. Julian's health began to deteriorate from the constant stress, heaving work load and uncertainty over his future employment.

i.  The unfounded criticism created substantial daily mental pressure on Mr. Julian creating an objectively intolerable working environment caused escalating health problems for Mr. Julian.

j.  Mr. Julian's health concerns arising from the mistreatment of him in a manner to manage him out of his employment resulted in a constructive termination of his employment.

k.  After Mr. Julian's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Nelson had been performing.

l.  As a result of being discharged after 8 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Julian suddenly found himself in desperate financial straits, unable to find a job at age 48 causing emotional pain & suffering.

181.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Julian filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Julian's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Julian to be constructively discharged because of age in violation of the ADEA, and that Mr. Julian was constructively discharged and subjected to

discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

182.   Plaintiff Joseph Kelly was employed in the bowling industry for 26 years when he was unlawfully discharged by the Defendants at 53 years old.  Mr. Kelly filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Mr. Kelly's employment began with the company in 1992 at Conchester Lanes in Boothwyn, Pennsylvania, where he worked for 26 years—19 under AMF and another 7 after AMF's acquisition by Bowlmor. He was hired as a counter attendant, became a B·mechanic, then was promoted to facility manager with 14 persons reporting to him at the time of his termination. With every promotion, he took on greater responsibility and received higher compensation.

b.  In August 2013, he received a service award in recognition of 14 years of service just prior to Bowlmor' s acquisition of AMF.  In all of this time, never once did Mr. Kelly receive a write-up by management for violating a company policy, or challenging his work performance, until the February, 2017.

c.  Annually, Mr. Kelly received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

d.  In the Fall of 2016, after AMF's acquisition by Bowlmor, Mr. Kelly's relationship with the company changed.  His general manager and the Company's senior vice president, Larry Ross, relentlessly challenged everything he did. In addition, while he was responsible for machine maintenance, painting, plumbing and trouble-shooting all facilities-related problems, he was given no support in doing this work.  In February 2017, Mr. Kelly received his only write-up in 26 years. Mr. Kelly did not lock out a machine just prior to fixing it. Although technically a violation, in his entire career, he had never been injured by equipment and knew from experience that what he was doing with the machine would not have resulted in any injury.

e.  The local district manager of Mr. Kelly's bowling center, in the presence or others, told Mr Kelly he was "useless" and "did not know what he was doing." He further stated that Mr. Kelly was "stealing from him" because Mr. Kelly didn't deserve the compensation he was earning.  He was told he was "fat" and "lazy" and was told to walk out of the building to avoid being fired.  To have been humiliated in such a vile manner in the presence of his co-workers was very demeaning and injurious to Mr. Kelly.

f.  Mr. Kelly was able to perform the duties of facilities manager and, in fact, did perform those duties in a satisfactory manner.

g.  Mr. Kelly was able to perform the duties of facilities manager and, in fact, did perform those duties in a satisfactory manner.  He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.  Mr. Kelly was 53 years old at the time of his termination.

h.  After terminating Mr. Kelly, Defendants hired employees for its Boothwyn, Pennsylvania, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Kelly had been performing.

i.  As a result of being discharged after 26 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Kelly suddenly found himself in desperate financial straits, unable to find a job at age 53 causing emotional pain & suffering.

183.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Kelly filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Kelly to be discharged because of age in violation of the ADEA, that Mr. Kelly was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Kelly's discharge was a pretext for age discrimination.

184.    Plaintiff Glen Kiefer was employed in the bowling industry for 9 years when he was unlawfully discharged by the Defendants on October 4, 2014.  Mr. Kiefer was 47 years old at the time his employment was terminated.  Mr. Kiefer filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  On February 9, 2004 Mr. Kiefer was hired as a facilities manager at a bowling center in Syosset, New York that would be later acquired by the Defendants.

b. Mr. Kiefer's bowling center was ranked within the Top 5 of all 300+ bowling centers operated the owner for upkeep and cleanliness.

c. Annually, Mr. Kiefer received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

d. Mr. Kiefer's bowling center was acquired by the Defendants.

e. Shortly after the acquisition, Mr. Kiefer was called into a meeting with a District Manager, Darren Tipton and advised his employment was terminated.

f. After terminating Mr. Kiefer Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Kiefer had been performing.

g. As a result of being discharged after 9 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Kiefer suddenly found himself in desperate financial straits, unable to find a job at age 47 causing emotional pain & suffering.

185. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Kiefer filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Kiefer to be discharged because of age in violation of the ADEA, that Mr. Kiefer was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Kiefer's discharge was a pretext for age discrimination.

186. Plaintiff Kristina Kitti was employed in the bowling industry for 4 years when she was unlawfully discharged by the Defendants on August 9, 2013.  Ms. Kitti was 32 years old at the time her employment was terminated.  Ms. Kitti filed a COD with the EEOC alleging retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

a.  In December 2009, Ms. Kitti was initially employed as an assistant general manager for a bowling company that would be later acquired by the Defendants.

b.  In October 2011, Ms. Kitti was promoted to general manager of her bowling center and assisted with the management of two other bowling centers.

c.  Annually, Ms. Kitti received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d.  When the defendants acquired the company Ms. Kitti was employed by, they changed the plan to focus more on events and increased league bowling rates that drove away a lot of business.

e.  Notwithstanding this change, Ms. Kitti was able to sustain a league retention rate of 97% to maintain a strong financial performance for her bowling center and received recognition from her direct manager for her performance.

f.  Ms. Kitti also received an overall Customer Satisfaction Record award in 2011 for the successful manner in which we managed her bowling center.

g.  The Defendants placed incredible pressure on Ms. Kitti to terminate the employment of her assistant manager, Bob Bowcutt who was very large and older in appearance but very valuable to Ms. Kitti for his reliability and performance.

h.  The Defendants also placed pressure on Ms. Kitti to file a write-up on a plaintiff in this case, Bill Hoggatt, as in her determination the meeting they had verbally over the matter and resolution was sufficient to address the problem, but Mr. Wallace wanted to create a paper trail as a means to terminate Mr. Hoggatt's employment because of his age.

i.  Ms. Kitti refused a demand by her direct supervisor, Bob Wallace that she write-up Mr. Boycott for not taking in revenues into the bowling center one evening as his basis for doing so comported with company policy on reducing overtime labor.

j.  Two weeks prior to being terminated, CEO Tom Shannon visited her bowling center and confronted her in a rude and condescending matter to intimidate her.

k.  Ms. Kitti's refusal to terminate a solid performing employee, Bob Bowcutt and write-up Mr. Hoggart resulted in her employment being terminated.

l.  Ms. Kitti was directly advised by a colleague after she was terminated that Mr. Wallace said "we need to let Bob Bowcutt go and need to find a reason."

    m.  Thereafter Mr. Bowcutt's employment was terminated and he lost medical benefit coverage for a medical condition he had relating to his heart but which did not interfere with his employment.

    n.  Mr. Bowcutt was replaced by an assistant manager, Jon Sekolic who was 22 years old.

    o.  As if finally terminating the employment of Mr. Bowcutt was not enough, Mr. Wallace actually attended an unemployment hearing to protest Mr. Bowcutt from receiving employment benefits which were denied because the Defendants' protest.

    p.  The extreme stress from being denied unemployment benefits which prohibited Mr. Bowcutt from affording necessary medicine resulted in Mr. Bowcutt dying of a heart attack that same evening.

    q.  On November 7, 2013, Bowcutt won his appeal of the unemployment benefits decision and was awarded unemployment benefits – on the day of his funeral.

187.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Kittidumrongkool filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Ms. Kittidumrongkool to be discharged because of age in violation of the ADEA.  Ms. Kittidumrongkool was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Kittidumrongkool was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Kittidumrongkool.

188.    Plaintiff Keith Kittidumrongkool was employed in the bowling industry for 16 years when he was unlawfully discharged by the Defendants at 40 years old.  Mr. Kittidumrongkool filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. At all relevant times, Mr. Kittidumrongkool was employed by the Defendants as Senior Facilities Manager for Defendants' Greeley, Colorado, facility.

b. Mr. Kittidumrongkool's employment with Bowlero's predecessor began in April 1998.  Hired as a mechanic, he worked his way up and, in January 2013, became Facilities Manager overseeing the mechanical operations of five bowling centers in the Los Angeles region. Throughout his employment he consistently earning positive annual performance reviews leading to further advancement in the Company.  After the acquisition, Mr. Kittidumrongkool was in constant fear of being terminated notwithstanding the exceptional efforts he was giving to his work.  He described the post-acquisition atmosphere as "walking on eggshells" having witnessed several facility managers, for example, Anthony Cains, being fired for no apparent reason.

c. Defendants terminated Mr. Kittidumrongkool's employment because of his age through the company-wide policy of "managing-out" whereby employees were forced to leave their employment because Defendants placed such additional burdens on their duties or schedules that it became unbearable to work there.  Mr. Kittidumrongkool was 41 years old at the time of his termination.

d. Mr. Kittidumrongkool was able to perform the duties of facilities manager and, in fact, did perform those duties in a satisfactory manner.

e. After terminating Mr. Kittidumrongkool, Defendants hired employees for its Greeley Colorado, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Kittidumrongkool had been performing.

f. As a result of being discharged after 36 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Kittidumrongkool suddenly found himself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

189.     The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Kittidumrongkool filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Kittidumrongkool to be discharged because of age in violation of the ADEA, that Mr. Kittidumrongkool was discharged as part of a company-wide pattern or practice

of discharging employees because of their age, 40 years and older and that Defendants'
explanation for Mr. Kittidumrongkool's discharge was a pretext for age discrimination.

190. Plaintiff Pamela Klosiewski was employed in the bowling industry for 31 years
when she was unlawfully discharged by the Defendants on June 29, 2014.  Ms. Klosiewski was
57 years old at the time her employment was terminated.  Ms. Klosiewski filed a COD with the
EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. In August, 1983, Ms. Klosiewski was initially employed as a part-time waitress
for a bowling company that would be later be acquired by the Defendants.

b. In just one year because of her dutiful and consistent work performance, Ms.
Klosiewski became a full-time bartender.

c. In 1986 Mr. Klosiewski was promoted to bar leader.

d. Ms. Klosiewski was then promoted to Bar Manager.

e. Ms. Klosiewski was then promoted to Food & Beverage Manager,

f. Annually, Ms. Klosiewski received positive performance reviews and never once
was the subject of a disciplinary incident or write-up until the Defendants'
purchased the company by which she was employed.

g. After the acquisition, Ms. Klosiewski was notified that her bowling center would
be closed.

h. Ms. Klosiewski sought other opportunities for which she was more than qualified
but was denied any opportunity to interview for other positions, notwithstanding
her willingness to take a pay reduction.

i. At termination, although Ms. Klosiewski was entitled to nearly 20 weeks of
unpaid, accrued vacation time, she was forced to accept only 6 weeks of unpaid
time and forced to sign a release of all her legal rights.

j. After terminating Ms. Klosiewski Defendants hired employees who were under
age forty into positions where they performed the same or similar duties as those
that Ms. Klosiewski had been performing.

k. As a result of being discharged after 31 years of dedicated service to an industry
which supported her household and in which she had developed close personal
relationships with co-workers and customers alike, Ms. Klosiewski suddenly

77

found herself in desperate financial straits, unable to find a job at age 57 causing emotional pain & suffering.

191.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Klosiewski filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Ms. Klosiewski to be discharged because of age in violation of the ADEA.  Ms. Klosiewski was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Klosiewski was a pretext for age discrimination.    As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Klosiewski.

192.    Plaintiff Jeff Lerner was employed in the bowling industry for 37 years when he was unlawfully discharged by the Defendants on September 12, 2014.  Mr. Lerner was 65 years old at the time his employment was terminated.  Mr. Lerner filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  Mr. Lerner began his employment at a bowling center that would be later acquired by the Defendants.

    b.  For 37 years, Mr. Lerner worked diligently and earnestly as a Facilities Manager managing large and small projects steadily and during a normal work schedule.

    c.  Annually, Mr. Lerner received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

    d.  After his company was acquired by the Defendants Mr. Lerner's work hours were constantly changed, his staff was cut and projects were given unrealistic short times for completion making them all very stressful to manage, and unnecessarily so.

e.   Large projects, like painting projects, were dismissed 'at the conclusion' of the project as not being the right color, not early on, this requiring Mr. Lerner to redo the work in now an even shorter time frame.

f.   The constant pressure on my workload and unfounded criticism created substantial daily mental pressure on Mr. Lerner creating an objectively intolerable working environment caused escalating health problems for Mr. Lerner.

g.   Mr. Lerner fear being fired at his late age would an insurmountable barrier to him finding new employment and he resigned from his position.

h.   After Mr. Lerner's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Lerner had been performing.

i.   As a result of being discharged after 37 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Lerner suddenly found himself in desperate financial straits, unable to find a job at age 65 causing emotional pain & suffering.

193.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Lerner filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Lerner's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Lerner to be constructively discharged because of age in violation of the ADEA, and that Mr. Lerner was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

194.   Plaintiff Peter MacCracken was employed in the bowling industry for 18 years when he was unlawfully discharged by the Defendants at 61 years old.  Mr. MacCracken filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a. At all relevant times, Mr. MacCracken was employed by the Defendants as general manager for Defendants' Webster, New York, facility.

b. Mr. MacCracken's employment with Defendants began in April 1995, working 19 years for AMF and for a brief period after its acquisition by Bowlmor AMF. He began his career as customer manager and became general manager. Over the course of his employment, he consistently received positive performance reviews and additional pay increases. Not once was he the subject of a disciplinary incident or write-up

c. In May 2014, after AMF Bowlmor had taken control of his center, Mr. MacCracken unknowingly hired a person that had a previous sex offense with a minor which is against company policy. Although he used the standard operating procedure at the time to conduct a search of this person, he did not learn of any negative conduct that would have deterred him from hiring this individual. In July 2014 a newspaper article named the employee and his prior offense. Upon learning of the information, Mr. MacCracken immediately terminated the employee.

d. On August 14, 2014, Mr. MacCracken was terminated for hiring this person even though he followed company protocols. When he protested his termination, management began to challenge his audit scores for his bowling center.

e. Mr. MacCracken was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner. He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

f. On or about August 14, 2014, Defendants terminated Mr. MacCracken's employment because of his age. Mr. MacCracken was 61 years old at the time of his termination.

g. After terminating Mr. MacCracken, Defendants hired employees for its Utica, New York, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. MacCracken had been performing.

h. As a result of being discharged after 18 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. MacCracken suddenly found himself in desperate financial straits, unable to find a job at age 61 causing emotional pain & suffering.

