UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JO ALLOWAY *et al.*,

        Plaintiffs,

       -against-

BOWLERO CORP. *et al.*,

        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:24-cv-04738 (JS) (JMW)

**A P P E A R A N C E S:**

    **Daniel W. Dowe**
    **Janet Dowe**
    Dowe Partners LLC
    42 Forest Lane
    Bronxville, NY 10708
    *Attorneys for Plaintiffs*

    **Alex Spiro**
    **Daniel Sisgoreo**
    **Hope Delaney Skibitsky**
    Quinn Emanuel Urquhart & Sullivan, LLP
    51 Madison Avenue
    New York, NY 10010
    *Attorneys for Defendants*

**WICKS,** Magistrate Judge:

    Plaintiffs, a collective group of 75 individuals, commenced this action on July 8, 2024 against Defendant Bowlero Corp., AMF Bowling Centers, Inc., and Bowlmor AMF Corp. (collectively, "Defendants") asserting claims under the Age Discrimination in Employment Act ("ADEA") for their alleged unlawful termination on the basis of their age, or in retaliation for opposing Defendants employment practices. (*See generally* ECF No. 1.) Before the Court is

Defendants' motion to stay discovery pending their anticipated motion to dismiss the Amended Complaint. (ECF No. 30.) For the reasons stated herein, Defendants' motion to stay (ECF No. 30) is **GRANTED**.

## I.    BACKGROUND

Plaintiffs, all former employees of Defendants, are located in eighteen states across the nation and have collectively brought this action seeking damages for their unlawful termination on account of their age, or in retaliation for their opposition of Defendants unlawful employment practices. (*See* ECF No. 1 at pp. 1-2.) Specifically, Defendants allegedly engaged in an intentional, systemic pattern of terminating employees ages 40 and over, precluding members of this age group from securing employment through unlawful hiring practices, and firing employees who opposed Defendants discriminatory actions. (*Id.*) Consequently, all 75 Plaintiffs filed individual Charges of Discrimination ("COD") with the United States Equal Employment Opportunity Commission ("EEOC") for age discrimination, retaliation, and discriminatory hiring practices (*Id.* at 2.) Following the EEOC's findings that "reasonable cause of discrimination" existed as towards 57 of the 75 CODs, Plaintiffs' counsel requested Right to Sue letters for all 75 Plaintiffs. (*Id.* at ¶ 100.) The present action followed.

On July 25, 2024, Defendants filed their first motion for a pre-motion conference to dismiss the original Complaint on grounds that Plaintiffs failed to timely file their ADEA claims, and, in the alternative, failed to plausibly allege age discrimination causes of action. (ECF No. 13.) Shortly thereafter, the parties attempted to formulate a discovery plan but fell short mainly because Defendants "articulated their intention to seek a stay of discovery pending resolution of their anticipated motion to dismiss". (Defs. Mem. at p. 3.) At the Initial Conference before the undersigned on September 12, 2024, Plaintiffs expressed their intention to file an amended

complaint. (ECF No. 24.) Defendants, in response, filed a second motion for a pre-motion conference expressing their intent to move to dismiss the Amended Complaint in its entirety. (ECF No. 28 at p. 1.) The Amended Complaint likewise alleges claims for age discrimination, discriminatory hiring practices, and retaliation against employees who opposed Defendants conduct. (ECF No. 26 at p. 2.) In their second pre-motion letter, Defendants reiterate that Plaintiffs claims are untimely and each individual Plaintiff falls short of establishing a plausible ADEA claim.[1] (*Id.*) On October 31, 2024, Defendants filed the instant motion to stay discovery (ECF No. 33), pending the outcome of Defendants anticipated motion to dismiss the Amended Complaint. (ECF No. 28.)  Plaintiffs oppose the motion (ECF No. 34).

## II.    LEGAL STANDARD

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court.  That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No. CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006).  Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006).

