UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JO ALLOWAY, et al.,

                  Plaintiffs,

          v.

BOWLERO CORP., et al.,

                  Defendants.
--------------------------------------------------------X

**MEMORANDUM
AND ORDER**
24-CV-04738-SJB-JMW

**BULSARA, United States District Judge:**

      Plaintiffs, a collective group of 76 individuals[1], commenced this action on July 8, 2024, against Defendants Bowlero Corp. ("Bowlero"), AMF Bowling Centers, Inc. ("AMF"), and Bowlmor AMF Corp. ("Bowlmor") (collectively, "Defendants"), alleging that they were forced out of their jobs when new management switched the company's business model to focus on younger clientele.  They assert claims under the Age Discrimination in Employment Act ("ADEA") for their alleged unlawful termination on the basis of their age or in retaliation for opposing Defendants' employment practices. (Second Am. Compl. dated Feb. 17, 2025 ("SAC"), Dkt. No. 47 ¶¶ 851–57).  Defendants have moved to dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mem. of Law in Supp. of Mot. to

---

[1] Originally there were 75 Plaintiffs, but Plaintiff Michelle Gaskey joined the Second Amended Complaint.  (Second Am. Compl. dated Feb. 17, 2025 ("SAC"), Dkt. No. 47 ¶ 78).

Dismiss dated Apr. 11, 2025 ("Defs.' Mot. to Dismiss"), Dkt. No. 63).  For the reasons

that follow, the Defendants' motion to dismiss is granted in part and denied in part.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

For the purpose of this motion, the Court is "required to treat" the Plaintiffs'

"factual allegations as true, drawing all reasonable inferences in favor of Plaintiffs to the

extent that the inferences are plausibly supported by allegations of fact."  *In re Hain*

*Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  The Court "therefore

recite[s] the substance of the allegations as if they represented true facts, with the

understanding that these are not findings of the court, as we have no way of knowing at

this stage what are the true facts."  *Id.*  In addition to the Complaint, the Court considers

documents that are incorporated by reference, documents which are integral to the

pleading, and documents of which the Court takes judicial notice, including those filed

in another court proceeding.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.

2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Plaintiffs allege that Defendants' business began as a small cluster of bowling

centers in New York City marketed as "hot spots" for date-night bowling to attract

younger consumers as opposed to the traditionally older, league bowler.  (SAC ¶ 137).

In 2013 and through 2014, Defendants acquired roughly 350 bowling centers across the

country from AMF Bowling and Brunswick, becoming the largest operator of bowling

centers in the U.S. and operating as "Bowlmor AMF."  (SAC ¶ 138).  Plaintiffs allege

that after acquiring the bowling centers, Defendants sought to transform them into

"young, hip entertainment centers," a project that led to "massive terminations of older employees and rehiring of much younger replacements nationwide." (SAC ¶ 121).

After the acquisitions, bowling center managers were instructed by Defendants' top management to "manage out" older employees by harassing and closely scrutinizing them, "looking for purported pretextual justifications to discharge an employee they felt was too old in appearance to be part of the new Bowlero image." (SAC ¶ 140). Plaintiffs also allege that human resources department ("HR")'s input was rarely solicited and that most employment decisions, instead, came directly from CEO Tom Shannon and his inner circle of advisors in New York. (SAC ¶ 93).

Shannon's involvement allegedly included undertaking two to three minute interviews over Skype when hiring general managers that were "known to be beauty contests to screen out older applicants and persons not fitting" the company's new young image. (SAC ¶ 96(v)). Plaintiffs also allege that Defendants instructed candidates to furnish high school graduation dates and photographs when applying for new positions "to screen out older persons and people in general that did not meet the new hip, youthful image." (SAC ¶ 110). They allege that 87% of managers were terminated shortly after Defendants acquired the centers, with most replaced by persons under 40 years old. (SAC ¶ 106).

Plaintiffs were employed at local bowling centers across the country, working in 18 different states. (SAC ¶ 158). At the time of their termination, Plaintiffs had been employed at their respective bowling centers for an average of 18 years and averaged 54 years of age. (SAC ¶ 157). Their alleged terminations, constructive terminations, or

retaliations spanned between 2013 and 2023.  (SAC ¶ 101).  Plaintiffs allege that they have suffered lost back and front wages, pecuniary losses, and were subject to extreme emotional distress and suffering as a result of losing their employment and benefits at a late stage in life.  (SAC at 2).

All 76 Plaintiffs filed individual Charges of Discrimination ("CODs") with the United States Equal Employment Opportunity Commission ("EEOC") for age discrimination, retaliation, and/or discriminatory hiring practices.  (SAC ¶ 119).  The EEOC classified Plaintiffs' claims as one national systemic investigation against a common employer and required Plaintiffs' counsel to file all future CODs with the EEOC's Baltimore, Maryland office.  (SAC ¶ 122).  After its six-year investigation of Plaintiffs' CODs, the EEOC found "reasonable cause" existed in 57 of the 76 cases. (SAC ¶¶ 127, 130).  Plaintiffs also allege that the EEOC conducted an additional "Pattern or Practice Investigation" sua sponte that resulted in similar "reasonable cause" findings.  (SAC ¶¶ 128–29).  Plaintiffs' counsel requested Right to Sue letters for 75 Plaintiffs. [2]  (SAC ¶ 130).

 Defendants filed an initial request for a premotion conference to dismiss the original Complaint on the grounds that Plaintiffs failed to timely file their ADEA claims and failed to plausibly allege age discrimination.  (Defs.' PMC Req. dated July 25, 2024, Dkt. No. 13 at 1–3).  In response, Plaintiffs then filed an Amended Complaint.  (Am.

---

[2] Plaintiffs allege that Gaskey's claim was still under investigation when letters were requested for the 75 Plaintiffs.  (SAC ¶ 130 n. 1).  EEOC ultimately issued a Right to Sue Letter for Gaskey on December 6, 2024.  (SAC Ex. 79, Dkt. No. 47-79 at 24).

Compl. dated Oct. 5, 2024, Dkt. No. 26).  Defendants then filed a second request for a premotion conference.  (Defs.' PMC Req. dated Oct. 18, 2024, Dkt. No. 28).

Plaintiffs filed their Second Amended Complaint on February 17, 2025.  (SAC). In response, Defendants filed a renewed request for a premotion conference to dismiss the Second Amended Complaint.  (Defs.' PMC Req. dated Feb. 25, 2025, Dkt. No. 48). Plaintiffs responded in opposition on March 4, 2025.  (Pls.' Resp. to Defs.' PMC Req., Dkt. No. 49).  Upon review of the premotion conference letters, the Court directed the parties to submit full briefing on the motion to dismiss.  (Order dated Mar. 19, 2025). The parties completed briefing on the motion to dismiss and filed the bundled briefing before the Court on June 2, 2025.  (*See* Dkt. Nos. 62–65).

DISCUSSION

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief."  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

Once the facts are construed in the light most favorable to the non-moving party, to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

Additionally, a court "may dismiss a claim on statute-of-limitations grounds at the pleadings stage 'if [the] complaint clearly shows the claim is out of time.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). "A complaint that is time-barred fails to state a claim

on which relief may be granted[.]" *Khalil v. Pratt Inst.*, 818 F. App'x 115, 116 (2d Cir. 2020).