195.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. MacCracken filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. MacCracken to be discharged because of age in violation of the ADEA, that Mr. MacCracken was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Mr. MacCracken's discharge was a pretext for age discrimination.

196.    Plaintiff Pat Marino was employed in the bowling industry for 9 years when he was unlawfully discharged by the Defendants at 64 years old.  Mr. Martinez filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

   a.  At all relevant times, Mr. Marino was employed by the Defendants as bar manager for Defendants' Utica, New York facility.

   b.  Mr. Marino's employment with Defendants began In September 2009 as a bar tender at Defendant's facility in Utica, New York when it *was* owned by AMF Corporation.  His family had owned and operated a restaurant and bar for decades in the local community and he was very familiar with food-handling operations for over 30 years. He was hired without requiring much training and was well-respected by prior managers and customers alike.  Not once was Mr. Marno ever disciplined formally or informally for any violations of company policies.

   c.  In July 2013 the bowling center was acquired by Bowlmor AMF. On or about April 24. 2018.  prior to the commencement of his shift, Mr. Marino was called into the office by the bow1ing center's assistant manager who had on the phone a person from the corporation's Loss Prevention (LP) department. The LP representative repeatedly asked if Mr. Marino ever gave away a free soda on January 7, 2018 which Mr. Marino repeatedly denied   The LP representative insisted that he witnessed Mr. Marino doing so on a surveillance camera.  Mr. Marino still denied the accusation.  The LP representative then asked if Mr. Marino was ever directed by a manager or shift leader to give a free drink to a customer. Mr. Marino advised that he was never once directed to do so.

d.  The LP representative continued to press Mr. Marino about giving away free drinks when Mr. Marino recalled that a frequent customer that bowled in a league typically orders a mixed drink but requests that the alcohol spirits and soda mixers are served in separate glasses so the customer can blend the soda with the spirits as he sees fit.  Mr. Marino confirmed to the LP representative that he charged the customer the same mixed drink price the only difference being it required two glasses to accommodate the customer's request.

e.  Thereafter, the LP representative berated Mr. Marino insisting that what Mr. Marino had done was wrong and further insisted that to keep his job Mr. Marino should admit to having done something wrong even though he did not. The LP representative advised Mr. Marino that while he would not be the person making the final decision on his employment, Mr. Marino should sign a document stating that he handled beverages in compliance with company policy but that it could be possible that a free drink might have occurred.

f.  Within fifteen minutes of ending the phone call with the LP representative, the assistant manager told Mr. Marino that she had received a telephone call and was advised that Mr. Marino was to be suspended until further notice. The next day, Ron Ciminelli, Mr. Marino's regional manager advised that his employment was terminated.

g.  Annually Mr. Marino received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

h.  Mr. Marino was able to perform the duties of bar manager and, in fact, did perform those duties in a satisfactory manner.  He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

i.  On or about April 25,2018, Defendants terminated Mr. Marino's employment because of his age.  Mr. Marino was 40 years old at the time of his termination.

j.  After terminating Mr. Marino, Defendants hired employees for its Utica, New York facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Marino had been performing.

k.  As a result of being discharged after 9 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Marino suddenly found himself in desperate financial straits, unable to find a job at age 64 causing emotional pain & suffering.

197.     The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Marino filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Marino to be discharged because of age in violation of the ADEA, that Mr. Marino was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Marino's discharge was a pretext for age discrimination.

198.     Plaintiff Miguel Martinez was employed in the bowling industry for 34 years when he was unlawfully discharged by the Defendants at 55 years old.  Mr. Martinez filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

   a.  Mr. Martinez's employment with Bowlero began in September 1979 with Brunswick.  Although he left the company in February 2003, he was hired by AMF in May 2005.  He became general manager for several bowling centers. As a successful and experienced general manger, he was appointed to the training staff of the company's advanced training programs TIPS and ServSafe. He worked approximately 34 years for AMF, and for a brief period after it was acquired by Bowlmor.

   b.  Annually, Mr. Martinez received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

   c.  Shortly after Bowlmor acquired AMF, on August 1, 2013, Mr. Martinez's district manager, Robert Califano, schedule a meeting the following day at which Mr. Martinez was discharged. Defendants' reasons for discharge were that his position was being eliminated due to a consolidation of three districts into two, and two other district managers had more experience and there were on-going documented concerns about poor performance.

   d.  Mr. Martinez was told that he must sign an agreement if he wanted to receive funds that were owed to him by Bowlmor.  In financial straits, Mr. Martinez had no choice other than to sign the agreement

e.  On August 1, 2013, Defendants terminated Mr. Martinez's employment because of his age.  Mr. Martinez was 55 years old at the time of his termination

f.  Plaintiff, Kelly Shannon, was the human resource person in charge of Mr. Martinez' bowling center and vehemently opposed his termination as unlawful because his performance was outstanding and this led to Ms. Shannon being terminated in retaliation.

g.  After terminating Mr. Martinez, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Martinez had been performing.

h.  As a result of being discharged after 34 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Martinez suddenly found himself in desperate financial straits, unable to find a job at age 55 causing emotional pain & suffering.

199.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Martinez filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating that the evidence revealed that Defendants had promoted a younger area manager to district manager in 2016 which increased the number of district managers from two to three.  Defendants then decided to reduce the number of district managers from three to two, retaining the two younger district managers. Effectively replacing Mr. Martinez with the younger manager.   The EEOC found reasonable cause to believe that Defendants caused Mr. Martinez to be discharged because of age in violation of the ADEA, that Mr. Martinez was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Martinez's discharge was a pretext for age discrimination.

200.    Plaintiff Barbara McBride was employed in the bowling industry for 8 years when she was unlawfully discharged by the Defendants on May 13, 2016.  Ms. McBride was 67 years

old at the time her employment was terminated.  Ms. McBride filed a COD with the EEOC

alleging age discrimination under the ADEA asserting in pertinent part:

a. Ms. McBride was hired by the Defendants as a general manager as a means to use her to terminate older employees and mask that such decisions were coming from a much older, senior employee.

b. McBride resisted the orders of her District Manager, Kyle Welcher, to terminate older employees or employees not fitting the new youthful image the defendants desired, just 8 months later in December 2001.

c. Ms. McBride was even made aware that Mr. Welcher's wife was a senior level employee in the defendant's human resources department and this was told as more threats to her employment if she didn't carry out directors of her direct report, Mr. Welcher.

d. Mr. Welcher continued to pressure Ms. McBride with verbal abuse calling her a "powderpuff", 'weakling' and humiliating her in the presence of her co-workers.

e. Mr. Welcher then took to calling Ms. McBride daily to press her to terminate persons that were described above.

f. The unfounded criticism and pressure concreated substantial daily mental pressure on Ms. McBride creating an objectively intolerable working environment caused escalating health problems for Ms. McBride.

g. Ms. McBride's health concerns arising from the mistreatment of her in a manner to manage her out of her employment resulted in a constructive termination of her employment.

h. Annually, Mr. McBride's received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

i. After Ms. McBride's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Nichols had been performing.

j. As a result of being discharged after 8 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Ms. McBride suddenly found herself in desperate financial straits, unable to find a job at age 67 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

85

201.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. McBride filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Ms. McBride's resignation and that she was subject to discriminatory treatment due to her age.  The EEOC found reasonable cause to believe that Defendants caused Ms. McBride to be constructively discharged because of age in violation of the ADEA, and that Ms. McBride was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

202.    Plaintiff Mark Meinhofer was employed in the bowling industry for 6 years when he was unlawfully discharged by the Defendants at 41 years old.  Mr. Meinhofer filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

   a. Mr. Meinhofer's employment with Defendants began in March 2009.  He was quickly promoted to general manager in September 2009.  He worked for 7 years for AMF, and then for Defendants upon its acquisition of AMF.  In 2014 he became part of the company's General Manager Advisory Council and trained general managers throughout the term of his career thereafter.  His bowling center had the best audit scores in the entire company for fiscal year 2014 and he was promoted to Area Manager in August 2014 to oversee five bowling centers.

   b. After AMF was acquired by Defendants, the management changed to a point of being unbearable. The extensive humiliation, unbearable hours, harassment on vacation days and termination of his vacation days on short notice, deceit, and management's expectation that Mr. Meinhofer would lie to customers about information important to our bowling center forced him to resign in August 2015.

   c. Mr. Meinhofer was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner.

d. Annually, Mr. Meinhofer received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

e. In August 2014, Defendants constructively terminated Mr. Meinhofer's employment because of his age through the company-wide policy of "managing out" whereby employees were forced to leave their employment because Defendants placed such additional burdens on their duties, wrongly accused them of bad conduct, or imposed upon them unreasonable schedules that it became unbearable to work there.  Mr. Meinhofer was 41 years old at the time he was constructively terminated.

f. After terminating Mr. Meinhofer, Defendants hired employees who were under the age of forty into positions where they performed the same or similar duties as those that Mr. Meinhofer had been performing.

g. As a result of being discharged after 6 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Meinhofer suddenly found himself in desperate financial straits, unable to find a job at age 41 causing emotional pain & suffering.

203. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Meinhofer filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Mr. Meinhofer to be discharged because of age in violation of the ADEA.  Mr. Meinhofer was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Meinhofer was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Meinhofer.

204. Plaintiff Brady Nelson was employed in the bowling industry for 14 years when he was unlawfully discharged by the Defendants on March 1, 2015.  Mr. Nelson was 41 years old at the time his employment was terminated.  Mr. Nelson filed a COD with the EEOC

alleging age discrimination under the ADEA asserting in pertinent part:

a.  Mr. Nelson was initially employed as a general manager in training at a bowling center that would be later acquired by the Defendants.

b.  Mr. Nelson was then promoted to a bowling center owned by Brunswick (acquired by Defendants) that was undergoing major renovations to become a high volume more modern bowling center based on his ability and skills as a manager.

c.  Annually, Mr. Nelson received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

d.  After acquiring the bowling center being managed by Mr. Nelson, Defendants CEO Tom Shannon and four other managers visited the bowling center was operating exceptionally well and with strong financial results.

e.  During the meeting Mr. Nelson was met with a barrage of rapid-fire questions that were a negative critique of small issues with no recognition of the financial performance he managed at the bowling center.

f.  CEO Shannon then pointed to an older female bartender and made a derogatory baseless state suggesting she was stealing from the business and demanded her compensation be substantially reduced making it clear Mr. Shannon no longer wanted this older person serving patrons.

g.  Mr. Nelson was subjected to daily calls from personnel senior to him challenging his decisions.

h.  Mr. Nelson had learned that numerous managers were being terminated by the Defendants even with having long successful careers and with no rational explanation.

j.  The stress on the staff resulted in nearly a 100% turnover rate.

k.  Mr. Nelson was then expected to work night and weekends and no matter how much he worked his superior believed it was not enough.

l.  Mr. Nelson's health began to deteriorate from the constant stress, heaving work load and uncertainty over his future employment.

m.  The unfounded criticism created substantial daily mental pressure on Mr. Nelson creating an objectively intolerable working environment caused escalating health problems for Mr. Nelson.

n.  Mr. Nelson's health concerns arising from the mistreatment of him in a manner to manage him out of his employment resulted in a constructive termination of his employment.

o.  After Mr. Nelson's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Nelson had been performing.

p.  As a result of being discharged after 14 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Nelson suddenly found himself in desperate financial straits, unable to find a job at age 41 causing emotional pain & suffering.

205.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Nelson filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Nelson's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Nelson to be constructively discharged because of age in violation of the ADEA, and that Mr. Nelson was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

206.  Plaintiff Greg Nichols was employed in the bowling industry for 14 years when he was unlawfully discharged by the Defendants on October 4, 2015.  Mr. Nichols was 41 years old at the time his employment was terminated.  Mr. Nichols filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  Mr. Nichols was initially employed as an assistant general manager beginning in April 2001 at a bowling center that would be later acquired by the Defendants.

b.  Just 8 months later in December 2001 Mr. Nichols was promoted to general
    manager's position.

c.  In December 2007 based on his success as a general manager, Mr. Nichols was
    promoted to a District Manager's position.

d.  As a district manager in his final years (2011-2013) he was ranked the #1 district
    manager in his region and in his final year as a district manager he was ranked the
    #1 district manager in the company.

e.  In August, 2013, due his parents failing health concerns, Mr. Nichols requested
    a job change to be near his parents to aid in the healthcare and was assigned a
    general managers position in Syracuse, New York to be near his parents.

f.  Annually, Mr. Nichols received positive performance reviews and never once
    was the subject of a disciplinary incident or write-up until the Defendants'
    purchased the company he was employed by.

g.  After the bowling center Mr. Nichols was employed was purchased by the
    Defendants, he continued to hear news and witness first-hand that managers like
    him with solid track records were being summarily dismissed for apparently no
    logical reason.

h.  Mr. Nichols senior leaders would find criticism with his work where such was not
    identified prior to the Defendants acquiring ownership of the bowling center that
    Mr. Nichols managed.

i.  To further place undue pressure on Mr. Nichols, he was the subject of a
    Performance Improvement Plan which he found outrageous in light of past
    immediate accomplishments.

j.  Never once did the Defendants via a regional manager, district manager or human
    resources representative followed up on the status of the Performance
    Improvement Plan.

k.  The unfounded criticism created substantial daily mental pressure on Mr. Nichols
    creating an objectively intolerable working environment caused escalating health
    problems for Mr. Nichols.,

l.  Mr. Nichols health concerns arising from the mistreatment of him in a manner to
    manage him out of his employment resulted in a constructive termination of his
    employment.

m.  After Mr. Nichol's employment ended Defendants hired younger employees who
    were under age forty into positions where they performed the same or similar
    duties as those that Mr. Nichols had been performing.

n.   As a result of being discharged after 14 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Nichols suddenly found himself in desperate financial straits, unable to find a job at age 41 causing emotional pain & suffering.