---

[1] Though Defendants initially moved to dismiss the Complaint on additional grounds—Plaintiffs impermissible group pleading and lack of personal jurisdiction—Defendants no longer intend to seek dismissal on these grounds following Plaintiffs' Amended Complaint. (*Compare* ECF No. 13 at pp. 3-4, *with* ECF No. 28.)

3

In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted); *see Vida Press v. Dotcom Liquidators, Ltd.*, No. 2:22-CV-2044 (HG) (JMW), 2022 WL 17128638, at *2 (E.D.N.Y. Nov. 22, 2022) (finding a stay of discovery was "warranted under the circumstances" after "weighing all of the relevant factors"); *see also Mineo v. Town of Hempstead*, No. 22-CV-04092 (JMA) (JMW), 2023 WL 7283784, at *2 (E.D.N.Y. Nov. 3, 2023) (granting a stay of discovery where defendants arguments appeared on their face to make a showing of untimeliness, discovery would be particularly costly, and no prejudice would result from the stay).

It is against this backdrop that the Court considers the present application.

### III.  DISCUSSION

#### A. Whether Defendants Have Made a Strong Showing That Plaintiffs' Claims Are Unmeritorious

Defendants assert that the stay ought to be granted because Plaintiffs' claims are likely to be dismissed on two grounds: (1) the majority of the 75 individual claims are time-barred under the applicable statute of limitations; and alternatively, (2) each individual Plaintiff fails to state a plausible ADEA claim pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Defs. Mem. at pp. 5-16.) As set

4

forth below, the Court finds that Defendants have made the requisite strong showing that Plaintiffs' claims are unmeritorious.[2]

**(1) Timeliness of the Claims**

Defendants first argue that a majority of Plaintiffs' claims are time-barred as there were instances where a Plaintiff filed a COD "more than 180 days or 300 days from the date of termination." (ECF No. 26 at ¶ 123.) In support of this contention, Defendants created a chart demonstrating that "***at least*** 64 of Plaintiffs' claims are untimely" as they exceeded the overinclusive 300-day window. (*See* Defs. Mem. at pp. 7-9) (emphasis in original). Moreover, Defendants argue that equitable tolling or equitable estoppel, which ordinarily excuse an untimely filing, are inapplicable as no extraordinary circumstances exist justifying such an exception. (*Id.* at 9-10.) Rather, Defendants maintain, Plaintiffs conclusory allegations that they were "misled into believing they were terminated for a variety of reasons" and had no knowledge that "their discharge was a pretext for age discrimination" are insufficient to toll the applicable ADEA timeline. (ECF No. 26 at ¶ 122); (*see* Defs. Mem. at pp. 10-11.)

Conversely, Plaintiffs contend that the EEOC effectively waived any untimely claims by accepting all 75 of Plaintiffs' CODs—most of which exceeded the applicable timeline. (Pls. Opp'n at p. 4.) Similarly, Plaintiffs allege that equitable tolling applies as they made diligent efforts to determine the basis of their termination, yet extraordinary circumstances, namely Defendants pretextual, nationwide scheme to discharge employees on the basis of age, prevented the employees from exercising their rights. (*Id.*)

---

[2] The Court's consideration and analysis of the arguments set forth in the motion to dismiss is purely for purposes of weighing whether a stay should be granted in light of Fed. R. Civ. P. 1. This analysis should not be construed as prejudging the outcome of the anticipated motion to dismiss.

In response, Defendants contend that "discovery cannot reveal facts to revive [Plaintiffs]" especially where the overwhelming majority of Plaintiffs did not meet the 180 or 300-day deadline. (Defs. Reply at p. 2.) Such inability to meet the statutory requirements contradicts Plaintiffs assertion that they made any "diligent efforts" towards addressing their termination. (*Id.*) Lastly, Defendants maintain that the alleged pretextual reasons for terminating Plaintiffs are irrelevant as pretext does not function to toll the applicable deadlines. (*Id.*)