## I.    Adequacy of the Claims

Defendants argue that Plaintiffs' claims must be dismissed under Rule 12(b)(6) for failure to state a claim of age discrimination under the ADEA. (Defs.' Mot. to Dismiss at 4). First, they assert that the claims of 64 Plaintiffs are time-barred. (*Id.* at 3). Second, they contend that all Plaintiffs fail to sufficiently allege that age was the "but for" cause of their termination. (*Id.*). The Court addresses each argument in turn.

### a.    Time-Barred Claims

"A plaintiff may bring an employment discrimination action under . . . the ADEA only after filing a timely charge with the EEOC or with a State or local agency with authority to grant or seek relief from such practice." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001) (quotations omitted); *see also Staten v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 736 F. App'x 17, 18 (2d Cir. 2018) ("Before a plaintiff can file a federal court complaint under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter."). "To be timely, a charge [with the EEOC] must be filed within 180 days or 300 days of the date on which the plaintiff receives notice of her termination [.]"[3] *Riddle v. Citigroup*, 449

---

[3]    The 300-day deadline, as opposed to the 180-day deadline, applies to "deferral states," where a state law prohibits age discrimination and a state agency or authority enforces such age discrimination law. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562 (2d Cir. 2006). Plaintiffs—who reside in different states around the country—do not specify which statutory filing period applies to any particular Plaintiff and Defendants do not concede that the more generous 300-day statutory clock applies to all Plaintiffs. (Defs.' Mot. to Dismiss at 6). The Court assumes that the 300-day deadline applies as to

Fed. App'x 66, 69 (2d Cir. 2011). If a plaintiff fails to file her EEOC charge within 300 days of the last alleged unlawful employment action, her lawsuit is time-barred. *E.g.*, *Dupree v. Local 32BJ*, No. 10-CV-1894, 2010 WL 3430530, at *2–*3 (E.D.N.Y. Aug. 30, 2010) (dismissing plaintiff's claims of discrimination under Title VII and ADEA as time-barred where plaintiff filed his EEOC Charge outside the requisite 300-day window).

Plaintiffs admit that there were "instances where a Plaintiff filed a COD more than 180 days or 300 days from the date of termination[.]" (SAC ¶ 124; ¶ 101 (chart showing date of discharge and date of filing of Plaintiffs' CODs, including an asterisk to identify Plaintiffs whose CODs were timely filed)). They nonetheless assert that their claims are timely as they filed the CODs within 300 days of gaining knowledge of the alleged age discrimination. (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), Dkt. No. 64 at 10, 13). However, the statute of limitations is triggered by the date of termination, not the date of discovery. *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000) ("[T]he time for filing a claim with the EEOC [based on discharge] starts running on the date when the employee receives a definite notice of termination[.]" (quotations omitted)); *see also Giordano v. Potter,* No. 03-CV-0698, 2004 WL 45526, at *1 (N.D.N.Y. Jan. 9, 2004) (noting a discrimination claim "does not accrue when the employee learns of information that leads her to believe that a prior adverse employment action was unlawful, but when she is aware of the actual injury (that is, the adverse employment action).").

---

all Plaintiffs, but even under this more generous deadline, the claims of 63 Plaintiffs are time-barred.

Here, 63 Plaintiffs[4] filed their CODs after their claims became time-barred—more than 300 days after their termination or alleged constructive termination. *See infra* Table 1.[5] Having failed to file within the required time, these Plaintiffs' claims are dismissed. *See Young v. Edwin Gould Servs. for Child. & Fams.*, No. 20-CV-0917, 2020 WL 4287164, at *2 (E.D.N.Y. July 27, 2020) (dismissing plaintiff's ADEA claim "[b]ecause plaintiff failed to timely file his charge with the EEOC").

TABLE 1.

| Plaintiff | Terminated | Became Time-Barred | COD Filed | Citation in SAC |
|---|---|---|---|---|
| Alloway | 10/23/15 | 08/18/16 | 12/10/16 | ¶¶ 165–66 |
| Baldwin | 07/03/14 | 04/29/15 | 04/03/17 | ¶¶ 174–75 |

---

[4] Defendants identify 64 time-barred Plaintiffs, (Defs.' Mot. to Dismiss at 5–6), but the Court finds that Plaintiff Parlette's claim is timely. Defendants rely on an allegation in the Complaint that Parlette was terminated on September 18, 2014, (Defs.' Reply Mem., Dkt. No. 65 at 12 (citing SAC ¶ 578)), but the Complaint also alleges that she was terminated on November 23, 2015, (SAC ¶¶ 578(i), 581), which is supported by the date in the EEOC Charge, (SAC Ex. 51, Dkt. No. 47-51 at 2). Interpreting the factual allegations in the Plaintiff's favor, the Court assumes that Parlette was terminated on November 23, 2015, making her claim time-barred on September 18, 2016. That deadline fell on a Sunday and she filed her Charge the next day. (SAC ¶ 582). Her claim is, therefore, timely. *See Davis v. FedEx Ground Package Sys.*, No. 15-CV-04027, 2017 WL 1239594, at *4 (E.D.N.Y. Mar. 31, 2017) ("[P]er Fed. R. Civ. P. (6)(a)(1)(C), because the last day of the statutory period was a Sunday, the 300-day period ended on Monday, March 30, 2015, 'the next day that [was] not a Saturday, Sunday, or legal holiday.'"); *Seck v. Info. Mgmt. Network*, No. 15-CV-7354, 2015 WL 13662180, at *3 (S.D.N.Y. Dec. 7, 2015) (extending the last day of the plaintiff's 300-day period to the next business day when deadline fell on a Saturday), *aff'd*, 697 F. App'x 33 (2d Cir. 2017).

[5] The relevant dates for the statutes of limitations were determined by both the allegations in the Complaint and the attached EEOC Charges. Courts may consider documents attached to the complaint or incorporated by reference in determining if a plaintiff has satisfied the ADEA's time limit requirements. *See Holowecki*, 440 F.3d at 565 ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiffs relevant filings with the EEOC . . . because the Holowecki plaintiffs rely on these documents to satisfy the ADEA's time limit requirements.").