207.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).   Mr. Nichols filed a COD with the EEOC alleging age discrimination under ADEA.   After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Nichols' resignation and that he was subject to discriminatory treatment due to his age.   The EEOC found reasonable cause to believe that Defendants caused Mr. Nichols to be constructively discharged because of age in violation of the ADEA, and that Mr. Nichols was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

208.   Plaintiff Paul Nilsen was employed in the bowling industry for 5 years when he was unlawfully discharged by the Defendants at 57 years old.   Mr. Nilsen filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.   Mr Nilsen's employment began in June 2012, when he started as a front desk clerk at Brunswick Cal Oaks Bowl in Murrieta, CA.   He was later promoted to a lane maintenance position and in Spring 2015, he was promoted to a general manager position at Brunswick Zone, B Centro in California. In Fall 2014 Brunswick was acquired by Bowlmor AMF.

b.   Annually, Mr. Nilsen received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

c.   Mr. Nilsen was terminated for wrongful termination of a shift leader in November 2017.   The employee had failed to show up for work on October 31, 2017, exacerbating the 30% staff shortages that his bowling center was already

91

experiencing and requiring him to work 6-7 days per week to make up for the shortages. Mr. Nilsen chose not write her up for that infraction but on November 4. 2017 she submitted her two-week notice to leave her position. Mr. Nilsen sent a message to his district manager, Scott Chauncey requesting staffing assistance but did not receive any response. On November 12, 2017 the departing employee was asked to arrive at work earlier than usual but never showed up at all again leaving Mr. Nilsen to cover her shift. Having been told by management that he was to run the bowling center as if it were his own franchise, Mr Nilsen concluded that the departing employee's unreliability would only make appropriate staffing to meet customer satisfaction standards even more challenging, so he told the employee not to come in for her remaining shifts. He then promoted an associate to the open shift leader position. Mr. Chauncey later approved the new hire.

d. On November 15, 2017, the company's regional human resource manager, Melissa Welcher and Mr. Chauncey went to Mr. Nilsen's bowling center and terminated his employment for not following procedures by allowing the departing employee to leave before the two-week period had expired. While Mr. Nilsen had previously asked to take an HR training class (as there were no HR training modules available), he was never permitted to take even the comprehensive general manager training course. Mr. Nilsen found his termination odd in that never once had he been written up for any company policy violation and there were no serious ramifications from dismissing the employee before her two weeks were up since he was able to cover the departing employees shifts at no additional expense to the company and without jeopardizing customer standards.

e. On November 15, 2017, Defendants terminated Mr. Nilsen's because of his age. Mr. Nilsen was 57 years old at the time of his termination.

f. After terminating Mr. Nilsen, Defendants hired employees for the facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Nilsen had been performing.

g. As a result of being discharged after 5 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Nilsen suddenly found himself in desperate financial straits, unable to find a job at age 57 causing emotional pain & suffering.

209.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Defendants caused Mr Nilsen to be discharged because of age in violation of the ADEA. Mr. Nilsen was

discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Nilsen was a pretext for age discrimination.   Mr. Nilsen filed a COD with the EEOC alleging age discrimination under ADEA.  As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Nilsen.

210.    Plaintiff Barbara Nuss was employed in the bowling industry for 10 years when she was unlawfully discharged by the Defendants at 55 years old.  Ms. Nuss filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Ms. Nuss was employed by the Defendants in a regional facilities management position overseeing facilities and smaller renovation construction projects at bowling centers in the western region of the United States.

b.  Ms. Nuss employment with Defendants' predecessor began in October 2006.  She worked approximately nine years for AMF, and for a brief period after it was acquired by Bowlmor. In May 2015 she was asked to move from Bowlmor's facilities management group to its construction project management group. She accepted this position conditionally upon the company hiring a person for large (renovation) projects, which she did not want to oversee. She started working in the new position in California and actually trained the new person that was hired for the larger construction projects. Shortly after this new person was hired and trained, Jody Pastula, Regional VP, called her to meet to discuss ongoing projects.  At that meeting on September 15, 2015, Ms. Nuss was discharged. She was told that her position in Arizona was being terminated in October 2015 although she did not have a position in Arizona, but had been in a traveling position throughout the western region of the US. She was actually baited into training the younger person that was to replace her.

c.  Annually, Ms. Nuss received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

d.   Ms. Nuss was able to perform the duties of a regional facilities management position and, in fact, did perform those duties in a satisfactory manner.

e.  On or about September 15, 2015, Defendants terminated Ms. Nuss's employment because of her age.  Ms. Nuss was 55 years old at the time of her termination.

    f.   After terminating Ms. Nuss, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Nuss had been performing.

    g.   As a result of being discharged after 10 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Nuss suddenly found herself in desperate financial straits, unable to find a job at age 55 causing emotional pain & suffering.

211.    The unlawful employment practices complained of in the foregoing Paragraph were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Defendants caused Ms. Nuss to be discharged because of age in violation of the ADEA.  Ms. Nuss was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Nuss was a pretext for age discrimination.   Ms. Nuss filed a COD with the EEOC alleging age discrimination under ADEA.  As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Nuss.

212.    Plaintiff Peter Ortega was employed in the bowling industry for 14 years when he was unlawfully discharged by the Defendants on October 14, 2013.  Mr. Ortega was 47 years old at the time his employment was terminated.  Mr. Ortega filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.   In October 12, 1999, Mr. Ortega's employment began as a junior B-Mechanic working at the Woodside, Queens bowling center that was managed by Plaintiff, Adam Csernay that would be later acquired by the Defendants.

    b.   Mr. Ortega was then promoted to the higher position of a A-Mechanic enabling him to undertake work requiring more experience independently without supervision and to supervise other B-Mechanics.

    c.   Mr. Ortega was then promoted to the position of Facilities Manager where he had eight employees reporting to him.

    d.   Annually, Mr. Ortega received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

    e.   Mr. Csernay opposed any change to Mr. Ortega's employment based on his experience and his solid performance and dedication to the bowling center.

    f.   Over Mr. Csernay's objection his District Manager, Justin Hake, fired Mr. Ortega who was an older person at the time of his termination and Mr. Hake offered no reason or basis for the termination.

    g.   As a result of being discharged after 14 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Ortega suddenly found himself in desperate financial straits, unable to find a job at age 47 causing emotional pain & suffering.

213.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Ortega filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Mr Ortega to be discharged because of age in violation of the ADEA.  Mr. Ortega was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Ortega was a pretext for age discrimination.    As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Ortega.

214.    Plaintiff Gary Paone was employed in the bowling industry for 16 years when he was unlawfully discharged by the Defendants on June 20, 2015.  Mr. Paone was 56 years old at the time his employment was terminated.  Mr. Paone filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  In December 1999, Mr. Paone was hired as a District Manager for a bowling company that would be later acquired by the Defendants.

b.  Mr. Paone witnessed numerous instances of irrational employment decisions based on the hiring and firing of general managers after the Defendants acquire his company.

c.  As one example, Mr. Paone and another District Manager, Dan Cuddie, interviewed and recommended a qualified candidate for an open general manager position although he was much older and likely in his later 40's or early 50's. After a brief Skype interview with a senior executive of the Defendant, Mr. Tipton the candidate was denied employment.

d.  As one more example, Mr. Paone interviewed and recommended a female candidate in her late 50's with a strong Food & Beverage background, for an opening in a bowling center in Minneapolis, MN having a large restaurant and nightclub and who came with strong references.   After a brief Skype interview with a senior executive of the Defendant, Mr. Tipton the candidate was denied employment and stated to Mr. Paone he wanted someone closer to 'the beginning of their career versus the end of their career."

e.  As one more example, Mr. Paone interviewed a male candidate in his late 50's for a general manager position and advised Mr. Tipton of the candidates age and if he would take the time to interview him and Mr. Tipton's response was telling.  He stated, "No".   There was to be no conversation or explanation.

f.  Mr. Tipton advised Mr. Paone that he would not recommend any persons to CEO Tom Shannon that appeared older in age.

g.  Annually, Mr. Paone received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company he was employed by.

h.  Mr. Paone's employment was terminated based on his age.

i.  After terminating Mr. Paone Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Paone had been performing.

j.  As a result of being discharged after 16 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Paone suddenly found himself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

215.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Paone filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued a letter of determination finding reasonable cause to believe that Defendants caused Mr. Paone to be discharged because of age in violation of the ADEA, that Mr. Paone was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Paone's discharge was a pretext for age discrimination.

216.    Plaintiff Deborah Parlette was employed in the bowling industry for 36 years when she was unlawfully discharged by the Defendants on September 18, 2014.  Ms. Parlette was 59 years old at the time her employment was terminated.  Ms. Parlette filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.    On February 9, 1979, Ms. Parlette's employment began as a bowling center that would be later be acquired by the Defendants.

b.    Annually, for 36 consecutive years, she received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.    After the Defendants acquired the bowling center that Ms. Parlette managed, they schedule an audit at a time when the Defendants knew Ms. Parlette would be away on vacation, versus the standard practice of having the general manger present during the audit to address questions.

d.    During the audit, the Defendants auditors claimed, a customer was not charged fully for an item they purchased, one employee consumed an alcoholic beverage during a work shift, and on two occasions an employee had given away free food.

e.    Each of the individuals identified in the audit advised Ms. Parlette's direct report, Robert Moore that Ms. Parlette was not aware of the infractions, nor would approve and them and would follow company policy once she identified a policy infraction.

f.    The ages of all three persons identified in the audit we of the ages, 56, 52 and 48 and were all replaced by much younger persons under the age of 40.

97

g. The Defendants secured confessions via extortion from the 3 persons they accused of wrongdoing by threatening to have them arrested.

h. On November 11, 2016, Ms. Parlette was contacted by Mr. Moore and advised 'the big guys upstairs want to let you go and there is nothing I can do about it."

i. On November 23, 2015, Mr. Moore visited my bowling center and called a senior member of the Defendants human resources staff and advised me that I was being terminated for mismanaging a bowling center after 36 consecutive years of successfully managing the bowling center.

j. Notwithstanding her formal termination, and knowing she was set-up to fail and audit, Mr. Moore offered to help Mr. Parlette seek new employment as he knew of her good character and management capabilities.

k. After her termination, several colleagues contacted Ms. Parlette to seek her advice on managing bowling centers confirming her capabilities.

l. After Ms. Parlette employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Parlette had been performing.

m. As a result of being discharged after 36 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Parlette suddenly found herself in desperate financial straits, unable to find a job at age 59 causing emotional pain & suffering.

217. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. Parlette filed a COD with the EEOC alleging age discrimination under ADEA. After investigating her claims, the EEOC issued an LOD stating that Ms. Parlette did not have a prior disciplinary history, she was replaced by a younger employee and was discharged after an investigation was begun to deliberately monitor another worker in the protected age group. The EEOC found reasonable cause to believe that Defendants caused Ms. Parlette to be discharged because of age in violation of the ADEA, that Ms. Parlette was discharged as part of a company-wide pattern or

practice of discharging employees because of their age, 40 years and older and that Defendants'

explanation for Ms. Parlette's discharge was a pretext for age discrimination.

218.   Plaintiff Mark Peters was employed in the bowling industry for 2 years when he

was unlawfully discharged by the Defendants on May 23, 2016.  Mr. Peters was 35 years old at

the time his employment was terminated.  Mr. Peters filed a COD with the EEOC alleging

retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

    a.   On July 6, 2014, Mr. Peters began his employment as an assistant manager at a bowling center that would be later acquired by the Defendants.

    b.   Upon acquiring this bowling center, the Defendants planned to renovate it and make into an upscale Bowlero bowling center.

    c.   Immediately, Mr. Evans new general manager, Richard Clarke and his District Manager, Nick Scaccio targeted older persons to be managed out of their positions.

    d.   Mr. Peters refused to write-up and older, capable employee that fulfilled her employment responsibilities, but had a slight disability, for no reason other than to start a paper trail to terminated her employment.

    e.   Mr. Peters was then directed to create an undesirable work environment giving personnel low ranking work, constant shifts changes to make their personal lives harder to manage, and creating a double standard allowing younger employees that met the Defendants' youthful appearance criteria remain employed and avoid reprimands when doing poor quality work.

    f.   By not filing write-ups that were clearly false, Mr. Peter's responsibilities were revert to low hourly wage work versus that of an assistance general manager.

    g.   Mr. Peters contacted District Manager Nick Scaccio to raise his objections to the unlawful conduct and was in turn received a write-up for challenging management.

    h.   Mr. Peters then contacted the Defendants Director of Human Resources, Heather Webb, to report his side of the conversation with Mr. Scaccio and protest of receiving a write-up and Ms. Webb stated she would open an investigation.

    i.   On May 23, 2016, Mr. Peters employment was terminated with no reason given.

      j.   Annually, Mr. Peters received positive annual performance reviews and never once was the subject of a disciplinary incident or write-up.

219.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Peters filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Peters to be discharged because of age in violation of the ADEA, that Mr. Peters was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Peters' discharge was a pretext for age discrimination.