Here, based on the record before the Court,[3] Plaintiffs' timeliness argument appears, at least on its face, to be unmeritorious considering that Plaintiffs admitted in the Amended Complaint that there were "instances where Plaintiff filed a COD more than the 180 days or 300 days from the date of termination." (ECF No. 26 at ¶ 123); *see Riddle v. Citigroup*, 449 Fed. App'x 66, 69 (2d Cir. 2011) ("To be timely, a charge [with the EEOC] must be filed within 180 days or 300 days of the date on which the plaintiff received notice of her termination . . . ."). Additionally, Defendants' chart notes the days between the adverse action complained of and the COD filing date which indicates that the overwhelming majority of the individual Plaintiffs have failed to timely file their claims. (*See* Defs. Mem. at pp. 7-9)

Furthermore, equitable tolling seems inapplicable here as Plaintiffs merely assert that those who filed an untimely EEOC charge "successfully plead and proved equitably tolling". (ECF No. 26 at ¶ 123); *see Adamowicz v. Northwell Health Inc.*, No. 2:23-cv-01277 (OEM) (LGD), 2024 WL 1072210, at *5-6 (E.D.N.Y. Mar. 12, 2024) (dismissing the untimely EEOC claims after concluding equitable tolling did not apply where plaintiff made "vague and conclusory allegations" unfit to prove any diligence on its part or any misrepresentations by defendants); *see also Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 666 (E.D.N.Y. 2015) (finding

---

[3] In reaching the conclusions set forth herein, the Court considers the arguments made in the parties' pre-motion letters only, without the benefit of fully briefed papers on the motion to dismiss.

6

equitable tolling did not apply where plaintiff, in its amended complaint, "argue[d] in conclusory fashion" that he was entitled to such a procedural safeguard).

Additionally, throughout the Amended Complaint, Plaintiffs offer nothing but conclusory statements that the reason for their discharge "was a pretext for age discrimination." (*See, e.g.,* ECF No. 26 at ¶¶ 189, 198, 207); *see Syrkin v. State Univ. of N.Y.* No. 04-CV-4336 (FB) (RML), 2005 WL 2387819, at *9 (E.D.N.Y. Sept. 29, 2005) (collecting cases finding that equitable tolling does not apply where the reasons provided were pretextual, specifically noting that "[c]ourts have regularly held that the fact that defendants may have provided other reasons for the employment actions does not justify an inference that plaintiff was misled") (citations omitted) (internal quotations omitted).

At this stage, it appears that Defendants have made a strong showing that a majority of Plaintiffs claims are untimely. Therefore, even if most of the individual Plaintiffs claims are deemed untimely, the matter would nonetheless proceed as to the remaining Plaintiffs who timely filed their COD with the EEOC.

**(2) Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Alternatively, Defendants assert that each individual Plaintiff fails to state ADEA claims, specifically that each individual Plaintiff fails to "plead age as the but-for cause of the supposed adverse employment action". (Defs. Mem. at pp. 11-12.) Indeed, Defendants posit that the allegations Plaintiffs made in support of their ADEA claims are entirely conclusory or contradictory. (*Id.*) Similarly, Defendants maintain that Plaintiffs reliance on the EEOC's conclusions as proof of discrimination is inappropriate as courts need not defer to such conclusions when making its own determinations. (*Id.* at 12.) Lastly, though a minority of Plaintiffs assert retaliation claims, Defendants contend that even these claims fail because a but-

7

for cause of alleged adverse employment action is still required and has not been established. (*Id.* at 11.)

Plaintiffs argue that each Plaintiff has sufficiently pled that he or she was terminated because of their age or for opposing the discriminatory actions that Defendants allegedly took. (Pls. Opp'n at p. 7.) As such, the "litany of excuses" Defendants offer for terminating Plaintiffs was to conceal Defendants true motive for termination—their age. (*Id.* at 8.) Furthermore, Plaintiffs direct the Court to consider the numerous CODs detailing the reasons why Plaintiffs were discharged as these exhibits warrant some deference at this juncture. (*Id.* at 9.) Defendants primarily counter that rather than addressing the pleading deficiencies raised and supported through multiple examples from the Amended Complaint, like the applicable "but-for" standard for ADEA age discrimination claims, Plaintiffs merely "parrot[] the elements of an ADEA cause of action in a formulaic, conclusory fashion". (Defs. Reply at pp. 3-4.)