| | | | | |
|---|---|---|---|---|
| Bea | 03/01/16 | 12/26/16 | 02/17/17 | ¶¶ 183–84 |
| Bengiveno | 07/12/13 | 05/08/14 | 06/05/17 | ¶¶ 192–93 |
| Bernstein | 07/23/15 | 05/18/16 | 12/12/16 | ¶¶ 201–02 |
| Berry | 05/22/15 | 03/17/16 | 04/06/17 | ¶¶ 210–11 |
| Boggio | 03/12/14 | 01/06/15 | 04/05/17 | ¶¶ 219–20 |
| Bozzo | 10/01/15 | 07/27/16 | 01/22/18 | ¶¶ 236–37 |
| Bustillos | 05/01/15 | 02/25/16 | 12/13/16 | ¶¶ 245–46 |
| Cains | 09/09/13 | 07/06/14 | 02/22/17 | ¶¶ 254–55 |
| Chase | 01/19/15 | 11/15/15 | 12/13/16 | ¶¶ 263–64 |
| Choudhury | 07/01/14 | 04/27/15 | 02/20/17 | ¶¶ 272–73 |
| Clark | 09/11/13 | 07/08/14 | 12/12/16 | ¶¶ 281–82 |
| Cox | 07/20/15 | 05/15/16 | 04/03/17 | ¶¶ 290–91 |
| Cramton | 10/31/21 | 08/27/22 | 08/07/23 | ¶¶ 299–300 |
| Csernay | 04/30/14 | 02/24/15 | 04/19/17 | ¶¶ 308–09 |
| Dahkle | 04/28/15 | 02/22/16 | 09/30/17 | ¶¶ 317–18 |
| Devita | 08/01/13 | 05/28/14 | 12/10/16 | ¶¶ 326–27 |
| Duffy | 07/01/15 | 04/26/16 | 02/23/17 | ¶¶ 335–36 |
| Dziemianzuk | 01/13/15 | 11/09/15 | 12/10/16 | ¶¶ 344–45 |
| Edwards | 03/01/14 | 12/26/14 | 12/12/16 | ¶¶ 353–54 |
| Evans | 03/17/14 | 01/11/15 | 04/05/17 | ¶¶ 362–63 |
| Frazier | 01/02/14 | 10/29/14 | 07/04/17 | ¶ 370; Ex. 27 at 3 |
| Freer | 09/16/15 | 07/12/16 | 12/12/16 | ¶¶ 379–80 |
| Hatcher | 06/20/14 | 04/16/15 | 12/12/16 | ¶¶ 388–89 |
| Hoerner | 05/01/14 | 02/25/15 | 02/18/17 | ¶¶ 397–98 |
| Hoggatt | 09/01/13 | 06/28/14 | 02/16/17 | ¶¶ 406–07 |
| Horsley | 05/01/15 | 02/25/16 | 05/26/17 | ¶¶ 415–16 |
| Julian | 01/01/14 | 10/28/14 | 04/04/17 | ¶¶ 424–25 |
| Kiefer | 10/04/14 | 07/31/15 | 04/21/17 | ¶¶ 441–42 |
| Kristina Kittidumrongkool | 08/09/13 | 06/05/14 | 05/23/17 | ¶ 451; Ex. 36 at 2 |
| Keith Kittidumrongkool | 07/01/14 | 04/27/15 | 03/10/17 | ¶¶ 458–59 |
| Klowiewski | 06/29/14 | 04/25/15 | 10/03/17 | ¶¶ 467–68 |
| Lerner | 09/01/14 | 06/28/15 | 05/23/17 | ¶¶ 476–77 |
| MacCracken | 08/13/14 | 06/09/15 | 12/13/16 | ¶¶ 485–86 |
| Martinez | 08/02/13 | 05/29/14 | 12/10/16 | ¶¶ 502–03 |
| Meinhofer | 08/31/15 | 06/26/16 | 12/13/16 | ¶¶ 519–20 |
| Nelson | 09/01/14 | 06/28/15 | 04/23/17 | ¶¶ 528–29 |

| Nichols | 10/04/15 | 07/30/16 | 02/19/17 | ¶¶ 537–38 |
| Nuss | 09/15/15 | 07/11/16 | 12/27/16 | ¶¶ 554–55 |
| Ortega | 10/04/13 | 07/31/14 | 04/23/17 | ¶¶ 563–64 |
| Paone | 06/30/15 | 04/25/16 | 02/21/17 | ¶¶ 572–73 |
| Peters | 08/09/13 | 06/05/14 | 5/23/17 | Ex. 52 at 2–3 |
| Reed | 03/01/14 | 12/26/14 | 04/04/17 | ¶¶ 598–99 |
| Renstrom | 05/26/15 | 03/21/16 | 12/22/16 | ¶¶ 615–16 |
| Rice | 01/15/15 | 11/11/15 | 02/18/17 | ¶¶ 624–25 |
| Sass | 06/01/14 | 03/28/15 | 01/09/17 | ¶¶ 633–34 |
| Segers | 11/19/13 | 09/15/14 | 12/23/16 | ¶¶658–59 |
| Serignano | 09/22/14 | 07/19/15 | 12/16/16 | ¶¶ 667–68 |
| Shafer | 10/02/13 | 07/29/14 | 01/08/17 | ¶¶ 676–77 |
| Shannon-Carr | 03/17/14 | 01/11/15 | 04/05/17 | Ex. 63 at 2–3 |
| Snyder | 12/01/13 | 09/27/14 | 04/05/17 | ¶¶ 693–94 |
| Sylvester | 01/20/15 | 11/16/15 | 12/13/16 | ¶¶ 702–03 |
| Tuttle | 11/01/13 | 08/28/14 | 01/09/17 | ¶¶ 727–28 |
| Valentine | 12/01/14 | 09/27/15 | 02/16/17 | ¶¶ 736–37 |
| Van Gilder | 03/20/15 | 01/14/16 | 12/26/16 | ¶¶ 745–46 |
| Van Wart | 11/11/15 | 09/06/16 | 12/12/16 | ¶¶ 754–55 |
| Van Wyk | 09/25/13 | 07/22/14 | 02/20/17 | ¶¶ 766–67 |
| Waite | 11/14/14 | 09/10/15 | 02/20/17 | ¶¶ 772–73 |
| West | 12/01/15 | 09/26/16 | 04/20/17 | ¶¶ 789–90 |
| Winkler | 06/01/15 | 03/27/16 | 12/12/16 | ¶¶ 797–98 |
| Woodward | 04/30/15 | 02/24/16 | 12/11/16 | ¶¶ 806–07 |
| Zawacki-Chapman | 09/01/14 | 06/28/15 | 04/18/17 | ¶ 812; Ex. 78 at 2 |

In the alternative, Plaintiffs assert that their claims are not time-barred because they are entitled to equitable tolling. (Pls.' Opp'n at 10–12). Equitable tolling of the ADEA's exhaustion requirement is "only appropriate in rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (quotations omitted). Before a plaintiff can obtain equitable tolling, they must first show they were diligent in pursuing their claims. *Id.* at 80–81 (noting inquiry is

whether plaintiff "has acted with reasonable diligence during the time period she seeks

to have tolled[.]" (quotations omitted)).  These 63 Plaintiffs fail this requirement.

Many Plaintiffs waited several years to bring their Charges to the EEOC.  (*See*

*supra* Table 1; *e.g.*, Hatcher (waiting over two years); Csernay (waiting approximately

three years); Ortega (waiting over three years)).  Plaintiffs explain such delay by

claiming they did not suspect they had been discriminated against until they "learned

from Plaintiffs' counsel . . . that they were dismissed because of their age."  (SAC ¶ 100).

Yet at the same time they contend they were "in total disbelief of their

terminations . . . all having sound track records and no deficiencies leading to abrupt

dismissals in a vacuum."  (Pls.' Opp'n at 14).  If allegations that "most Plaintiffs were

confused as to why they were suddenly being discharged" or "stunned that they were

being discharged given their exemplary performance," (SAC ¶ 144), are accepted as

true—as required on this motion— it demonstrates their lack of diligence.  *See Visco v.

Brentwood Union Free Sch. Dist.*, 991 F. Supp. 2d 426, 435 (E.D.N.Y. 2014) (refusing to

apply equitable tolling where "Plaintiff could have, and indeed did, suspect

discrimination well before she definitively learned of younger teachers receiving

tenure.").