220.    Plaintiff Jim Reed was employed in the bowling industry for 5 years when he was unlawfully discharged by the Defendants on November 14, 2014.  Mr. Reed was 66 years old at the time his employment was terminated.  Mr. Reed filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

      a.   In December, 2009, Mr. Reed's employment began as an assistant general manager of a bowling center that would be later acquired by the Defendants.

      b.   On January 7, 2013, Mr. Reed was transferred to one of the highest volume bowling centers operate by the Defendant, El Dorado Bowling Center to serve as an assistant manager.

      c.   On January 8, 2013, Mr. Reed became the acting general manager.

      d.   In March, 2013, Mr. Reed became the general manager.

      e.   Mr. Reed's rapid progress indicated his qualification and capabilities of managing an important large business.

      f.   Annually, Mr. Reed received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

g.  When defendants acquired the bowling center managed by Mr. Reed, they
    installed a new district manager, Nick Scaccio, to oversee Mr. Reed.

h.  Immediately, the defendants hired a new assistant manager, Floresa Carpio, to
    work with Mr. Reed without his input or approval, essentially to undermine Mr.
    Reed and force him out of his position due to older age and appearance.

i.  While supposedly an underlying reporting to Mr. Reed, Ms. Carpio routinely
    countered Mr. Reed's decisions, gave conflicting directions to staff and was fully-
    sported by Mr. Scaccio, when Mr. Reed contacted him to discuss his concerns.

j.  No persons seeking to retain their employment would voluntarily challenge their
    employer in such an open, wanton and continuous manner as Ms. Carpio did
    knowing she had the approval of Mr. Scaccio to frustrate Mr. Reed.

k.  Mr. Scaccio, knew of Mr. Reed's schedule and routinely contacted him on his
    days off to request to make unnecessary and repeated request for Mr. Reed to
    provide him information that was easily accessible to Mr. Scaccio without need to
    have Mr. Reed meet his request.

l.  Routinely, Mr. Scaccio and Ms. Carpio would take actions to harass and
    embarrass Mr. Reed in the presence of his subordinates, causing significant
    pressure on Mr. Reed that impacted his health.

m.  The unfounded criticism created substantial daily mental pressure on Mr. Reed
    creating an objectively intolerable working environment caused escalating health
    problems for Mr. Reed.

n.  Mr. Reed health concerns arising from the mistreatment of him in a manner to
    manage him out of his employment resulted in a constructive termination of his
    employment.

o.  Ms.  Cario who was 30 years old replaced Mr. Reed.

p.  After Mr. Reed's employment ended Defendants hired younger employees who
    were under age forty into positions where they performed the same or similar
    duties as those that Mr. Reed had been performing.

q.  As a result of being discharged after 5 years of dedicated service to an industry
    which supported his household and in which he had developed close personal
    relationships with co-workers and customers alike, Mr. Reed suddenly found
    himself in desperate financial straits, unable to find a job at age 66 causing
    emotional pain & suffering.

221.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Reed filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Reed's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Reed to be constructively discharged because of age in violation of the ADEA, and that Mr. Reed was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

222.    Plaintiff David Reese was employed in the bowling industry for 24 years when he was unlawfully discharged by the Defendants at 64 years old.  Mr. Reese filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a.    Mr. Reese's employment began with Brunswick in April 1994 as a general manager of one bowling center. In 2004, he was promoted to Director of Operations overseeing 12 bowling centers, including 7 bowling centers in Arizona and 5 under-performing bowling centers in Texas. After 4 years in this position, Brunswick management requested he assistance with 5 under-performing bowling centers in the Illinois market, while still overseeing the 7 bowling centers in Arizona. Having improved the 5 under-performing bowling centers in Texas, those centers were re-assigned to a new Director of Operations in that region.  Mr. Reese was then assigned to general manager positions in larger bowling centers that needed to be improved.

    b.    In 2014 when Defendants acquired Brunswick Mr. Reese was originally given responsibility for 5 Brunswick centers in Arizona which was quickly increased by 4 more bowling for a total of 9 bowling centers which he was to oversee. There were then two district managers in Arizona with 9 bowling centers each, myself and Mr. Jason Hall. In the summer of 2016, a younger area manager was given responsibility for 3 bowling centers.

    c.    Annually, Mr. Reese received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    d.  On June 1, 2017, Mr. Reese was terminated due to a general reduction in the workforce. After 24 years of service, relocations and constant dedication to turn under-performing bowling centers into financially viable businesses, his employment was terminated with younger, much less experienced managers retaining their positions. Mr. Hall was approximately 30 years younger than Mr. Reese and significantly less experienced in both single center and multi-center management. The person that replaced Mr. Reese was also much younger and had very little experience with management beyond 3 units.

    e.  As a result of being discharged after 24 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Reese suddenly found himself in desperate financial straits, unable to find a job at age 64 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

223.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Reese filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating that the evidence revealed that Defendants promoted a younger Area Manager to District Manager in October 2016 increasing the number of managers in that region from two to three; that Defendants then made the decision to reduce the number of managers back to two and retained the two younger District Managers, effectively replacing Mr. Reese with a younger employee.   The EEOC found reasonable cause to believe that Defendants caused Mr. Reese to be discharged because of age in violation of the ADEA, that Mr. Reese was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Reese's discharge was a pretext for age discrimination.

224.    Plaintiff Margie Renstrom was employed in the bowling industry for 21 years when she was unlawfully discharged by the Defendants at 51 years old.  Ms. Renstrom filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  At all relevant times, Ms. Renstrom was employed by the Defendants as bar manager for Defendants' Glendale, Arizona facility.

b.  Ms. Renstrom's employment with Defendants began in February 1994, working 20 years for Brunswick and for a brief period after Brunswick was acquired by Defendants. She became the bar manager in 2000 and worked as the food and beverage manager briefly during that time. In February 2015, after 21 years of employment with positive performance reviews, her district manager, Jason Hall, alleged that she was not capable of keeping up with the demand of customers, directing an inexperienced employee to assist her. When Ms. Renstrom expressed concern about the assistant's failure to verify the age requirements of certain patrons to lawfully serve alcoholic beverages she was told to find a job elsewhere.

c.  Annually, Ms. Renstrom received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d.  On May 26, 2015, she was questioned by Mr. Hall and a person identified as 'Sandy' who told Ms. Renstrom there was evidence that she was giving away free alcoholic beverages which Ms. Renstrom denied. Sandy advised Ms. Renstrom that, while it was not her decision to terminate her, it would help Ms. Renstrom to save her job if she agreed in writing to giving away $100 of free drinks.  Ms. Renstrom reluctantly agreed, however, Mr. Hall stated it must be in the amount of $1000.  Ms. Renstrom only agreed to sign the admission to avoid losing her job. Mr. Hall placed her on suspension advising that someone would be calling her. She was never contacted by anyone from Defendants.

e.  Ms. Renstrom was able to perform the duties of bar manager and, in fact, did perform those duties in a satisfactory manner.  She subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

f.  On or about May 26, 2015, Defendants terminated Ms. Renstrom's employment because of her age.  Ms. Renstrom was 51 years old at the time of her termination.

g.  After terminating Ms. Renstrom, Defendants hired employees for its Glendale, Arizona, facility who were under age forty into positions where they performed the same or similar duties as those that Ms. Renstrom had been performing.

h.  As a result of being discharged after 21 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Renstrom suddenly found herself in desperate financial straits, unable to find a job at age 51 causing emotional pain & suffering.

225.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Renstrom filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence revealed that her district manager's questioning of Ms. Renstrom's ability to keep up with the demand of customers reflects age-based stereotyping and he sought to take actions against Ms. Renstrom for the actions of another employee and initiated the loss-prevention investigation.  The EEOC found reasonable cause to believe that Defendants caused Ms. Renstrom to be discharged because of age in violation of the ADEA, that Ms. Renstrom was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for terminating her employment was a pretext for age discrimination.

226.    Plaintiff Sami Rice was employed in the bowling industry for 13 years when she was unlawfully discharged by the Defendants on January 1, 2015.  Ms. Rice was 65 years old at the time her employment was terminated.  Ms. Rice filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  Ms. Rice was initially employed on an hourly basis in customer service at a bowling center that would be later acquired by the Defendants.

    b.  In time Ms. Rice was promoted to a shift leader position with much higher compensation and several persons reporting to her.

    c.  Annually, Ms. Rice received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    d.  Ms. Rice had a slight hand injury requiring a short recovery period.

    e.  When Ms. Rice returned to her employment, she was advised that she would be terminated.

f.   When Ms. Rice asked her managers for a reason for her termination after 13 years of a steady employment performance leading to increases in compensation and responsibility she was advised 'they needed to move on' with no further explanation for what that meant.

g.   After Ms. Rice's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Rice had been performing.

h.   As a result of being discharged after 13 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Rice suddenly found herself in desperate financial straits, unable to find a job at age 65 causing emotional pain & suffering.

227.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Rice filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Ms. Rice to be discharged because of age in violation of the ADEA, that Ms. Rice was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Ms. Rice's discharge was a pretext for age discrimination.

228.   Plaintiff Kevin Sass was employed in the bowling industry for 20 years when he was unlawfully discharged by the Defendants at 58 years old.  Mr. Sass filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.   At all relevant times, Mr. Sass was employed by the Defendants as District Manager for Defendants' Pennsylvania region.

b.   Mr. Sass's employment with Defendants' predecessor began in April 1997.  He worked for 17 years for AMF, and then for Defendants AMF upon its acquisition of AMF.  Hired as a general manager, he soon became a cluster manager of several bowling centers and then a district manager for the Pennsylvania region.

c.   Annually, Mr. Sass received positive performance reviews and never once was

the subject of a disciplinary incident or write-up.

d.  Shortly after AMF's acquisition by Defendants Sass's direct manager began to harass him and make demands that Mr. Sass believes were designed to make him appear as if he were failing, including write-ups for matters that were unbecoming of a person with his job title and experience. Due to this harassing retaliatory-like conduct, Mr. Sass submitted a letter to Defendants' Chief Executive Office, Tom Shannon, citing the basis for his forced resignation on the grounds that Shannon and his staff were forcing Mr. Sass out of his position by making unreasonable demands and developing a negative personnel file to be used against him. In June 2014 Mr. Sass was so harassed by management that he was compelled to leave his employment.

e.  Mr. Sass was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner.

f.  In June 2014, Defendants constructively terminated Mr. Sass's employment because of his age through the company-wide policy of "managing-out" whereby employees were forced to leave their employment because Defendants placed such additional burdens on their duties, wrongly accused them of bad conduct, or imposed upon them unreasonable schedules that it became unbearable to work there.  Mr. Sass was 58 years old at the time he was constructively terminated.

g.  After terminating Mr. Sass, Defendants hired employees for the Pennsylvania region who were under age forty into positions where they performed the same or similar duties as those that Mr. Sass had been performing.

h.  As a result of being discharged after 20 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Sass suddenly found himself in desperate financial straits, unable to find a job at age 58 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

229.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Sass filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Sass's resignation and that he was subject to disparate terms and conditions of employment due to his age.  The EEOC found

reasonable cause to believe that Defendants caused Mr. Sass to be constructively discharged because of age in violation of the ADEA, and that Mr. Sass was constructively discharged and subjected to disparate terms and conditions of employment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

230.    Plaintiff Matthew Schneider was employed in the bowling industry for 25 years when he was unlawfully discharged by the Defendants at 47 years old.  Mr. Schneider filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Mr. Schneider's employment began with the company in August 1992 as a counter attendant at Brunswick Northwest Bowl.  He became the assistant manager at Brunswick Deerbrook lanes, and over the years progressed to General Manager at Brunswick Frederick lanes, General Manager of Brunswick Niles bowl, General Manager of Brunswick Fair Lawn Lanes, and then to his final position at Brunswick Zone North Ridgeville. Increased responsibility and higher compensation accompanied each change of position.

b.  Annually, Mr. Schneider received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.  In his last employment review in September 2017, prior to being terminated, Mr. Schneider received a very positive review and a 2% salary increase.

d.  After nearly 25 years of working for the company, on or before November 3, 2017, by district manager, Dan Cuddie, went to Mr. Schneider's bowling center to question a counter person that reported to Mr. Schneider about transactions. Mr. Cuddie took this employee into a private office, called the company's loss prevention department and spent nearly two hours questioning him. After this meeting ended, Mr. Schneider was called into the office for a meeting and was told they found 'anomalies· with certain transactions involving this employee. When Mr. Schneider inquired as to the substance of the transactions, he was given no specific details. He was told that overall, his bowling center's costs were rising when, as general manager, he knew they were decreasing and that his bowling center was one of the best performing bowling centers in its district.  Not one example was offered on how this employee could have impacted the cost of sales as he did not close

108

transactions on food or beverage and only sold bowling lane and shoe rentals for which there is no direct cost. In each instance when Mr. Schneider asked for specific information, Mr. Cuddle would change the subject.

e.   Mr. Cuddie then asked Mr. Schneider if the employee in question had access to the safe and keys to the building, which he did. Mr. Cuddie already knew this as the employee and Mr. Schneider were the only two persons that opened and closed the bowling center. The conversation ended abruptly with Mr. Cuddle asking Mr. Schneider for his keys and access card to the bowling center.  Mr. Cuddle told Mr. Schneider to take the weekend off until the investigation of the employee was concluded. On November 6, 2017, Mr. Schneider received a telephone call from Mr. Cuddle informing him that his employment was terminated for violating a company policy, although not one specific policy was mentioned.

f.   Mr. Schneider was 47 years old at the time of his termination. He was initially replaced by Eric Gray, his former assistant manager who was approximately 28 years old. Mr. Gray later left the position and was replaced by Markus Bonincheck who was approximately 25 years old.

g.   As a result of being discharged after 25 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Schneider suddenly found himself in desperate financial straits, unable to find a job at age 47 causing emotional pain & suffering.

231.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Schneider filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Mr. Schneider to be discharged because of age in violation of the ADEA.  Mr. Schneider was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Schneider was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Schneider.