Here, the Court finds "good cause" to stay discovery in light of Defendants' arguments. To establish a prima facie case for age discrimination under the ADEA, a plaintiff must show that he or she: (1) was within the protected age group, (2) was qualified for the position; (3) suffered an adverse employment action; and (4) such adverse employment action "occurred under circumstances giving rise to an inference of discrimination". *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). In conjunction with these elements, the Supreme Court has made clear that "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. GBL Fin. Servs.*, 557 U.S. 167, 177 (2009) (noting that the ADEA mandates that age be a but-for cause, rather than "simply a motivating factor"). Such a "but for" requirement extends to retaliation claims as well. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) ("ADEA retaliation claims likewise require

8

proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.") (internal quotations omitted).

Age here was simply not pled as a "but for" cause. Rather, Plaintiffs offer conclusory statements that "Defendants terminated [plaintiff]'s employment because of his [or her] age". (*See e.g.,* ECF No. 26 at ¶¶ 179, 197, 232, 241, 268, 277); *see Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043930, at *2 (S.D.N.Y. July 22, 2011) (determining that plaintiff's "entirely conclusory statement[s]" that he was terminated on the basis of his age, coupled with his failure to "allege facts relating to age", warranted a dismissal of the ADEA claim). Additionally, Plaintiffs, in their Amended Complaint, provide alternative reasons for their termination apart from age, including "a general reduction in the workforce" (*see, e.g.,* ECF No. 26 at ¶ 603), being "managed out" through company policies (*see, e.g.,* ECF No. 26 at ¶¶ 393, 420, 678, 728), and the unexpected visits from corporate executives to monitor company productivity and performance (*see, e.g.,* ECF No. 26 at ¶¶ 224, 233, 278, 577). Such grounds for termination besides age ordinarily do not support a finding of age discrimination. *See Ostrowski v. Port Authority of New York and New Jersey*, No. 23-1116, 2024 WL 3219310, at *4–5 (2d Cir. June 28, 2024) (rejecting plaintiff's vague assertions that other employees were "forced out" by defendants and concluding plaintiff failed to establish an age discrimination claim where other reasons, like workplace misconduct, justified his termination).

Moreover, Plaintiffs repeated claims that they were "replaced with much younger workers" (*see, e.g.,* ECF No. 26 at ¶¶ 603, 620, 635, 702-04) does not appear to raise an inference of age discrimination. *See Epstein v. County of Suffolk*, No. 14-CV-0937 (JS) (ARL), 2015 WL 5038344, at *7 (E.D.N.Y. Aug. 26, 2015) (collecting cases where merely asserting that

9

younger individuals replaced older workers does not support an inference of age discrimination under the ADEA).

Accordingly, at this stage, it appears that Defendants have made a strong showing that Plaintiffs' ADEA claims are unmeritorious.

### B. <u>Breadth of Discovery and the Corresponding Burdens</u>

Defendants posit that there is no opportunity to efficiently conduct discovery, nor can discovery be streamlined, as the sheer number of plaintiffs and varying locations, coupled with the differences among each individual claim, would result in "punishing financial hardship". (Defs. Mem. at pp. 1, 16-17.) Namely, Defendants assert that the 75 individual Plaintiffs bring claims with "no common factual core", thereby necessitating a "distinct factual universe" of discovery for each separate claim. (*Id.* at 1-2, 16.) Furthermore, these unrelated actions date as far back as July 2013, span across 18 different states, and involve "up to 75 different Bowlero locations or business units." (*Id.* at 1, 16.) This burden, Defendants contend, would persist through the entire discovery period as Defendants would need not only a "separate set of custodians and data sources for each Plaintiff in their initial disclosures," but also "75 distinct document review processes" before engaging in individualized interrogatories and depositions. (*Id.* at 2, 17.)