Even if they were diligent, these plaintiffs would not be entitled to tolling.  For

equitable tolling to be available, ordinarily the "employer's misleading conduct [must

be] responsible for the employee's unawareness of his cause of action."  *Dillman v.

Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986).  Plaintiffs must allege facts from

which the Court could conclude that they were "unaware of [their] cause of action

under the ADEA because of [the employer's] misleading conduct." *Id.* "This theory of fraudulent concealment warrants equitable tolling if the plaintiff can show that it would have been impossible for a reasonably prudent person to learn that the defendant's conduct was discriminatory." *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (quotations omitted). Such circumstances are not present here.

Plaintiffs assert that given Defendants' "nationwide scheme to terminate employees based upon age," Plaintiffs in one state would have no knowledge of a terminated employee in another state, preventing them from exercising their rights. (Pls.' Opp'n at 12). They argue that it was impossible for all 76 Plaintiffs to suspect that their discharge was discriminatory as HR representatives were "giving none of them a clear understanding of why they were terminated," and that this context constitutes extraordinary circumstances. (*Id.* at 13–14). Plaintiffs do not cite to any caselaw where the presence of a nationwide scheme was a basis for tolling. Nor have they cited any case where tolling was accorded in gross—to an entire group—as opposed to on an individualized basis from that employee's particular circumstances. Furthermore, the presence of multiple plaintiffs across many states does not indicate, standing alone, that Defendants acted in a misleading way so as to prevent an employee from learning they were fired because of age. Indeed, nothing about the existence of *other* plaintiffs prevents a single plaintiff from drawing an inference that they were fired because of their age. And even accepting Plaintiffs' tolling theory, they fail to allege that the firings were carried out in a manner to prevent individuals from learning about the firings of other plaintiffs (for example, by only firing one person at an individual location or by

forcing parties to sign NDAs upon termination).  In fact, they allege that the firings were broadly done, throughout the country, in an open and obvious way—for the ostensible purpose of shifting the ethos of the company to a younger customer base. (SAC ¶¶ 121, 158).  That conduct, if true, would not have prevented a plaintiff from learning more about the basis for their firing and compelling them to bring suit; quite the opposite.

Ultimately, "the doctrine of equitable tolling 'does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of treatment of other employees months or years after their discharge.'" *Fausto v. Reno*, 955 F. Supp. 286, 293 (S.D.N.Y 1997) (adopting report and recommendation) (quoting *Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992)).  Courts "have refused to apply equitable tolling where the claimant contends that [they] discovered the alleged discriminatory motive for the employer's act years later, based upon the employer's treatment of other employees."  *Jones v. LIRR*, No. 96-CV-0433, 1998 WL 221365, at *3 (E.D.N.Y. May 1, 1998), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *see also Castricone v. Cnty. of Erie*, No. 96-CV-0372, 1997 WL 584311, at *2 (W.D.N.Y. Sep. 9, 1997).

Plaintiffs also contend that the limitations period should be tolled because they were allegedly misled by pretextual terminations.  (Pls.' Opp'n at 12; *see, e.g.*, SAC ¶¶ 165, 174, 183).  But the presence of pretext is not a basis for tolling—otherwise virtually every ADEA case would be subject to tolling—in the absence of some other, additional misconduct that prevents the plaintiff from learning about or asserting their

rights.  *See Talyansky v. Mercury Print Prod., Inc.*, No. 98-9438, 1999 WL 642922, at *2 (2d Cir. Aug. 20, 1999) (rejecting tolling based on alleged pretextual justification of downsizing); *e.g.*, *Carrion v. Coca-Cola Bottling Co. of New England*, No. 05-CV-1720, 2006 WL 3526748, at *4 (D. Conn. Dec. 1, 2006) ("Even if Coca–Cola used Carrion's supposed theft as an excuse for a discriminatory termination, which the court does not decide, this does not amount to improper delaying or misleading by Coca–Cola to trigger these equitable doctrines."); *Gray v. Shearson Lehman Bros., Inc.,* 947 F. Supp. 132, 135 (S.D.N.Y. 1996) ("[P]laintiff's lack of awareness of defendants' intent does not toll the filing period, and the fact that defendants may have provided other reasons for the employment actions does not justify an inference that plaintiff was misled.").  "To hold otherwise would allow the exception of equitable tolling to swallow the rule . . . that an employee's awareness of a discriminatory motive has no bearing on the 300-day period."  *Syrkin v. State Univ. of N.Y.*, No. 04-CV-4336, 2005 WL 2387819, at *9 (E.D.N.Y. Sep. 29, 2005).

Because no Plaintiff has adequately alleged that Defendants actively misled them in a manner that prevented them from timely asserting their claims, they are not entitled to equitable tolling.  *E.g.*, *Seck v. Info. Mgmt. Network*, 697 F. App'x 33, 34 (2d Cir. 2017) ("Equitable estoppel did not apply because Seck did not allege facts showing that, while he was aware of his federal claims, the defendants prevented him from suing to assert them.").  And, therefore, the claims of the 63 Plaintiffs who are time-barred are dismissed with prejudice.  *See Shafi v. Barnelap Indus., Inc.*, 09-CV-2991, 2010 WL 11626904, at *1 (E.D.N.Y. 2010).

15

**b. Claims of Remaining Plaintiffs.**

This leaves 13 Plaintiffs whose claims are not time-barred.  Defendants seek to dismiss their claims for failure to adequately state an ADEA claim.

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To survive a motion to dismiss, a plaintiff must plausibly allege (1) that the employer took adverse employment action and (2) that such action would not have occurred "but for his age." *Lively v. WAFRA Inv. Advisory Grp.*, 6 F.4th 293, 303 (2d Cir. 2011) ("[I]t is not sufficient for a plaintiff to show that 'age was simply a motivating factor' in the employer's adverse action" (quoting *Gross v. FBL Fin. Sevs.*, 557 U.S. 167, 174 (2009))); *see also Bernstein v. N.Y.C. Dept. of Educ.*, No. 21-2670, 2022 WL 1739609, at *1 (2d Cir. May 31, 2022) (affirming dismissal of an age discrimination claim where the plaintiff "fail[ed] to allege that he was mistreated because of his age.").  To meet this standard, plaintiff is required to plead only enough facts that might plausibly support a "minimal inference of but-for causality between his age and his termination."  *Marcus v. Leviton Mfg. Co., Inc.*, 661 Fed. App'x 29, 32 (2d Cir. 2016) (quotations omitted); *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019) ("[A]ny inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial.").

Defendants do not challenge that Plaintiffs have sufficiently pleaded adverse employment actions (termination and constructive termination).  They maintain, however, that Plaintiffs fail to allege sufficient facts to give rise to an inference that they

16

would not have been terminated but-for their age.  (Defs.' Mot. to Dismiss at 9).  They assert that Plaintiffs' claims should be dismissed for "fail[ing] to allege that the stated reason was a pretext for age discrimination."  (*Id.* at 14).  But in doing so, Defendants—relying on *McDonnell Douglas*—misconstrue the Plaintiffs' burden at this stage.