232.    Plaintiff Tracy Schneider was employed in the bowling industry for 31 years when she was unlawfully discharged by the Defendants because of age.  Ms. Schneider was 58 years old at the time her employment was terminated.  Ms. Schneider filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  Ms. Schneider's employment began with AMF in October 1988.  Her responsibilities grew in the company and her annual compensation increased. When AMF was acquired by Bowlmor, employees were advised of a new direction that the company would take by emphasizing parties and private events over league bowling. Staff was required to increase rates significantly for league bowlers which caused revenues to decrease as league bowlers moved away to other competing bowling centers. Notwithstanding these changes the financial performance of Ms. Schneider's bowling center was very good with league revenues and league bowler count performing well for the entire year.

b.  Annually, Ms. Schneider received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.  In the last year of her employment, Ms. Schneider was constantly being pressured and her work scrutinized by then district manager, Scott Chauncey, notwithstanding her consistent, good performance and many years of service. Under constant watch by Mr. Chauncey, she was placed on a Performance Improvement Plan (PIP).  Although she was insulted, Ms. Schneider stayed the course without protest and continued to work so as to maintain her employment,

d.  Mr. Chauncey then advised Ms. Schneider that her PIP score was sub-par notwithstanding that she met every PIP goal that was set except the payroll goal and that was only under by .5% of the targeted score. Mr. Chauncey paid an unexpected visit to Ms. Schneider's bowling center. While he was there, another employee who had collected league bowling fees placed the funds on a counter in the back office--a restricted area for management only that was away from the general public and under camera supervision at all times--for Ms. Schneider to put in the safe. Ms. Schneider, attending to a guest who had fallen down and was hurt, walked by the funds twice before placing the bowling league cash into the safe after the customer emergency had been handled. Aware that standard procedures required her to place cash in the safe as standard procedure, under the circumstances, Ms. Schneider's immediate priority was tending to the injured guest.

e.  Even though the cash had been stowed in the office, away from the public and in full view of the security cameras, Mr. Chauncey cited Ms. Schneider's delay in placing the cash into the safe, as the basis to terminate her. She was replaced by Mr. Blair, the former operations manager who is much younger than 40 years old.

110

f. Ms. Schneider was able to perform her duties and, in fact, did perform those duties in a satisfactory manner. She subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

g. Defendants terminated Ms. Schneider's employment because of her age. Ms. Schneider was 59 years old at the time of her termination.

h. After terminating Ms. Schneider, Defendants hired employees for the facility who were under age forty into positions where they performed the same or similar duties as those that Ms. Schneider had been performing.

i. As a result of being discharged after 31 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Schneider suddenly found herself in desperate financial straits, unable to find a job at age 58 causing emotional pain & suffering.

233. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. Schneider filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Ms. Schneider to be discharged because of age in violation of the ADEA. Ms. Schneider was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Schneider was a pretext for age discrimination. As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Schneider.

234. Plaintiff Kathy Segers was employed in the bowling industry for 24 years when she was unlawfully discharged by the Defendants at 55 years old. Ms. Segers filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a. Ms. Segers employment with Bowlero's predecessor began on April 10, 1989, as a general manager. In 1996 she was promoted to Metro NY Cluster manager overseeing five centers in the New York and Connecticut markets. In 1997, she was promoted to Mid-Atlantic Region Manager and relocated to Virginia. She

was one of 10 region managers and the only female. At one point she oversaw 47 bowling centers.  She had worked approximately 24 years for Brunswick when it was acquired by Bowlmor. Her final performance review prior to her termination was very positive.

b.  On November 19, 2013, Ms. Segers was advised that her position was being eliminated by senior VP, Larry Ross, and HR VP, Christine Rees-Zecka. She was replaced by two general managers who were much younger.  Shortly thereafter, her position was recreated.

c.  Annually, Ms. Segers received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d.  At the time of her discharge, she was one of two female district managers. The other female, who was under the age of 40, continued her employment despite having received documented performance counseling. At the time of termination, Ms. Segers was owed 88 hours of unused vacation and 480 hours of personal/sick time. She was forced to sign a waiver agreement without which she was told she would not receive the funds that were owed to her.

e.  Ms. Segers was able to perform the duties of Mid-Atlantic Region Manager and, in fact, did perform those duties in a satisfactory manner.

f.  On or about November 19, 2013, Defendants terminated Ms. Seger's employment because of her age.  She subsequently learned that Bowlmor used similar tactics of "eliminating positions" as a pretext for discharging employees based on their age.  Ms. Segers was 55 years old at the time of her termination.

g.  After terminating Ms. Segers, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Segers had been performing.

h.  As a result of being discharged after 24 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Segers suddenly found herself in desperate financial straits, unable to find a job at age 55 causing emotional pain & suffering.

235.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Segers filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused

Ms. Segers to be discharged because of age in violation of the ADEA, that Ms. Segers was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Ms. Segers's discharge was a pretext for age discrimination.

236.     Plaintiff Michael Serignano was employed in the bowling industry for 27 years when he was unlawfully discharged by the Defendants at 58 years old.  Mr. Serignano filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a.  At all relevant times, Mr. Serignano was employed by the Defendants as general manager for Defendants' West Babylon, New York, facility.

    b.  Mr. Serignano working 27 years for AMF and for a brief period after Brunswick was acquired by Bowlmor. He started as a night manager, became an assistant manager and ultimately general manager of the facility.  As general manager he was responsible for millions of dollars at the center annually. Never once was there ever a financial discrepancy in his management of the center's funds.

    c.  Annually, Mr. Serignano received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    d.  On September 22, 2014, he was discharged because approximately $3,000 of scratch off lottery tickets were missing.  Defendants tried to pressure him into admitting that he was responsible for the missing lottery tickets and even had a lawyer contact him claiming he had another employee arrested for theft and they had a video. Mr. Serignano denied any involvement nor was there any evidence from which it could be concluded that he was responsible for the missing lottery tickets.

    e.  Mr. Serignano was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner.  She subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

    f.  On or about September 22, 2014, Defendants terminated Mr. Serignano's employment because of his age.  Mr. Serignano was 58 years old at the time of his termination.

    g.  After terminating Mr. Serignano, Defendants hired employees for its West Babylon, New York, facility who were under age forty into positions where they

performed the same or similar duties as those that Mr. Serignano had been performing.

h. As a result of being discharged after 27 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Serignano suddenly found himself in desperate financial straits, unable to find a job at age 58 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

237.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Serignano filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating that the evidence revealed that Mr. Serignano had no prior related disciplinary history, and was replaced by a younger employee who, while with the protected age group, was significantly younger.  The EEOC found reasonable cause to believe that Defendants caused Mr. Serignano to be discharged because of age in violation of the ADEA, that Mr. Serignano was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and, although acknowledging that Mr. Serignano had signed a statement admitting to action that cost the Defendants $360, Defendants' reason for Mr. Serignano's discharge was a pretext for age discrimination.

238.    Plaintiff Sabra Shafer was employed in the bowling industry for 26 years when she was unlawfully discharged by the Defendants at 64 years old.  Ms. Shafer filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a. Ms. Shafer's employment with Defendants' predecessor began in September 1987.  She worked for 26 years for AMF and only shortly for Defendants its acquisition of AMF.  Throughout her employment she consistently received positive performance reviews and additional pay increases. After Bowlmor became the new owner, she was asked on several occasions by her district manager, Michael Hoerner, when she was going to retire to which Ms. Shafter

114

consistently responded that she had no plan to retire as she needed to work financially.

b. On October 1, 2013, Mr. Hoerner called Ms. Shafer by telephone to advise her that her employment was being terminated without a valid reason after 26 years of service. She was told that she must sign an agreement if she wanted to receive funds that were owed to her by Defendants. In financial straits, Ms. Shafer had no choice other than to sign the agreement.

m. Annually, Ms. Shafer received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c. On October 1, 2013, Defendants terminated Ms. Shafer's employment because of her age. Ms. Shafer was 64 years old at the time of her termination.

d. After terminating Ms. Shafer, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Shafer had been performing.

e. As a result of being discharged after 26 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Shafer suddenly found herself in desperate financial straits, unable to find a job at age 64 causing emotional pain & suffering.

239. The unlawful employment practices complained of in the foregoing Paragraph were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. Shafer filed a COD with the EEOC alleging age discrimination under ADEA. After investigating her claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Ms. Shafer to be discharged because of age in violation of the ADEA, that Ms. Shafer was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Ms. Shafer's discharge was a pretext for age discrimination.

240. Plaintiff Kelly Shannon was employed by the defendant Bowlmor AMF Corp. for 2 years when she was unlawfully discharged on March 17, 2014. Ms. Shannon was 32 years old

at the time her employment was terminated.  Ms. Shannon filed a COD with the EEOC alleging

retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

    a.  In March 2012, Ms. Shannon was initially employed in a human resources
        professional supporting the northeastern region of the United States.

    b.  In March 2013, Ms. Shannon was promoted to oversee five districts, including the
        company's Baltimore District which was the most demanding in the company due
        to its high turnover rate and loss prevention issues from theft.

    c.  Ms. Shannon's compensation increased $60,000 to $70,000 in just six months
        demonstrating the increased responsibility she was trusted to manage.

    d.  Annually, Ms. Shannon received positive annual performance reviews and never
        once was the subject of a disciplinary incident or write-up until the Defendants'
        purchased the company she was employed by.

    e.  When the defendants acquired the company Ms. Shannon was employed by, she
        was placed under significant pressure to terminate employees that the Defendants
        no longer desired based on age and appearance.

    f.  Ms. Shannon as a senior human resources employee had first-hand knowledge
        that Bowlero's CEO Tom Shannon and vice president Larry Ross were making
        these discriminatory decisions, and instructing the Director of Human Resources,
        Heather Webb, to place pressure on Ms. Shannon to terminate designated persons,
        even though there was no rational basis for doing so.

    g.  CEO Tom Shannon demanded to conduct 2- to 3-minute Skype interviews with
        potential candidates intended solely to gauge the appearance and age of the
        candidate.

    h.  Ms. Shannon on numerous occasions refused to terminate persons based on age
        and vigorously protested the termination of Plaintiff Martinez which led to her
        own discharge in retaliation for opposing Defendants' unlawful actions.

    i.  The Defendants had a company policy that provided that an employee who
        received a citation for driving under the influence (DUI) violation involving a
        'may' be discharged.

    j.  When learning Ms. Shannon had a recent experience involving a DUI charge,
        without giving Ms. Shannon any due process to explain her circumstances, her
        employment was immediately terminated.

    k.  As a human resource professional, Ms. Shannon had access to substantial human
        resource related information as witnessed first-hand of numerous violations of

company policy that were ignored or overlooked if the employee just comported with the arbitrary decisions of its most senior leaders, including CEO Tom Shannon and Vice President Larry Ross.

241.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Shannon-Carr filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Ms. Shannon-Carr to be discharged because of age in violation of the ADEA.  Ms. Shannon-Carr was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Shannon-Carr was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Shannon-Carr.

242.   Plaintiff Ken Synder was employed in the bowling industry for 4 years when he was unlawfully discharged by the Defendants on December 1, 2013.  Mr. Snyder was 43 years old at the time his employment was terminated.  Mr. Synder filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.   In February, 2013 Mr. Synder's employment began as a facilities manager at a bowling that would be later acquired by the Defendants.

b.   Within one year of the commencement of his employment, Mr. Synder was promoted to being the assistant manager.

c.   Within six months of becoming an assistant manager. Mr. Synder was promoted to become a general manager.

d.   Annually, Mr. Synder received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

e.   Once the Defendants acquired the bowling center Mr. Synder managed, he was subjected to a targeted campaign to be 'managed out' with constant unnecessary scrutiny, relentless challenges to even the smallest detail doe write-ups

notwithstanding the financial and operating success of the bowling centers creating an objectively intolerable working environment.

f.  Mr. Synder's health concerns and fear of being fired which would have substantially impaired his chances of seeking new employment caused him to leave his employment.

g.  After Mr. Synder's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Reed had been performing.

h.  As a result of being discharged after 4 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Snyder suddenly found himself in desperate financial straits, unable to find a job at age 43 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

243.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Snyder filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Snyder's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Snyder to be constructively discharged because of age in violation of the ADEA, and that Mr. Snyder was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

244.   Plaintiff Steven Sylvester was employed in the bowling industry 34 years when he was unlawfully discharged by the Defendants at 55 years old.  Mr. Sylvester filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.  At all relevant times, Mr. Sylvester was employed by the Defendants as Director of Construction out of Defendants' Mechanicsville, Virginia, facility.

118

b.  Mr. Sylvester's employment with Bowlero's predecessor began in January 1981. He worked for 34 years for AMF and only shortly for Bowlmor AMF upon its acquisition of AMF.  Throughout his employment he earned annual compensation increases based on his consistent positive track record and performance.  On January 20, 2015, after Bowlmor AMF had acquired AMF, his employment was terminated by Tom McGee who was instructed by senior management to tell Mr. Sylvester that his position was being eliminated. Even though there were positions was told to signed a waiver agreement as he would not receive the funds unless he did so.

c.  Mr. Sylvester was able to perform the duties of Director of Construction, project manager and facilities manager and, in fact, did perform those duties as Director of Construction and facilities manager in a satisfactory manner.

d.  Annually, Mr. Sylvester received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

e.  On January 20, 2015, Defendants terminated Mr. Sylvester's employment because of his age.  He subsequently learned that Bowlmor used similar tactics of "eliminating positions" as a pretext for discharging employees based on their age.  Mr. Sylvester was 55 years old at the time of his termination.

f.  After terminating Mr. Sylvester, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Sylvester had been performing.

g.  As a result of being discharged after 34 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Sylvester suddenly found himself in desperate financial straits, unable to find a job at age 55 causing emotional pain & suffering.

245.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Sylvester filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Mr. Sylvester to be discharged because of age in violation of the ADEA.  Mr. Sylvester was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Sylvester was a pretext for age discrimination.  As of the date of Plaintiffs'

request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Mr. Sylvester.