Conversely, Plaintiffs argue that *they* suffered the "punishing financial hardship" as a result of their employment termination, specifically that their careers and income earning potential were abruptly halted. (Pls. Opp'n at p. 2.) Indeed, Plaintiffs downplay the aforementioned burden and breadth of discovery, noting that these Defendants "vigorously defended" these claims already, and "provided and cataloged" a large portion of the potential discovery through their compliance with EEOC document demands. (*Id.* at 2, 18.) Likewise,

10

Plaintiffs maintain that because they have yet to serve discovery demands that Defendants are unable to prove the burden, breadth, or cost of such discovery. (*Id.* at 17-18.) Furthermore, Plaintiff avers that the relevant discovery period merely spans no more than two years. (*Id.* at 2, 18.) Lastly, Plaintiffs assert that discovery in this case is inevitable and will proceed whether or not some of the claims are dismissed, especially where the dismissed parties are "material witnesses" to the larger scheme of discrimination. (*Id.* at 19.)

In response, Defendants maintain that the EEOC investigation process is a "far cry" from the adversarial and factually intensive discovery process in litigation. (Defs. Reply at p. 5.) Moreover, Defendants state the burdensome timeline associated in this case spans nearly ten years, not two. (*Id.* at 6.) Thus, even if not every claim is dismissed, Defendants posit that a motion to stay discovery would undoubtedly still save the litigants "immense resources". (*Id.* at 7.) Ultimately, Defendants claim that though the case is in the "nascent stages and discovery has not yet been conducted or completed," the foreseeable costs and burdens associated with a case as numerous and dissimilar among individual claims, are nonetheless extremely burdensome. (*Id.* at pp. 6-7.)

The breadth and corresponding burdens of discovery in this case favor a stay because the parties could not only avoid substantial hardship, but also prevent a waste of precious resources by staying discovery pending the outcome of the motion to dismiss. Indeed, the claims here appear on their face to reach as far back as 2013. (*See* ECF No. 26 at ¶¶ 100-02.) A scope of discovery that could possibly span a decade militates in favor of a stay of discovery. *See O'Reilly v. Incorporated Village of Rockville Centre*, No. 23-cv-04249 (NCM) (JMW), 2024 WL 2054868, at *7 (E.D.N.Y. May 8, 2024) (determining, where the specific disputes dated "as far back as 2014, it would be especially prudent to reserve any discovery until after the motion to

11

dismiss [was] decided"). Moreover, the multitude of parties and variety of claims with "no common factual core" weigh in favor of granting the stay. *See Daly v. Incorporated Village of Port Jefferson*, No. 2:23-cv-09179 (GRB) (JMW), 2024 WL 730497, at *3 (E.D.N.Y. Feb. 21, 2024) (finding that discovery would be "protracted and expensive" as multiple parties were involved, the parties were from different locations, and the claims arose out of a variety of incidents and actions, rather than "based upon a single incident giving rise" to the claim).

Furthermore, where, like here, all defendants seek to dismiss the entirety of a complaint, a stay is appropriate. *See* ECF No. 28 at p. 1; *see also Mineo*, 2023 WL 7283784, at *2 (noting, where defendants' motion to dismiss sought to "dismiss of the entire complaint," that it would be "most prudent" to avoid the costly expenses of discovery conducted in the interim before the motion is decided); *see also Romain v. Webster Bank N.A.*, No. 23-cv-5956 (NRM) (JMW), 2024 WL 3303057, at *5 (E.D.N.Y. July 2, 2024) ("[D]iscovery should be stayed given that all discovery would be for naught if the Complaint is dismissed in its entirety by Judge Morrison as requested"); *see also Fiordirosa v. Publr. Clearing House, Inc.*, No. 21-CV-6682 (PKC) (JMW), 2022 WL 3912991, at *3 (E.D.N.Y. Aug. 31, 2022) (granting defendant's motion to stay where, among other factors, a ruling on the motion to dismiss could "dismiss the Amended Complaint entirely").