The determination of whether an employer's stated reason was a pretext for the alleged discriminatory conduct is relevant only to summary judgment.[6]  *See Marcus*, 661 Fed. App'x at 32 n.2  ("*McDonnell Douglas* is an evidentiary standard, not a pleading standard, and is therefore not the relevant standard at the 12(b)(6) stage."); *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230–31 (2d Cir. 2014) ("Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions—a question as to which the defendants bear the burden of production—is not properly decided on a motion to dismiss for failure to state a claim." (citation omitted)); *see also Kimura v. Japanese Educ. Inst. of N.Y.*, No. 96-CV-6063, 1997 WL 1048909,  at *3 (E.D.N.Y.  Nov. 4, 1997) ("[A] plaintiff's failure to show pretext or intentional discrimination is inconsequential to a 12(b)(6) motion.").

---

[6]  Under the *McDonnell Douglas* framework a plaintiff bears the initial burden of establishing a *prima facie* case of age discrimination, by showing "(1) that []he was within the protected age group, (2) that []he was qualified for the position, (3) that []he experienced [an] adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  *Lively*, 6 F. 4th at 293, 302 n.3. (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012)).  Once a prima facie case is established, the defendant must produce evidence of a legitimate, non-discriminatory reason for the adverse action, and the plaintiff must in turn "rebut [this] by showing that the employer's determination was in fact the result of [age] discrimination."  *Id.* (quotations omitted).

In arguing that Plaintiffs must plead facts demonstrating pretext, Defendants cite to *Soto v. Marist College*.  (Defs.' Mot. to Dismiss at 14).  However, in *Soto*, the court's use of the word "pretext" was not a vehicle for importing the *McDonnell Douglas* framework to the pleading stage, as Defendants erroneously interpret it as a license to do.[7]  Instead, it was evidence that plaintiff's complaint was deficient, and contained no facts from which *any* inference of discrimination could be drawn.  No. 17-CV-7976, 2019 WL 2371713, at *6 (S.D.N.Y. June 5, 2019) ("Although Plaintiff states that he believe[s] that this explanation was pretextual, he pleads no facts that, if true, would enable the Court to draw the same inference." (quotations omitted)); *see also Lively*, 6 F.4th at 307 (where plaintiff failed to allege any facts in support of his discrimination claim, the conclusory assertion that the stated reason for his termination "was nothing more than a pretext" was "implausible").  At most, *Soto* and the cases it cites stand for the modest proposition that allegations of pretext, when pled by the plaintiff, can establish (or the absence of) the necessary inference of discrimination to permit a case to go forward to discovery.   It does not otherwise raise the pleading standard or import the typical summary judgment inquiry into an earlier stage of the case.

---

[7]  For example, Defendants cite to *Ponniah Das v. Our Lady of Mercy Medical Center*, in arguing that allegations of past exemplary job performance do not support an inference of discrimination.  (Defs.' Mot. to Dismiss at 16).  However, *Ponniah Das* concerned a summary judgment motion and held that because the defendant had stated a "legitimate, nondiscriminatory reason," the burden now fell on plaintiff to prove that the "proffered explanation [was] not truthful, but merely a pretext for discrimination" for termination.  No. 00-CV-2574, 2002 WL 826877, at *6 (S.D.N.Y. Apr. 30, 2002).

Separately, Defendants urge this Court to ignore the attached EEOC Determinations in analyzing the plausibility of Plaintiffs' claims.[8]  However, at the motion to dismiss stage, courts often consider EEOC decisions incorporated in a complaint.  *See, e.g.*, *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (considering an attached EEOC decision concluding that plaintiff's employment was terminated for cause when affirming the district court's dismissal of disparate treatment claims).  And furthermore, in this case the EEOC decisions are often incorporated into the Plaintiffs' own allegations.  (*e.g.*, SAC ¶ 718).  The Court is, therefore, permitted to consider them on this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference" where a plaintiff "reli[es] on the terms and effect of a document in drafting the complaint."); *see, e.g.*, *Collins v. City of New York*, 156 F. Supp. 3d 448, 455 n.4 (S.D.N.Y.

---

[8] Of the remaining Plaintiffs, the Complaint includes EEOC Determinations for about half.  In all the Determinations, the EEOC includes language that asserts based on "[s]tatistical analysis of [Defendants'] discharge patterns and anecdotal evidence of incidents of age-based targeting of employees" a finding that Defendants had engaged in a "pattern or practice of age discrimination against older workers."  (*See, e.g.*, SAC Ex. 74, Dkt. No. 47-74 at 25).  Such allegations of Defendants' pattern or practice of discriminating against older employees, though not dispositive, are still relevant to the individual Plaintiff's claims of discrimination.  *See Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 361 (S.D.N.Y. 2024) (allegations that Plaintiff was the oldest member of her team and was suddenly laid off despite her "excellent work record," alongside allegations that defendant disproportionately laid off a high number of employees over the age of 40, rendered it plausible that she would not have been laid off but for her age).  But for the reasons noted below, the Plaintiffs whose claims are being dismissed on the merits have failed to assert essential elements of the claim (including that the replacement employee was under 40 years old).  The Determinations only raise the plausibility of the claims that already themselves have sufficient allegations to go forward, but do not save those which do not.

2016) (considering EEOC charge referenced in complaint in deciding motion to dismiss).

Defendants are correct that EEOC decisions are not categorically admissible, let alone, dispositive of the merits of a claim (such as by making a wholly implausible claim of discrimination plausible). *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 (2d. Cir. 1998) (noting that employment agency determinations "vary greatly in quality and factual detail," and permiting defendants to "expose [any] weaknesses of the report[s].").  But a court may consider an attached EEOC decision and its reasoning alongside plaintiff's allegations, to determine if, together, the plaintiff has offered more than "labels and conclusions" and "nudged their [ADEA claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570;  *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) ("Moreover, we agree that a finding of probable cause by an administrative agency, such as the EEOC, though not determinative, is admissible to help establish this prima facie case."), *aff'd and remanded on other grounds,* 479 U.S. 60 (1986); *e.g.*, *Henderson v. Saks & Co., LLC*, 22-CV-9925, 2024 WL 1134586, at *2–*3 (S.D.N.Y. Mar. 15, 2024) (finding that an EEOC probable cause determination along with plaintiff's allegations was enough to overcome a motion to dismiss).  The Court, therefore, addresses the sufficiency of each remaining Plaintiffs' allegations in turn.  Those Plaintiffs are: Weimer, Reese, Kelly, Gaskey, Nilsen, Matthew Schneider, Tracy Schneider, Tanase, Synol, Boniol, Parlette, McBride, and Marino.

First, Weimer alleges that he was terminated on February 26, 2016, when he was 56 years old.  (SAC ¶ 778).  He alleges that his stated cause for his firing was based on

three incidents: twice where he paid out of pocket for business-related services, including paying a mechanic to fix an inoperable lane in 2014, and once where he added hourly wages to an employee's paycheck when her husband helped her run a youth bowling league. (*Id*.) Defendants argue for dismissal because "he admits" the allegations that led to his discharge and "fails to allege that the stated reason [for his termination] was a pretext for age discrimination." (Defs.' Mot. to Dismiss at 14). But Weimer also alleges that he was a "highly successful manager and never had a negative annual review or blemish on his performance record" in his 25 years of employment. (SAC ¶ 778(b)). He contends that "management was well aware" of the incidents and that he had even received another favorable review in October 2015, after the 2014 lane incident. (SAC ¶ 778(d)). Further, Weimer alleges that he was replaced by a 24-year-old male. (SAC Ex. 74, Dkt. No. 47-74 at 3). In their Determination, the EEOC found that Weimer had been "discharged because of age in violation of the ADEA" and that Defendants' explanation for his discharge was "a pretext for age discrimination." (*Id.* at 25). Weimer's allegations are enough to satisfy the pleading standard. *See, e.g., Roginsky v. Cnty. of Suffolk, N.Y.*, 729 F. Supp. 2d 561, 568–69 (E.D.N.Y. 2010) (rejecting argument that plaintiff had failed to plead but for causation—in face of policy violations that led to termination—when he claimed he had previously engaged in the same conduct "without any adverse consequences despite the [defendant's] knowledge[.]").

In the same vein, Defendants argue that Reese's claim should be dismissed because he failed to deny that a reduction in force—the stated reason for his termination—had occurred. (Defs.' Mot. to Dismiss at 15). Reese alleges that at the

time Defendants acquired the bowling centers where he worked, he was a district manager that oversaw nine bowling centers in Arizona alongside another district manager, Mr. Hall.  (SAC ¶ 604(b)).  In the summer of 2016, a younger area manager, Mr. Pulzato, was given responsibility for three bowling centers in the region. (SAC Ex. 54, Dkt. No. 47-54 at 37).  Reese was then discharged on June 2, 2017.  (SAC ¶ 607).

Defendants argue for dismissal because Reese does not allege that the "unspecified co-workers" who remained were not in his protected class.  (Defs.' Mot. to Dismiss at 15).  But Reese contends that he was 64 years old when he was fired and that Mr. Hall, his counterpart who was retained, was approximately 30 years younger and "significantly less experienced in both single center and multi-center management." (SAC ¶ 604(d)).  Although Reese does not allege a specific age for Hall, his approximation of Hall's age is sufficient to infer that Hall was not in the class protected by the ADEA.  *See Mitchell v. N.Y.C. Dept. of Educ.*, No. 24-992, 2025 WL 978366, at *2–*3 (2d. Cir. Mar. 31, 2025) ("[Plaintiff's] allegations on information and belief concerning the demographics of the teachers hired in place of the terminated older teachers, including him, are sufficient at the pleading stage" and are "the types of allegations entitled to a presumption of truth on a Rule 12(b)(6) motion.").  And the cases that Defendants cite—where individuals over 40 were the replacement employees—are inapposite.  (Defs.' Mot. to Dismiss at 15 (citing, for example, *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446, 2019 WL 6498711, at *5 (S.D.N.Y. Dec. 3, 2019) (both plaintiff and her replacement were over 40)).  Bolstered by the EEOC's findings that Reese's termination was a "pretext for age discrimination" as he was "effectively" replaced by

22

the "younger Mr. Pulzato," the Complaint contains sufficient facts to make plausible that "but for" his age Plaintiff Reese would still be employed.  (SAC Ex. 54, Dkt. No. 47-54 at 37).

Kelly alleges that he was constructively terminated on April 8, 2017, when he was 53 years old after working for the same bowling center for 26 years.  (SAC ¶¶ 430, 433).  Shortly after Bowlmor acquired his center, the Company's Senior Vice President and his general manager "relentlessly challenged everything he did" and he received "his only write-up in 26 years" in February 2017, two months prior to termination.  (SAC ¶ 430(d)).  Defendants argue that allegations of past exemplary job performance do not support a plausible inference of discrimination.  (Defs.' Mot. to Dismiss at 16).  But in doing so, Defendants cite to a summary judgment decision.  *See Ponniah Das*, 2002 WL 826877 at *6.  And again, at the pleading stage, a plaintiff does not bear the same burden, and allegations of a long history of exemplary performance may make it more likely that age was a but-for cause of a sudden termination.  *See, e.g., Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 361 (S.D.N.Y. 2024) (finding that the "alleged circumstances surrounding [plaintiff's] layoff do render it plausible that she would not have been laid off but for her age" as she was in her early 60s and "one of the oldest members of her team" and was "suddenly laid off despite her excellent work record" (quotations omitted)).

Defendants point out that Kelly alleges that he failed to "lock out a machine prior to fixing" which was "technically a violation."  (SAC ¶ 430).  The EEOC found that Defendants' explanation for his discharge was "a pretext for age discrimination" and

that there is "reasonable cause to believe that [Defendants] caused [Kelly] to be constructively discharged . . . as part of a company-wide pattern or practice of discharging employees because of their age." (SAC Ex. 34, Dkt. No. 47-34 at 20). And he also asserts that he was replaced by "the boyfriend of [his] general manager who was much younger than [him]." (*Id*. at 3). These allegations, taken together, are enough to withstand Defendants' motion to dismiss. *See, e.g.*, *Gonzalez v. Carestream Health, Inc.*, 520 Fed. App'x. 8, 10 (2d Cir. 2013) (where plaintiff "alleged that he is a 60–year old man with 'stellar' performance evaluations, who was terminated for pretextual reasons . . . combined with his allegation that [defendant] maintained substantially younger workers, we find that no further amplification was necessary to state a plausible claim of age discrimination").

Gaskey alleges that she was unlawfully "managed out" by the Defendants on October 31, 2023, when she was 48 years old. (SAC ¶ 823). When she was hired as a Senior Sales Manager, she was 47 years old but that "she looked to be in her mid-20s." (SAC ¶ 823(b)). As her colleagues learned about her age, they began to refer to her as "grandmother" and that after management became aware of her actual age, she began to receive write-ups. (SAC ¶¶ 823(e–f)). She alleges that she was receiving these write-ups "over inconsequential details while her younger colleagues were not given write-ups for the same conduct" and that she was denied new leads for large group events that were assigned "to other younger, less experienced members of the sales team." (SAC ¶¶ 823(f), (h)). At the time of her termination, she was the best performing salesperson and that all the other salespersons in her group were between 22 and 28

years old.  (SAC ¶ 823(n)).  Given her allegations that she was punished for actions that her younger colleagues were not, only upon management becoming aware of her age and despite her superior performance, Gaskey has sufficiently pled an age discrimination claim.[9]

Nilsen alleges that he was terminated because of his age on November 15, 2017, when he was 57 years old.  (SAC ¶ 543(e)).  Defendants argue for the dismissal of Nilsen's claim because he admits that he failed to "follow[] procedures" in terminating an employee under his supervision in November 2017.  (Defs.' Mot. to Dismiss at 13 n.10; SAC ¶ 543(c)).  He alleges that prior to his termination, in August 2017, he received "excellent" scores that would put him "within the top 10–20% of all company general managers for fiscal year 2017."  (SAC Ex. 47, Dkt. No. 47-47 at 2).  He found his termination "odd" because he had never been written up for any company policy violation.  (SAC ¶ 543(d)).  Further, he alleges he was replaced by a 29-year-old employee.  (SAC Ex. 47, Dkt. No. 47-47 at 3).  Again here, such allegations are sufficient to satisfy the ADEA pleading standard.  *See, e.g.*, *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that plaintiff "put forth the minimal proof necessary to establish a prima facie case of age discrimination" by pleading that he was over 60 years old, had extensive experience, was discharged, and was replaced by a 31-year-old employee).

---

[9] Defendants argue that Plaintiffs only conclusively allege that they were "managed out" and that, regardless, such allegations would be insufficient to meet the pleading standard.  (Defs.' Mot. to Dismiss at 18).  But they rely on *Hill v. Bloomberg L.P.*, a summary judgment case where the court dismissed a discrimination claim because the plaintiff had only summarily stated that he was "managed out."  *See* No. 14-CV-9809, 2016 WL 1665599, at *11 (S.D.N.Y. Apr. 20, 2016).  Such a case is inapposite.

Matthew Schneider alleges that he was employed in the bowling industry for 25 years when he was unlawfully discharged by the Defendants at 47 years old.  (SAC ¶ 639).  On November 3, 2017, the district manager questioned him about "anomalies with certain transactions involving [an] employee." (SAC ¶ 639(d)).  When he inquired into the transactions, he was given no specific details and was separately told that his bowling center's costs were rising "when, as general manager, he knew they were decreasing and that his bowling center was one of the best performing bowling centers in its district."  (*Id*).  Schneider was then terminated "for violating a company policy, although not one specific policy was mentioned."  (SAC ¶ 639(e)).  During his final pre-termination employment review in September 2017, two months prior, he "received a very positive review and a 2% salary increase."  (SAC ¶ 639(c)).  He also alleges that he was replaced by his former assistant manager, Eric Gray, who was 28 years old.  (SAC ¶ 639(f)).  Such allegations are sufficient to make Schneider's claim of age discrimination plausible.

Tracy Schneider alleges that she was employed in the bowling industry for 31 years when she was unlawfully discharged by the Defendants because of her age when she was 58 years old.  (SAC ¶ 647).  In the last year of her employment as a general manager, she "was constantly being pressured and her work scrutinized by then district manager, Scott Chauncey" and was placed on a Performance Improvement Plan, despite her consistent "good performance."  (SAC ¶ 647(c)).  She alleges Chauncey fired her and cited her failure to place cash immediately into a safe when she was attending to a guest who had fallen.  (SAC Ex. 59, Dkt. No. 47-59 at 3).  She was replaced by her

Operations Manager who was "much younger than 40 years old" and who, six months prior to her termination, had wanted to transfer to another center but was told by the district manager that "he could not transfer, because he had other plans for him." (*Id.* at 2). Schneider's allegations that she was over 40, replaced by a specific employee under 40, and was suddenly placed on a Performance Improvement Plan, a decision she describes as pretextual, are sufficient to advance her claim.

Tanase alleges that he was employed in the bowling industry for 22 years when he was unlawfully discharged by the Defendants on May 16, 2023, at 61 years old. (SAC ¶ 716). As Vice President of Information Technology working in the Defendants' New York office, (SAC ¶¶ 716(a)), he witnessed "as the Defendants routinely terminated older employees and replaced them with much younger employees to fit the new image Defendants desired." (SAC ¶ 716(e)(i)). It was "known internally within the executive offices company that if your appearance was old . . . you were subject to being 'managed out.'" (SAC ¶ 716(e)(ii)). He also witnessed first-hand how closely involved Shannon was in personnel decisions and often needed his assistance with the virtual interviews that "were essentially a means for Shannon to judge the age and appearance of the candidate for youthfulness and physical attraction." (SAC ¶ 716(e)(v)).

He alleges that he was "managed out" as Defendants installed a "much younger employee as someone that would help [him]," but that almost immediately he was "undermined by this new person" with the "purpose of finding some fact or statement" to use "as a pre-text to terminate" him. (SAC ¶¶ 716(h–i)). In May 2023, he received a call from HR stating that they accepted his resignation, even though he had not

submitted his resignation.  (SAC ¶ 718;  SAC Ex. 67, Dkt. No. 47-67 at 3).  He was

allegedly "replaced by a much younger male employee."  (SAC ¶ 716(m)).

The EEOC issued a Determination finding that "at no time did [Tanase] intend to

resign" and that Defendants "mischaracterized his disagreement with his supervisor as

a pretextual justification for falsely asserting that he had resigned."  (SAC Ex. 67, Dkt.

No. 47-67 at 23).  The Determination states that Defendants had "maintained a practice

of 'managing out' older workers, wherein [Defendants'] officials harass and closely

scrutinize such workers looking for purported justification to discharge them" and that

such practice was applied to Tanase and noted his supervisor's conduct "included

unwarranted hostility, frequent criticism, unnecessary correction of his work" and

more.  (*Id.*).  The Determination further found that Tanase's adverse employment action

took place in a "context of pervasive age bias" where "[Defendants'] officials with direct

or successively higher supervisory authority over [Tanase] and [his direct supervisor]

frequently made age-biased remarks about older workers and stated a desire to hire

younger workers."  (*Id.* at 24).  Such allegations, taken together, are enough to advance

his claim.

Synol alleges that she was employed in the bowling industry for 29 years when

she was unlawfully discharged at 61 years old.  (SAC ¶ 708).  She "received positive

performance reviews and never once was the subject of a disciplinary incident or write-

up."  (SAC ¶ 708(b)).  Once Defendants took over her bowling center, two employees

were hired to assist her and took duties away from her.  (SAC ¶ 708(d)).  She was also

given a new title and 46 distinct tasks that her district manager "opined would be

impossible for any one person to satisfactorily perform." (SAC ¶ 708(e)). She was terminated in August 2018 "citing mistakes that had been made by other persons but had been attributed to her." (SAC ¶ 708(g)). Although Synol appears to allege that her termination was pretextual, she does not provide any other allegations, beyond conclusory statements that she was replaced by someone outside the protected class, (SAC ¶ 709), *i.e.* younger than 40 years old, that would make her age discrimination claim plausible. *See Bernstein*, 2022 WL 1739609, at *2 ("Bernstein's allegation that he was replaced by a 'younger' teacher is not enough here to raise an inference of age discrimination, especially because Bernstein again fails to allege his replacement's age or allege facts that would allow us to reasonably infer that his replacement was '[ ]significantly younger' than him.") (citation omitted); *Munoz–Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (finding an ADEA claim insufficiently pled where the plaintiff only alleged that younger applicants was chosen over her, with no indication of their age). Synol's claim is, therefore, dismissed. *See, e.g.*, *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 465–66 (S.D.N.Y. 2010) (adopting report and recommendation) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger teachers"); *Chui v. Publicis Groupe S.A.*, No. 24-CV-6767, 2025 WL 2711197, at *4 (S.D.N.Y. Sep. 23, 2025) (dismissing a claim where plaintiff failed to allege that the employer "gave more favorable treatment to similarly situated younger employees, or replaced him with a younger employee after he was fired").

Similarly, Boniol alleges that he was unlawfully discharged by the Defendants on September 1, 2016, when he was 48 years old.  (SAC ¶ 225).  While he was general manager "revenues increased in the bowling centers."  (SAC ¶¶ 225(e–f)).  He received "positive annual performance reviews and never once was the subject of a disciplinary incident or write-up."  (SAC ¶ 225(h)).  After CEO Tom Shannon visited his bowling center, his "employment was terminated without reason."  (SAC ¶ 225(i)).  He alleges that he was replaced by a person outside of the protected class.  (SAC ¶ 226).  Boniol has failed to make any age-based allegations beyond a conclusory statement that he was replaced by someone outside of the protected class.  Boniol's claim is, therefore, dismissed.  *See supra*; *Bernstein*, 2022 WL 1739609, at *2.

Parlette alleges that she was unlawfully terminated by the Defendants on November 23, 2015, when she was 59 years old.  (SAC ¶¶ 578(m), 581).  She was terminated for her alleged "mismanagement" of her center when an audit, conducted in her absence, revealed that three individuals had violated a policy under her supervision.  (SAC ¶¶ 578(c–d); SAC Ex. 51, Dkt. Not 47-51 at 2).  These individuals advised the auditors that she "was not aware of the infractions, nor would [she] approve [of] them."  (SAC ¶ 578(e)).  She had never been the subject of a disciplinary incident in the 36 years she worked for that center, (SAC ¶ 578(b)), and that after her termination several colleagues sought her advice on managing bowling centers, (SAC ¶ 578(k)).  Despite allegations of her prior good performance, Parlette similarly fails to make any age-based allegations beyond a conclusory statement that she was "replaced by a person outside of the protected class," (SAC ¶ 579), and general assertions that

younger employees were hired by the center, (SAC ¶¶ 578(f),(l); SAC Ex. 51, Dkt. Not 47-51 at 2). Parlette's claim is, therefore, dismissed.

Lastly, McBride alleges that she was constructively terminated by Defendants on May 13, 2016, when she was 67 years old. (SAC ¶ 508). She was employed by Defendants as a general manager as "a means to use her to terminate older employees and mask that such decisions were coming from a much older, senior employee." (SAC ¶ 508(a)). She resisted the orders of her district manager to terminate older employees or employees "not fitting the new youthful image the defendants desired[.]" (SAC ¶ 508(b)). She was threatened and verbally abused in front of her co-workers for refusing to comply which resulted in her constructive termination. (SAC ¶¶ 508(c–g), 514). She alleges that but for her age, she would not have been discharged and that Defendants hired younger employees into positions similar to hers after her employment ended. (SAC ¶¶ 508(i), 509).[10] The EEOC issued a Determination finding that Defendants had "created an objectively intolerable working environment because of age that caused McBride's resignation and that she was subject to discriminatory treatment due to her age." (SAC ¶ 510). This is simply a conclusory finding, that does not push the claim over the plausibility line. Without any allegations connecting discipline or poor evaluations to animus based on age, "such allegations of discipline and negative evaluations are insufficient to raise an inference of discrimination."

---

[10] Although this might have been framed as a retaliation claim, that is not what is alleged in the SAC.

*Bernstein*, 2022 WL 1739609 at *2.  Therefore, McBride has failed to plead a claim for age discrimination.

For these reasons, the Court finds that Plaintiffs Weimer, Reese, Kelly, Gaskey, Nilsen, Matthew Schneider, Tracy Schneider, and Tanase have sufficiently pled facts for their ADEA claims that withstand dismissal.  However, Plaintiffs Synol, Boniol, Parlette, and McBride have failed to do so, and their claims are dismissed with prejudice.

## II.    Capacity to Sue

Defendants allege that five Plaintiffs who pre-deceased this lawsuit are improperly named as parties, and their claims should be dismissed.  (Defs.' Mot. to Dismiss at 4).  Of these Plaintiffs, only Marino's claim is not time-barred.  *See supra* Table 1 (indicating that Tuttle, Waite, Bozzo, and Serignano filed EEOC Charges more than 300 days after termination.).

Rule 25 provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Fed. R. Civ. P. 25(a)(1).  If a motion for substitution "is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."  *Id*.  Identification of a decedent's successor is not necessary to start the ninety-day clock for substitution. *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469–70 (2d Cir. 1998); *Kotler v. Jubert*, 986 F.3d 147, 153 (2d Cir. 2021) ("We reject[] the notion that a notice of death cannot be filed until after a representative for the decedent's estate has been appointed[.]").

Plaintiffs' counsel noted on the record on October 31, 2024, that four unnamed Plaintiffs were deceased.  (Pls.' Opp'n to Defs.' Mot. to Stay Disc., Dkt. No. 33 ¶ 6). Defendants then raised this issue in their November 18, 2024, pre-motion conference letter.  (Defs.' PMC Req., Dkt. No. 37 at 3).  In their response, Plaintiffs' counsel identified Marino as among the deceased and asserted they had been retained by the respective Estates and would amend the complaint to properly name the successors. (Pls.' Opp'n to Defs.' PMC Req. dated Nov. 20, 2024, Dkt. No. 41 at 3).  No such amendment was made.  (*See* SAC ¶ 40).

Here, because Plaintiffs' counsel themselves noted Marino's death on the record on November 20, 2024, at the latest, the 90-day period for substitution has long since elapsed.  *See, e.g.*, *Alexis v. Vill. of Hempstead Police Dep't*, No. 24-CV-4666, 2025 WL 2625039, at *1 (E.D.N.Y. Sep. 11, 2025) (granting dismissal where more than 90 days had passed since counsel noted his client's death on the record).  Plaintiffs argue that such failure to join the estate as a party does not bar the suit "given the clear federal preference for resolving disputes on the merits."  (Pls.' Opp'n at 26).  But such general preference for deciding claims on the merits cannot overcome Plaintiffs' violation of Rule 25.  And given the long time since the indication of death without a motion for substitution being made, there is no longer any uncertainty about a potential substitute or successor—there is none.  Therefore, the Court dismisses Marino's claim with prejudice.  *See, e.g.*, *Mulvey v. Sonnenschein Nath & Rosenthal LLP*, No. 08-CV-1120, 2011 WL 5191320, at *2 (E.D.N.Y. Oct. 31, 2011) (dismissing with prejudice where plaintiff

failed to comply with the time period specified by Rule 25); *Nicosia v. United States*, No. 11-CV-5069, 2014 WL 2957496, at *3–*4 (E.D.N.Y. July 1, 2014) (same).

<u>CONCLUSION</u>

For the reasons discussed above, the Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion is granted as to the claims of the 63 Plaintiffs who are time-barred, the four Plaintiffs who failed to state a claim, and the now deceased Plaintiff Marino for failure to make a timely substitution under Rule 25. The time-barred claims cannot be cured by amendment, and so they are dismissed with prejudice.  For the four Plaintiffs who failed to state an ADEA claim—namely, Synol, Boniol, Parlette, and McBride—their claims are dismissed without leave to amend and with prejudice, because Plaintiffs have already amended their complaint two prior times.  *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) ("'Repeated failure to cure deficiencies by amendments previously allowed' is a valid reason to deny leave to amend.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  And for Plaintiff Marino, dismissal for failure to substitute is typically a with prejudice dismissal, *see Mulvey*, 2011 WL 5191320, at *1, and that is the result that follows here. Defendants' motion is denied as to the eight Plaintiffs who have sufficiently pled their claim, namely: Weimer, Reese, Kelly, Gaskey, Nilsen, Matthew Schneider, Tracy Schneider, and Tanase.

SO ORDERED.
<u>/s/ Sanket J. Bulsara</u>
SANKET J. BULSARA
United States District Judge

Date:  November 10, 2025
        Central Islip, New York