246.    Plaintiff Theresa Synol was employed in the bowling industry for 29 years when she was unlawfully discharged by the Defendants at 61 years old. Ms. Synol filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.   Ms. Synol's employment with Defendants began in September 1989 at the Feasterville, Pennsylvania location which was then independently owned. In August 1995 the center acquired by Brunswick Bowling Corporation which in turn was acquired by Defendants in October 2014.  During her 25-year career with Brunswick, she supported both the front desk managers and the back office administrative functions. She performed her job competently without any complaints or write-ups as to any infringements of company policies.

b.   Annually, Ms. Synol received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.   Ms. Synol has always had a slight handicap requiring the use of a mobilized scooter to walk long distances. Previous managers, GM John Antonelli, GM Trish Solich or DM Ron Lichtenberger, did not see her use of the as a hindrance to her work.  This changed, however, when the Feasterville bowling center was converted to a new hip bowling and entertainment center, branded "Bowlero" where someone of her age and slight handicap did not fit the image that management wanted to project for the cool, new entertainment centers.

d.   After the grand opening of the new Bowlero format, Ms. Synol was no longer required to do 'checks' at events to ensure customers were treated properly and were satisfied.  Kelly Opalka who was hired to assist her with new hire onboarding duties eventually took those duties away from Ms. Synol. Similarly, the center's general manager, Dennis Smith, had Ms. Synol transfer duties to Chris Curtis.

e.   After the grand opening, Ms. Synol was given the title "Administrative Manager" with a scope of employment consisting of 46 distinct tasks that even Mr. Lichtenberg opined would be impossible for any one person to satisfactorily perform, especially since most items that needed to be completed in a relatively short time frame also required input from persons outside of Ms. Synol's control.

f.   In June, 2018, Ms. Synol was given a "final" written notice which made reference to bowling lanes not being properly treated with oils prior to a senior bowling tournament and a citation for cleaning issues, neither of

which were duties for Ms. Synol was responsible.

g.   On August 21, 2018, her employment was terminated citing mistakes that had been made by other persons but had been attributed to her and for minor incidental errors with respect to matters over which Ms. Synol was not directly responsible.

h.   As a result of being discharged after 29 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Synol suddenly found herself in desperate financial straits, unable to find a job at age 61 causing emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

247.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Synol filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Ms. Synol to be discharged because of age in violation of the ADEA.  Ms. Synol was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Synol was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Synol.

248.    Plaintiff Thomas Tanase was employed in the bowling industry for 22 years when he was unlawfully discharged by the Defendants on March 12, 2014.  Mr. Tanase was 61 years old at the time his employment was terminated.  Mr. Tanase filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.   Mr. Tanase's employment with the Defendant began in 2001 as a vice president of Information technology (IT) working in the Defendants' New York City office while still running my own company that offered point-of-sale (POS) systems on a part time basis.

b.   In 2013, the Defendants' purchased the 220+ bowling centers once operated as

AMF in a bankruptcy acquisition and began its plans to remake all bowling locations into the Bowlmor (now known as Bowlero) into new hip entertainment centers catering to younger customers desiring to bowl as a form of entertainment, versus the traditional AMF league bowlers that enjoyed the game as a sport.

c.   Prior to acquiring AMF, the Defendant operated around 7 bowling centers in the New York City market that were operated more as fashionable entertainment centers with young attractive employees, new arcade games, enhanced food and alcoholic beverage menus all to attract a new wave of younger customers.

d.   This change was significant in terms of the sheer size in growth the Defendants would take with bowling centers located across the United States allowing the Defendants to copy its format for young and hip bowling centers by remaking the newly acquired bowling centers into the Bowlero format, not the traditional league bowling format under AMF.

e.   In his COD filed with the EEOC Mr. Tanase stated under oath that:

    i.   After the Defendants acquired the AMF bowling centers the company's employee turnover rate changed dramatically to be as high as 80-90% as the Defendants routinely terminated older employees and replaced them with much younger employees to fit the new image the Defendants desired.  This included new menus, upgraded food offerings and cocktails and more colorful entertainment-oriented locations, beyond the sport of bowling.

    ii.   The alleged, pre-textual basis for these terminations ranged widely, but it was known internally within the executive offices company that if your appearance was old, or you were overweight and old you were subject to being 'managed out', a term that was understood throughout the company for finding some basis to terminate a person, or to create circumstances that would lead to an employee to resign as a constructive termination because of constant haranguing from management, unnecessary discipline and corrections and creating embarrassing situations for the employee making his/her employment nearly unbearable.

    iii.   In July, 2015, Mr. Tanase became interim Chief Information Officer (CIO) and one year later he became the permanent CIO.

    iv.   As CIO Mr. Tanase was able to add great value to the Defendants and was asked constantly to assist Bowlmor CEO Tom Shannon "(Shannon")".

    v.   In his 20-year history, Mr. Tanase witnessed first-hand how closely

involved Shannon was in personnel decisions and often needed assistance to conduct virtual interviews with new candidates that often lasted just 2-3 minutes and were essentially a means for Shannon to judge the age and appearance of the candidate for youthfulness and physical attraction and make a final decision on that basis.

vi.   Members of the Defendants sales and operations teams would create the Zoom/Microsoft Teams meetings and often Mr. Tanase was involved in getting the meeting-functional on Shannon's computer and knew first-hand that the Skype meetings lasted just a few minutes.

vii.   Shannon openly conducted himself in a loose unfiltered manner showing no regard for anti-discrimination laws and often even made statements that were embarrassing. His flagrant interest in women is known throughout the company as he is often on pub1ic display with new attractive women even at functions more typical of management business meetings, where acquaintances or dates have no place in attending.  On one occasion Mr. Tanase was asked to program Shannon's telephone to make it appear as if he was in Germany when he was actually in Russia regarding a personal matter with a young woman he was romantically linked too, but didn't want his board of directors to know his whereabouts and what he was doing,

viii.   Shannon often made open remarks and shared emails of his dislike of liberal-biased persons.  He made racial comments and especially-inappropriate "Blonde Women" jokes and always treated women as an inferior class to men.

ix.   Shannon also instituted the "Timberland Boots" policy which was intended to deter African American males from being welcomed at the Defendants' bowling centers.  Eventually this policy became well-known internally as the "Boots Policy."

x.   Shannon was behind another well-known policy against wearing baseball caps backwards that was also designed 'specifically' to deter African American males being welcomed at the Defendants bowling centers. This policy became well-known internally as the "Hats Policy."

xi.   Shannon was continuously engaging in personal relationships with women that were employed by the Defendants and many were then given much higher levels of authority and compensation.   In instances where a complaint by a female would arise against Shannon, these persons would receive severance payments well-beyond traditional career-ending severance payments as a means to silence any legal threats and included very strict severance agreements barring any such

disclosure.

xii. Notwithstanding the open nature of the "Boots" and "Hats" policies, Shannon's conduct and remarks in the office, and decisions at Defendants' business involving personnel were made in-person or by telephone to avoid any written record of such conduct.

xiii. Since the initial filing of CODs by Plaintiffs' counsel on behalf of 76 other former employees of the Defendant for age discrimination and retaliation for opposing age discrimination, Mr. Tanase often witnessed direct statements outwardly disparaging Daniel Dowe and plans to take vindictive actions against him personally and professionally for what appeared to be normal work of his law firm in representing people having legitimate legal rights. Of equal measure were disrespectful statements about the EEOC and its authority to rule on the CODs to bring justice to aggrieved persons seeking redress from injuries sustained from the Defendants' conduct.

xiv. Even with the two unfavorable decisions after long investigations by the EEOC finding the Defendant in violation of federal anti-discrimination laws, Shannon and top executives at Bowlmor continued to share their open disdain of the investigation, the proceedings, the EEOC's determinations and Mr. Dowe to create a false impression within the company that the EEOC matters lacked any legal significance.

f. The same conduct by Shannon and his executive team were on display relating to weaknesses in accounting controls and operational checks and balances found by its outside auditors whereby typical to the Defendants and Shannon, they address it personally by casting aspersions at the accounting firms making these claims and then dismissing them.

g. Annually, Mr. Tanase received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

h. Prior to being terminated the very typical pattern of conduct of "managing out" ensued against Mr. Tanase whereby the Defendants installed a much younger person as someone that would help Mr. Tanase.

i. Almost immediately there were signs of Mr. Tanase being undermined by this new person who was hosting staff meetings in Mr. Tanase's absence and engaging him staff members with the central purpose of finding some fact or statement or to distort any set of circumstances to use against Mr. Tanase as a pre-text to terminate Mr. Tanase's employment and fill his position with a much younger employee.

j.  Knowing circumstances were ongoing that gave rise to Mr. Tanase believing his employment was coming to an end, he met with then president of the Defendant, Brett Parker, in April 2023 who he denied Mr. Tanase was being managed-out.

k.  Mr. Tanase also expressed his concerns of being under constant harassment and disrespect to Danielle Capestany, a senior member of the Defendants' Human Resource HR department.

l.  The pressure of the harassment and condescension and ultimately of losing his position after giving 22 years of service in one industry and knowing that new employment prospects would be very challenging has caused Mr. Tanase to seek medical help and a prescription to aid my anxieties.

m.  In May 2023, the Defendants terminated Mr. Tanase and replaced by a much younger male employee.

n.  During the process to negotiate a severance package, Defendants sent Mr. Tanase a draft of a Separation Agreement that specifically stating his employment was terminated.

o.  Mr. Tanase knew how the Defendants' operated internally especially with respected to personnel decisions that he taped three telephone calls with Parker whereby Parker seeking to stop Mr. Tanase from contacting the EEOC or hiring Plaintiffs' counsel to file a COD, threatened to report Mr. Tanase to the FBI and local police as a form of extortion to give up legal rights for a cash severance.

p.  Mr. Tanase refused such strong-arm tactics and caused a COD to be filed with the EEOC and has sued Mr. Parker in Virginia State court for extortion.

q.  After Mr. Tanase's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Tanase had been performing.

r.  As a result of being discharged after 22 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers, Mr. Tanase suddenly found himself in desperate financial straits, unable to find a job at age 61 causing emotional pain & suffering.

249.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  After

investigating his claims, the EEOC issued an LOD dated February 28, 2024, stating that the evidence revealed that at no time did Mr. Tanase intend to resign nor would his statements or actions be viewed by a reasonable person as indicating an objective intent to resign given that Mr. Tanase was working when notified that his "resignation" had been accepted.  The evidence further revealed that Defendants in terminating Mr. Tanase, mischaracterized his disagreement with Mr. Eckster as a pretextual justification for falsely asserting that he had resigned and then discharged him from his employment.  The LOD further reflects the EEOC's determination that Defendant **'has maintained a practice of "managing out" older workers, wherein [Defendant] officials harass and closely scrutinize such workers looking for purported justification to discharge them.  That practice was applied to [Mr. Tanase]. Eckster's conduct toward [Mr. Tanase] included unwarranted hostility, frequent criticism, unnecessary correction of employee's work, and undermining the employee's authority and role vis-à-vis subordinates and vendors."**  EEOC further found reasonable cause to believe that Defendants caused Mr. Tanase to be discharged because of age in violation of the ADEA, that Mr. Tanase was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Mr. Tanase's discharge was a pretext for age discrimination.

250.    Plaintiff Don Tuttle was employed in the bowling industry for 3 years when he was unlawfully discharged by the Defendants at 50 years old.  Mr. Tuttle filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

      a.  Mr. Tuttle's employment with Defendants began in April 2010 as a district manager.  A year later he was promoted to regional vice president and continued to work for AMF for another 3 years prior to its acquisition by Bowlmor.  Throughout his employment, he consistently received positive performance reviews and additional pay increases. In November 2013, vice president of human resources, Christina Rees-Zecha, advised that his employment was being

terminated "at the discretion of Tom Shannon", Bowlmor's Chief Executive Officer. He was given a severance agreement, which he had not choice by to sign to secure any funding he could get for his family because of the unexpected and unexplained termination.

b. Mr. Tuttle was able to perform the duties of district manager and, in fact, did perform those duties in a satisfactory manner for many years.

c. Annually, Mr. Tanase received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

d. In November 2013, Defendants terminated Mr. Tuttle's employment because of his age. Mr. Tuttle was 50 years old at the time of his termination.

e. After terminating Mr. Tuttle, Defendants hired employees for who were under age forty into positions where they performed the same or similar duties as those that Mr. Tuttle had been performing.

f. As a result of being discharged after 3 years of dedicated service to an industry which supported his household, Mr. Tuttle suddenly found himself in desperate financial straits, unable to find a job at age 50 causing emotional pain & suffering.

251. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Mr. Tuttle filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Mr. Tuttle to be discharged because of age in violation of the ADEA. Mr. Tuttle was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Mr. Tuttle was a pretext for age discrimination. As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued a letter of determination for Mr. Tuttle.

252. Plaintiff Rich Valentine was employed in the bowling industry for 40 years when he was unlawfully discharged by the Defendants at 67 years old. Mr. Valentine filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. Mr. Valentine's employment with Bowlero's predecessor began in October 1974. Over a very long career he consistently progressed to General Manager, District Manager and ultimately became a Regional Vice President, earning consistent increases in salary and responsibilities and favorable annual written performance reviews. In December 2014, he met with senior vice president, Larry Ross. When asked about his future plans, Mr. Valentine indicated he intended to work for another three years which Mr. Ross was 'glad to hear'. Three weeks later Mr. Valentine was terminated on grounds that his position was eliminated.

b. Mr. Valentine was able to perform the duties of Regional Vice President and, in fact, did perform those duties in a satisfactory manner. He subsequently learned that Bowlmor used similar tactics of "eliminating positions" as a pretext for discharging employees based on their age.

c. In or about December 2014, Defendants terminated Mr. Valentine's employment because of his age. Mr. Valentine was 67 years old at the time of his termination.

d. After terminating Mr. Valentine, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Valentine had been performing for that region.

e. As a result of being discharged after 40 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Valentine suddenly found himself in desperate financial straits, unable to find a job at age 67 causing emotional pain & suffering.

253. The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Mr. Valentine filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Valentine to be discharged because of age in violation of the ADEA, that Mr. Valentine was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Valentine's discharge was a pretext for age discrimination.

254. Plaintiff Rich Van Gilder was employed in the bowling industry for 7 years when he was unlawfully discharged by the Defendants on March 20, 2015. Mr. Van Gilder was 55

years old at the time his employment was terminated.  Mr. Van Gilder filed a COD with the

EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a.  At all relevant times, Mr. Van Gilder was employed as a general manager for a bowling center that would be later acquired by the Defendants.

b.  Mr. Van Gilder employment began working for Brunswick for a brief period after its acquisition by Defendants.  He was a highly successful manager and never had a negative annual review or blemish on his performance record and received annual raises in his compensation.  Mr. Van Gilder never once was the subject of a disciplinary incident or write-up

c.  In his first review after the Defendants acquired his bowling center, management glossed over the strong financial performance to focus on 'subjective smaller issues' and gave him a poor review – his first in 24 years.

d.  The Defendants then issued a 'write-up' for the first time in his 24-year career for not writing up a subordinate although he orally spoke with this person believing the communication was sufficient for the incident that needed to be addressed.

e.  The write-up was classified as a 'Final Warning'.

f.  In February 2015 a new manager visited his bowling center and acknowledged the financial performance but suggest the bowling center could be cleaner.

g.  Weeks later in what seemed to be an odd and rapid recurrence of reviews of his performance the same manager visited his bowling center and acknowledged the cleaner appearance.

h.  Weeks later, again, in what seemed to be an odd and rapid recurrence of reviews of his performance the same manager visited his bowling center and spotted some areas he contended needed to be cleaner and terminated his employment on March 20, 2015.

i.  Mr. Van Gilder was a targeted subject of being managed out of his employment via a program plan of harassment, and repeated and unnecessary reviews of his work and undue scrutiny.

j.  After terminating Mr. Van Gilder, Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Van Gilder had been performing.

k.  As a result of being discharged after 7 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Van Gilder suddenly

found himself in desperate financial straits, unable to find a job at age 55 causing emotional pain & suffering.

255. The unlawful employment practices complained of in the foregoing Paragraph were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Mr. Van Gilder filed a COD with the EEOC alleging age discrimination under ADEA. After investigating his claims, the EEOC issued an LOD stating that the evidence revealed that Mr. Van Gilder did not have a prior disciplinary history before being issued a final warning; that Defendants admitted to replacing Mr. Van Gilder with younger employee; that following the issuance of the second final warning in December 2014, Defendants failed to identify any specific performance issue necessitating Mr. Van Gilder's discharge on March 24, 2015 and it appears that the asserted performance-based reasons were not of sufficient magnitude to motivate the discharge. The EECO found reasonable cause to believe that Defendants caused Mr. Van Gilder to be discharged because of age in violation of the ADEA, that Mr. Van Gilder was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Van Gilder's discharge was a pretext for age discrimination.

256. Plaintiff Dan Van Wart was employed in the bowling industry for 28 years when he was unlawfully discharged by the Defendants at 61 years old. Mr. Van Wart filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a. Mr. Van Wart's employment with Defendants began in June 1987 as a general manager, working 27 years for Brunswick prior to its acquisition by Bowlmor AMF. Due to a health issue in 2007, he stepped down as a general manager but continued to work as an officer manager.

    b. Annually, Mr. Van Wart received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

c.  In mid-2015, after AMF Bowlmor's acquisition of Brunswick, a new general manager position opened in Brunswick Zone Kyrene for which Mr. Van Wart applied.  Prior to his interview for the position, a regional vice president, Jody Pastula, visited the bowling center explaining that new Defendants' managers were "different" and had to be "high energy" people willing to work long hours.  Nevertheless, Mr. Van Wart restated his interest in taking the interview the following day with David Reese, who had been Mr. Van Wart's direct supervisor when he had been a general manager and who knew of Mr. Van Wart's qualifications.

d.  Mr. Reese in the interview suggested that Mr. Van Wart may not be getting the position due to age discrimination could not assert that as a fact.

e.  Thereafter, Mr. Van Wart received a telephone call from Cloyd Lindsey, HR Director, mentioning his health issues and forcing him to sign a Memorandum of Understanding (MOU) to undertake a 30-day trial to determine if he could work 40-45 hours a week.

f.  Although he had received an outstanding grade on his last performance review, Mr Van Wart was next interrogated and harassed by Jason Hall, District Manager, and Darlene Sharp, Loss Prevention Officer, from November 2 through November 11, 2015, with respect to a series of humiliating questions regarding his performance.  Thereafter, he was given a two-week schedule whereby his normal 7am to 5pm hours were replaced with a variety of shifts. The two weeks of harassing interrogation and the startling change to his work schedule made it increasingly difficult for Mr. Van Wart to maintain his employment and caused him to resign.

g.  On or about November 11, 2015, Defendants constructively terminated Mr. Van Wart's employment through the company-wide policy of "managing out" whereby employees were forced to leave their employment because Defendants placed such additional burdens on their duties or schedules that it became unbearable to work there. Mr. Van Wart was 61 years old at the time of his termination.

h.  Mr. Van Wart was able to perform the duties of both office manager and general manager and, in fact, did perform those duties in a satisfactory manner.  He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age and realized that he was not afforded the opportunity to interview for the job of general manager due to his age.

i.  After terminating Mr. Van Wart, Defendants hired employees for its Gilbert, Arizona, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Van Wart had been performing.

j.  As a result of being discharged after 28 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Van Wart suddenly found himself in desperate financial straits, unable to find a job at age 61 causing emotional pain & suffering.

257.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Van Wart filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD stating among other things that Mr. Van Wart expressed interest but was denied consideration for the general manager position at Brunswick Kyrene despite being highly qualified for the role; that there is direct and circumstantial evidence that Defendants declined to promote Mr. Van Wart to general manager positions because of his age; that a review of employee data provided by Defendants shows such general manager positions were filled by younger individuals; that Mr. Van Wart was compelled to sign the MOU that threatened disciplinary action if Mr. Van Wart failed to work within outdated weekly work hours limitations imposed by Defendants and that the MOU imposed a trial period for the outdated work hours limit implying that Mr. Van Wart's position or continuing employment were placed at risk; that Mr. Van Wart was subjected to heightened scrutiny of his work and significant changes to his work schedule that were more burdensome. The EEOC found reasonable cause to believe that Defendants subjected Mr. Van Wart to denial of promotion to General Manager, unequal terms and conditions of employment because of age in violation of the ADEA, and that Mr. Van Wart was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.  The EEOC also found reasonable cause to believe that Defendants caused Mr. Van Wart to be discharged because of age in violation of the ADEA, that Mr. Van Wart was discharged as part of a

company-wide pattern or practice of discharging employees because of their age, 40 years and

older, in violation of the ADEA and that Defendants' explanation for Mr. Van Wart's discharge

was a pretext for age discrimination.

258.    Plaintiff David Van Wyk was employed in the bowling industry for 20 years

when he was unlawfully discharged by the Defendants at 53 years old.  Mr. Van Wyk filed a

COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

    a.  At all relevant times, Mr. Van Wyk was employed by the Defendants as District
        Manager at the Defendants' Plainfield, Illinois, facility.

    b.  Mr. Van Wyk's employment with Bowlero's predecessor began in April 1994.
        Hired as a marketing manager, he consistently progressed to General Manager in
        1995, Cluster Manager (overseeing multiple General Managers) in 1996 and
        became District Manager in 1997, earning consistent increases in salary and
        responsibilities and favorable annual written performance reviews. In December
        2014, he met with senior vice president, Larry Ross.  Shortly after the Bowlmor
        AMF acquisition, Mr. Van Wyk was informed by his manager, Shawn Shanazi,
        that the new owners had decided to replace him without giving any reason.

    c.  Mr. Van Wyk was able to perform the duties of District Manager and, in fact, did
        perform those duties in a satisfactory manner.

    d.  Defendants terminated Mr. Van Wyk's employment because of his age.  Mr. Van
        Wyk was 53 years old at the time of his termination.

    e.  After terminating Mr. Van Wyk, Defendants hired employees for its Plainfield,
        Illinois facility who were under age forty into positions where they performed the
        same or similar duties as those that Mr. Van Wyk had been performing.

    f.  As a result of being discharged after 20 years of dedicated service to an industry
        which supported his household and in which he had developed close personal
        relationships with co-workers and customers alike, Mr. Van Wyk suddenly found
        himself in desperate financial straits, unable to find a job at age 53 causing
        emotional pain & suffering.

259.    The unlawful employment practices complained of in the foregoing paragraphs

were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Van Wyk

filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his

claims, the EEOC issued a Letter of Determination finding reasonable cause to believe that Defendants caused Mr. Van Wyk to be discharged because of age in violation of the ADEA, that Mr. Van Wyk was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Van Wyk's discharge was a pretext for age discrimination.

260. Plaintiff Janice Waite was employed in the bowling industry for 32 years when she was unlawfully discharged by the Defendants on November 14, 2014. Ms. Waite was 54 years old at the time her employment was terminated. Ms. Waite filed a COD with the EEOC alleging age discrimination under the ADEA asserting in pertinent part:

a. Ms. Waite's employment began in 1983 as an assistant general manager at a bowling center that would be later acquired by the Defendants.

b. In 1998 Ms. Waite was promoted to the position of general manager with higher compensation and responsibilities.

c. In 2013 because of her experience, Ms. Waite, was asked to become assistant manager of the one of the Defendants' highest volume bowling centers in Eldorado, California.

d. During her tenure as a general manager, Ms. Waite was often asked to train newly assigned general managers because of her steep operating experience and success.

e. Annually, Ms. Waite received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

f. After the Defendants acquired her bowling center, Ms. Waite came under forceful and constant scrutiny of her work by a District Manager, Nick Solara.

g. Ms. Waite's hours of employment were drastically changed, notwithstanding her 30+ years of experience and consistent acceptance of various responsibilities to help her employer, to include onerous shifts, or substantial reductions of hours to reduce her compensation.

h. Ms. Waite was asked to complete detailed reports 'after she had clocked out of her hourly work' and would be doing this work on her personal time, unpaid.

i.  The unfounded criticism and substantial daily mental pressure on Ms. Waite created an objectively intolerable working environment caused escalating health problems for Ms. Waite.

j.  Ms. Waite's health concerns arising from the mistreatment of her in a manner to manage her out of her employment resulted in a constructive termination of her employment.

k.  After Ms. Waite's employment ended Defendants hired younger employees who were under age forty into positions where they performed the same or similar duties as those that Ms. Waite had been performing.

l.  As a result of being discharged after 32 years of dedicated service to an industry which supported her household and in which she had developed close personal relationships with co-workers and customers alike, Ms. Waite suddenly found herself in desperate financial straits, unable to find a job at age 54 causing emotional pain & suffering.

261.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Waite filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued a letter of determination stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Ms. Waite's resignation and that she was subject to discriminatory treatment due to her age.  The EEOC found reasonable cause to believe that Defendants caused Ms. Waite to be constructively discharged because of age in violation of the ADEA, and that Ms. Waite was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

262.   Plaintiff Andrew Weimer was employed in the bowling industry for 25 years when he was unlawfully discharged by the Defendants on February 26, 2016.  Mr. Weimer was

56 years old.  Mr. Weimer filed a COD with the EEOC alleging age discrimination under the

ADEA asserting in pertinent part:

    a.   At all relevant times, Mr. Weimer was employed by the Defendants as general manager for Defendants' Utica, New York, facility.

    b.   Mr. Weimer's employment with Defendants began in February 1990, working 25 years for AMF and for a brief period after its acquisition by Bowlmor AMF.  He began his career as assistant general manager and became general manager in 1997.  He was a highly successful manager and never had a negative annual review or blemish on his performance record. In October 2014, after AMF Bowlmor had taken control of his center, one of the center's 48 bowling lanes was inoperable and the company mechanics were unable to diagnose or fix the problem. Mr. Weimer knew of a former mechanic who was able to correct and fix the problem.  Because the mechanic was not an approved vendor and it would have taken several weeks for him to be approved, Mr. Weimer paid the mechanic from his personal funds to get the lane back in operation and maintain the center's performance.

    c.   Annually, Mr. Weimer received positive performance reviews and never once was the subject of a disciplinary incident or write-up.

    d.   For many years, Mr. Weimer also paid cash to another vendor who cleared the beer and soda tap lines.  Mr. Weimer recorded the expense in his reports to management. There was also an employee who was very successful in running the youth bowling league. When her spouse offered to help, Mr. Weimer added his hourly wages to the employee's paycheck so that her spouse could be compensated.  Again, management was well aware of these practices and, in October 2015 Mr. Weimer received another favorable review.

    e.   On February 25, 2016, two members of Defendants' auditing group arrived to speak to Mr. Weimer about these three matters, after which the auditors spoke to Mr. Weimer's district manager, Ron Ciminelli, to advise him of their conversation with Mr. Weimer.  Mr. Weimer was then instructed to call Mr. Ciminelli who immediately suspended him.  The following day Mr. Ciminelli called Mr. Weimer advising he was discharged.  On at least four occasions Mr. Weimer attempted to contact corporate human resources but no one returned his calls for several weeks. When a junior human resources representative finally called him, the representative offered no guidance or compensation.

    f.   Mr. Weimer was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner, using his own funds and performing his duties all to maximize the performance of the bowling center.  He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

g.  On or about February 26, 2016, Defendants terminated Mr. Weimer's employment because of his age.  Mr. Weimer was 56 years old at the time of his termination.

h.  After terminating Mr. Weimer, Defendants hired employees for its Utica, New York, facility who were under age forty into positions where they performed the same or similar duties as those that Mr. Weimer had been performing.

i.  As a result of being discharged after 25 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Weimer suddenly found himself in desperate financial straits, unable to find a job at age 56 causing emotional pain & suffering.

263.  The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Weimer filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Weimer to be discharged because of age in violation of the ADEA, that Mr. Weimer was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and that Defendants' explanation for Mr. Weimer's discharge was a pretext for age discrimination.

264.  Plaintiff Renee West was employed in the bowling industry for 2 years when she was unlawfully discharged by the Defendants on December 1, 2015.  Ms. West was 54 years old at the time her employment was terminated.  Ms. West filed a COD with the EEOC alleging age discrimination and retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

a.  Ms. West was initially employed as a director of human resources reporting to the Defendants' Vice President of Human Resources, Jen Thoma.

137

b.   Ms. West supported the bowling centers located in the northeast and southeast regions of the United States and the Defendants' corporate office in Richmond, Virginia.

c.   Ms. West received positive performance reviews and never once was the subject of a disciplinary incident or write-up while employed by the Defendants. Indeed, during her tenure, Ms. West received very positive feedback on her work and commitment from company executives Darren Tipton and Kevin Gordon.

d.   Ms. West in the course of her employment attempted to develop a policy foster greater accountability for the numerous contractors that routinely entered and exited the Defendants' corporate headquarter buildings at significant expense to the company.

e.   Ms. West also registered concerns to a newly promoted Vice President of Human Resources, Heather Webb, over arbitrary terminations of employees based on age and appearance where there was no performance-based reason to terminate said employees.

f.   On December 1, 2015, not long after Ms. West registered her concerns with Ms. Webb, Mr. Larry Ross and Ms. Webb called a meeting at the Richmond, Virginia, headquarters to meet with Ms. West at which they terminated her employment citing "cost cutting" as the reason for her discharge.

265.   The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b). Ms. West filed a COD with the EEOC alleging age discrimination under ADEA. Defendants caused Ms. West to be discharged because of age in violation of the ADEA. Ms. West was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. West was a pretext for age discrimination. As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. West.

266.    Plaintiff Robert Winkler was employed in the bowling industry for 29 years when he was unlawfully discharged by the Defendants at 51 years old.  Mr. Winkler filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

    a.  Mr. Winkler's employment began in August 1986 with Brunswick. The next year he was promoted to general manager of a bowling center in Atlanta, GA where he managed that and several other bowling centers for the next 12 years. In December 1999 Mr. Winkler was promoted to Regional Marketing Manager for the central region based in Chicago where he was then promoted to Director of in 2000. Mr. Winkler was next transferred to Pennsylvania in 2004 and Colorado in 2007 as Director of Operations both times. In total, Mr. Winkler worked for Brunswick for approximately 27 years for Brunswick, and thereafter for a brief period after it was acquired by Bowlmor.

    b.  Mr. Winkler was a highly successful manager and never had a negative annual review or blemish on his performance record. Mr. Winkler received positive performance reviews annually and never once was the subject of a disciplinary incident or write-up.

    c.  Shortly after Brunswick was acquired by AMF Bowlmor, Mr. Winkler was discharged in June 2015 due to his performance, notwithstanding that all seven bowling centers under his management at the time were operating profitably and were ahead of the prior year's financial performance.

    d.  Defendants terminated Mr. Winkler's employment because of his age.  Mr. Winkler was 51 years old at the time of his termination

    e.  After terminating Mr. Winkler, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Winkler had been performing.

    a.  As a result of being discharged after 29 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Winkler suddenly found himself in desperate financial straits, unable to find a job at age 51 causing emotional pain & suffering.

267.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Winkler filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating his

claims, the EEOC issued an LOD finding reasonable cause to believe that Defendants caused Mr. Winkler to be discharged because of age in violation of the ADEA, that Mr. Winkler was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older and that Defendants' explanation for Mr. Winkler's discharge was a pretext for age discrimination.

268.    Plaintiff James Woodward was employed in the bowling industry for 37 years when he was unlawfully discharged by Bowlero at 59 years old.  Mr. Woodward filed a COD with the EEOC alleging age discrimination under ADEA asserting in pertinent part:

a.   Mr. Woodward's 37-year career with Bowlmor began on October 15, 1977 as a counter control attendant from which he was promoted to an assistant general manager, general manager, and for a brief period, served as a regional training and marketing manager, a multi-unit manager, and the national director of food and beverage, prior to returning to being a general manager.   Over the course of 38 years, he successfully managed his bowling center and received positive performance reviews. After Bowlmor's acquisition of Brunswick, Mr. Woodward began to report to area manager (district manager), Chuck Bidwell, who was overzealous and critical of every aspect of Mr. Woodward's bowling center and Mr. Woodward, including how he sat in meetings. The center was placed on a new IT system and there were problems that prohibited Mr. Woodward and other managers from having access. Rather than acknowledging the IT system was responsible for delays in reporting back to him, Mr. Bidwell instead blamed Mr. Woodward accusing him of not responding to his requests for information in a timely manner.

b.   In or about April 2015 Mr. Woodward was forced to sign a Performance Improvement Plan (PIP) setting forth what Mr. Woodward characterized as unrealistic goals.  The unreasonable PIP along with the continued criticism of Mr. Bidwell made Mr. Woodward feel that he was failing in his position and under increasingly unbearable pressure, Mr. Woodwood on April 30, 2015, submitted his two weeks' notice. He was discharged immediately that evening.

c.   Mr. Woodward was able to perform the duties of general manager and, in fact, did perform those duties in a satisfactory manner.   He subsequently learned that Defendants used similar tactics as a pretext for discharging employees based on their age.

    d.   On or about April 30, 2015, Defendants terminated Mr. Woodward's employment because of his age.  Mr. Woodward was 59 years old at the time of his termination.

    e.   After terminating Mr. Woodward, Defendants hired employees who were under age forty into positions where they performed the same or similar duties as those that Mr. Woodward had been performing.

    f.   As a result of being discharged after 37 years of dedicated service to an industry which supported his household and in which he had developed close personal relationships with co-workers and customers alike, Mr. Woodward suddenly found himself in desperate financial straits, unable to find a job at age 59 causing emotional pain & suffering.

269.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Mr. Woodward filed a COD with the EEOC alleging age discrimination under ADEA.  After investigating her claims, the EEOC issued an LOD stating the evidence reveals that Defendants created an objectively intolerable working environment because of age that caused Mr. Woodward's resignation and that he was subject to discriminatory treatment due to his age.  The EEOC found reasonable cause to believe that Defendants caused Mr. Woodward to be constructively discharged because of age in violation of the ADEA, and that Mr. Woodward was constructively discharged and subjected to discriminatory treatment as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older in violation of the ADEA.

270.    Plaintiff Teresa Zawacki-Chapman was employed in the bowling industry for 5 years when she was unlawfully discharged by the Defendants on September 1, 2014.  Ms. Chapman was 36 years old at the time her employment was terminated.  Ms. Chapman filed a COD with the EEOC alleging retaliation for opposing age discrimination under the ADEA asserting in pertinent part:

a. In March 2009, Ms. Chapman was initially employed as a district sales manager for a region covering New York, New Jersey and Connecticut that would be later acquired by the Defendants.

b. Ms. Chapman oversaw a team of people responsible for secured group event business for the bowling centers in her region.

c. Ms. Chapman was promoted to Assistant National Sales Manager managing twenty sales professionals with an administrative staff that also developed training programs, staffing plans and standard operating procedures.

d. Ms. Chapman was then promoted to being a Regional Sales Manager managing twelve sales professionals and two administrative persons from the company's Rochester, New York office.

e. Ms. Chapman was then promoted to being a National Sales Manager managing forty sales professionals, and administrative support and auditing support group.

f. Commensurate with her performance and rapidly increasing responsibilities Ms. Chapman's salary increased from $40,000 to over $100,000 per year.

g. Annually Ms. Chapman received positive performance reviews and never once was the subject of a disciplinary incident or write-up until the Defendants' purchased the company she was employed by.

h. When the Defendants acquired the company Ms. Chapman was employed by, immediate changes occurred including, i) low morale and a decline in personnel values, ii) stress levels of continued employment rose dramatically, iii) managers like Ms. Chapman were forced by senior management write-ups and take abusive actions to manage-out employees no longer desired by the Defendants because of their age even though there was no basis to terminate them based on their solid performance records.

i. Ms. Chapman resisted taking such action to unlawfully terminate employees based on age discrimination.

j. Ms. Chapman was even told by CEO Tom Shannon after learning of her marriage that she will want to 'pop out babies' and her family planning then became a basis to limited her career as pregnant women were the desired look of a hip, young environment.

k. Ms. Chapman was placed under significant pressure to terminate employees that the Defendants no longer desired based on age and appearance.

l. Ms. Chapman on numerous occasions refused to terminate persons based on age and for health reasons and fear of being fired to blemish her record she was forced to resign from her employment.

271.    The unlawful employment practices complained of in the foregoing paragraphs were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).  Ms. Zawicki-Chapman filed a COD with the EEOC alleging age discrimination under ADEA.  Defendants caused Ms. Zawicki-Chapman to be discharged because of age in violation of the ADEA.  Ms. Zawicki-Chapman was discharged as part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older, in violation of the ADEA and Defendants' explanation for terminating Ms. Zawicki-Chapman was a pretext for age discrimination.   As of the date of Plaintiffs' request to the EEOC for Right to Sue letters for each of the Plaintiffs herein, the EEOC had not yet issued an LOD for Ms. Zawicki-Chapman.

### Anecdotal Evidence of Defendants' Discriminatory Practices and Terminating Employment based on Age

272.    Excluded from the number of Plaintiffs that filed CODs are over 200 witnesses who came forward to speak with Plaintiffs' counsel that had also been terminated by the Defendants but who chose not to go forward with CODs for fear of retaliation by the Defendants on any new employment prospects they might find.

273.    Excluded from the number of Plaintiffs that filed CODs is a female executive that was employed in the Defendants New York City headquarters who had first-hand knowledge of the Defendants discriminatory conduct based on age, and another manager who refused to undertake unlawful acts to terminate employees based on age that **provided sworn statements** to Plaintiffs' counsel that were presented to the EEOC as part of its two investigations and findings of probable cause that laws were violated.

274.    The ADEA Analysis showing that 87% of managers were terminated shortly after

the Defendants acquired AMF and Brunswick and replaced with much younger persons. These figures do not include the countless waiters, waitresses, bartenders and other consumer–facing personnel who were terminated for age, but didn't know it because they were duped into believing some other pretextual reason touted by Defendants.

275.    Upon information and belief, there are hundreds/thousands of former employees of Defendants who have been unwittingly discharged from positions by Defendants or who were constructively discharged due to an intolerable working environment created by Defendants causing them resign from their employment, or who were discharged in retaliation for refusing to engage in or objecting to the discriminatory conduct of Defendants all of which were part of a company-wide pattern or practice of discharging employees because of their age, 40 years and older.

276.    The two EEOC investigations involved numerous persons filing CODs under penalty of perjury that Shannon routinely requested to participate in Skype interviews of newly-hired persons, even at the lowest levels, notwithstanding the Defendants having hundreds of managers, a full human resources department and 10,000 employees, and 'managing-out' was an intentional set of acts having one aim -- to discharge an older employee..

277.    The Skype interviews would last 1-3 minutes and often feigned a change in Shannon's schedule as the basis for the meeting being so brief, but was all a pretext for him to conduct a beauty contest and see if a person's age and appearance met the new hip, youthful image he desired for the Bowlero bowling centers.

278.    The 'Boots Policy' as described in Paragraph 248(e)(ix) and the "Hats Policy" as described in Paragraph 248(e)(x) as actual policies initiated and carried out by the Defendants at Shannon's' direction to deter African-American persons from patronizing Defendants bowling

centers.

279.    The Defendants instructing candidates directly or through outside recruiting firms to furnish high school graduation dates and photographs of themselves when applying for new positions in the company to screen out older persons and people in general that did not meet the new hip, youthful image Shannon desired for the Bowlero bowling centers.

280.    The Defendants use of outside recruiting firms after CODs were filed to screen applicants based on their preference and age requirements so that management of the Defendants would be one-step removed and would only be making decisions on prequalified candidates to side-step questions of over age discrimination in the Defendants' hiring practices.

281.    Settlement of a lawsuit with a group of African-American persons who alleged discriminatory conduct when patronizing or not being able to patronize the Defendants bowling centers.

282.    Female employees fearing to disclose marital plans or being forced to disguise pregnancies to avoid appearing out-of-sync with the young, hip appearance in a personnel Shannon desired for his bowling centers and business overall.

**CAUSE OF ACTION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967**

283.    Plaintiffs repeat and reallege all of the forgoing paragraphs as if full stated herein.

284.    The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

285.    The ADEA makes it unlawful for an employer "to discriminate against any of his employees …. because such individual …. has opposed any practice made unlawful by this section."  29 U.S.C. § 623(d).

286.    Plaintiff must plead two ultimate elements to support a claim under the ADEA—(1) an 'adverse employment action' (2) taken against plaintiff 'because of his or her protected status'.

287.    Each of the 75 Plaintiffs have been subjected to an adverse employment action as each one was unlawfully discharged from their employment.  Defendants' decision for discharging all 75 Plaintiffs was because of their protected status--either because they were 40 years and older, or because they engaged in a protected activity, i.e. they opposed the discriminatory conduct of the employer.   'But for' Plaintiffs' protected status, Defendants would not have discharged Plaintiffs and any "reasons" that the Defendants have proffered for taking such adverse employment actions were pretextual to cover up its discriminatory practices.

288.    The effect of the practices complained of in paragraphs 1 through 282 above has been to terminate the employment of persons within the protected age group because of their age or in retaliation for their opposition to the discriminatory conduct of Defendants in violation of ADEA for which Plaintiffs must be awarded relief.

289.    The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that this Court:

A.    Grant a judgment requiring Defendants to pay to Plaintiffs whose employment was terminated because of their age, appropriate back wages and benefits in an amount to be determined at trial, and for Defendants' willful conduct an equal sum as liquidated damages, and prejudgment interest.

B.      Grant a judgment requiring Defendants to pay to Plaintiffs whose employment was terminated in retaliation for opposing the discriminatory practices of Defendants, appropriate back wages and benefits in an amount to be determined at trial, and for Defendants' willful conduct an equal sum as liquidated damages, and prejudgment interest.

C.      Order Defendants to make whole all Plaintiffs by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to, reinstatement into employment of each Plaintiff, or an award of front pay if reinstatement is impractical.

D.      Order Defendants to make whole all Plaintiffs by providing compensation for past and future pecuniary losses resulting from Defendants' unlawful employment practices, including out-of-pocket expenses, including those related to job searches and insurance, in amounts to be determined at trial.

E.      Order Defendants to make whole all Plaintiffs by providing compensation for past and future non-pecuniary losses resulting from Defendants' unlawful employment practices, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in amounts to be determined at trial.

F.      Order Defendants to pay all Plaintiffs liquidated damages for its malicious and/or reckless conduct as described above, in an amount to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award counsel its costs of this action.

## **JURY TRIAL DEMAND**

Plaintiffs request a jury trial on all questions of fact raised by its complaint.


Dated: Bronxville, New York
      July 8, 2024

                      Respectfully submitted,


                      DOWE PARTNERS LLC

                    By:   /s/ Janet L. Dowe
                           Janet L. Dowe
                           Attorneys for Plaintiffs
                           42 Forest Lane
                           Bronxville, New York 10708
                           (914) 441-3591