In addition, where an action will either be "dismissed in full or significantly narrowed by Defendants' anticipated motion to dismiss", a stay is warranted to prevent a waste of judicial resources. (*See* Defs. Mem. at p. 2.); *see also HAHA Global, Inc. v. Barclays*, No. 1:19-cv-04749 (VEC) (SDA), 2020 WL 832341, at *1 (S.D.N.Y. Feb. 20, 2020) (granting a motion to stay discovery where, based on the large number of parties and claims, the "disposition of the [motion to dismiss] may significantly narrow, if not eliminate, the issues remaining in the case", thus

12

proceeding with discovery would constitute a waste of resources and an undue burden); *see also TentandTable.com, LLC v. Aljibouri*, No. 22-CV-78-LJV-MJR, 2022 WL 2009528, at *1 (W.D.N.Y. June 6, 2022) (granting a stay of discovery where all defendants moved to dismiss all claims, noting that "while the resolution of that motion is for another day . . . it may shape the number and nature of the claims going forward" in a way that impacts the scope of discovery). Accordingly, the breadth and corresponding burdens of discovery justifies granting the stay.

C. **Risk of Unfair Prejudice if Stay is Granted to the Party Opposing the Stay**

Defendants assert that Plaintiffs stand to suffer no prejudice if the stay is granted as there is a short period of time between when discovery would begin to when the Court rules on the motion to stay. (Defs. Mem. at p. 18.) Moreover, Defendants contend that any prejudice could have been avoided had Plaintiffs not waited "nearly a decade" to have brought this action. (*Id.*) In contrast, Plaintiffs allege that they are prejudiced as they have already "risked" spoliation of records and "have been denied justice" given Defendants supposed "chronic delay tactics during the EEOC's investigation." (Pls. Opp'n at p. 20.) Defendants, however, counter that such concern for spoliation is insufficient. (Defs. Reply at p. 7.)

At this stage, it appears that granting a stay would not result in any material prejudice to Plaintiffs. Indeed, Plaintiffs prejudice argument appears contradictory as they delayed bringing this action in the first place despite possessing the present information long before now. *See O'Reilly*, 2024 WL 2054868, at *7 (concluding that plaintiff would suffer no prejudice from granting a motion to stay where "any delays in the case thus far have resulted from Plaintiff's own decision to wait years to commence this action when they were fully equipped with the information since at least November 2018"). Furthermore, Plaintiffs' conclusory argument of a risk of spoliation of records does not appear strong enough to warrant denying the stay. *See*

13

*O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (concluding that the risk that documents may be destroyed is "one of the usual litigation risks that affect all parties equally" and "does not constitute sufficient prejudice to warrant denying a stay of discovery . . . ."). Indeed, all parties at this juncture should have implemented litigation holds.

Lastly, because this case is still in its nascent stage, a stay would result in little to no prejudice to Plaintiffs. Notably, though the parties appeared before the undersigned for an Initial Conference (*see* ECF No. 24), the undersigned later held the parties proposed Scheduling Order in abeyance pending the motion to stay discovery, thereby halting the commencement of any discovery. (*See* Defs. Mem. at p. 3); *see Amron v. 3M Minnesota Mining & Manuf. Co.*, No. 23-CV-08959 (PKC) (JMW), 2024 WL 263010, at *3 (E.D.N.Y. Jan. 24, 2024) (holding that a stay would not result in any material prejudice to plaintiff where a discovery schedule has not been set, discovery has not begun, and depositions have not been taken).

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to stay (ECF No. 30) is **GRANTED**. In the event the motion to dismiss is denied – in part or in full – the parties are directed to file a joint proposed schedule for discovery within 10 days of the ruling on the motion to dismiss.

Dated: Central Islip, New York
November 18, 2024

**S O  O R D E R E D:**

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge