UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSEPH KELLY, et al.,

Plaintiffs,

v.

BOWLERO CORP., et al.,

Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-4738-SJB-JMW

**BULSARA, United States District Judge:**

This action is brought by former employees of Defendants Bowlero Corp., AMF Bowling Centers, Inc., and Bowlmor AMF Corp., (collectively, "Defendants"), who allege that they were forced out of their jobs because of their age in violation of the Age Discrimination in Employment Act ("ADEA"). Defendants have moved to compel arbitration for six of the eight plaintiffs remaining, Michelle Gaskey, Joseph Kelly, Paul Nilsen, David Reese, Matthew Schneider, and Tracy Schneider, (collectively "Plaintiffs"), based on arbitration agreements executed during their employment. (Defs.' Mot. to Compel Arb. dated Dec. 2, 2025 ("Defs.' Mot."), Dkt. No. 83). For the following reasons, the motion is granted.

BACKGROUND

Defendants are a national operator of bowling centers that employed Plaintiffs across the country. (Second Am. Compl. dated Feb. 17, 2025 ("SAC"), Dkt. No. 47 ¶¶ 138, 158). Between August 22, 2016 and October 7, 2016, Plaintiffs signed arbitration agreements, with Kelly, Nilsen, Reese, M. Schneider, and T. Schneider signing identical agreements. (Kelly Agreement, attached to Defs.' Mot. as Ex. 2, Dkt. No. 84-2; Nilsen

Agreement, attached to Defs.' Mot. as Ex. 3, Dkt. No. 84-3; Reese Agreement, attached to Defs.' Mot. as Ex. 4, Dkt. No. 84-4; M. Schneider Agreement, attached to Defs.' Mot. as Ex. 5, Dkt. No. 84-5; T. Schneider Agreement, attached to Defs.' Mot. as Ex. 6, Dkt. No. 84-6).[1] Gaskey executed a substantially similar agreement. (Gaskey Agreement, attached to Defs.' Mot. as Ex. 1, Dkt. No. 84-1).

Pursuant to § 1 of the Arbitration Agreements, titled "Voluntary Agreement to Arbitrate Claims" in bold, each Plaintiff and Defendants agreed to arbitrate:

> [A]ll claims, disputes, and/or controversies (collectively "claims"), whether or not arising out of Employee's employment or its termination, that Company may have against Employee or that Employee may have against Company, its subsidiaries or affiliated entities, or against its employees or agents in their capacity. The claims covered by this Arbitration Agreement include . . . claims for discrimination or harassment, including, but not limited to, any federal or state civil rights laws, ordinances, regulations or orders, based on charges of discrimination or harassment on account of . . . age . . . or any other discrimination prohibited by such laws, ordinances, regulations or orders[.]

(*See* Arbitration Agreements § 1).[2]

Right above the signature section, the Arbitration Agreements state, in capitalized text, that the employee "understand[s] that by signing this agreement, Company and Employee have both waived their right to a jury trial and their right to

[1] These Agreements are hereinafter referred to collectively as the "Arbitration Agreements."

[2] The Gaskey Agreement contains substantially similar language that Gaskey and Defendants agree to arbitrate "all claims, disputes, and/or controversies . . . whether or not arising out of Employee's employment or its termination . . . including, but not limited to, any federal or state civil rights laws, ordinances, regulations or orders, based on charges of discrimination or harassment on account of . . . age[.]" (Gaskey Agreement § 1).

appeal with respect to all claims covered" by the Agreement. (*Id.* at 2). The signatory employee acknowledges that he or she was given "the opportunity to discuss this agreement with [their] counsel" and "availed himself or herself of that opportunity to the extent [they] wishe[d] to do so." (*Id.*). They also acknowledge that they "have carefully read this Arbitration Agreement" and "understand its terms." (*Id.* § 15; *see also* Gaskey Agreement § 15 (containing similar acknowledgment language)).

Plaintiffs commenced this action on July 8, 2024 as part of a group of 76 individuals who alleged unlawful termination or retaliation in violation of the ADEA following Defendants' switch to a business model focused on younger clientele. (*See* Compl., Dkt. No. 1; SAC ¶¶ 121, 851–57).[3] Defendants twice filed premotion conference ("PMC") requests to dismiss, to which Plaintiffs responded by filing an Amended and Second Amended Complaint. (Defs.' July 25, 2024 PMC Req., Dkt. No. 13; Am. Compl. dated Oct. 5, 2024, Dkt. No. 26; Defs.' Oct. 18, 2024 PMC Req., Dkt. No. 28; SAC). After the Second Amended Complaint was filed on February 17, 2025, Defendants renewed their request for a premotion conference, and the Court directed the parties to brief Defendants' motion to dismiss. (Defs.' Feb. 25, 2025 PMC Req., Dkt. No. 48; Order dated Mar. 19, 2025).

On November 10, 2025, the Court dismissed 68 of the 76 Plaintiffs, denying dismissal of the claims of eight Plaintiffs, including the six Plaintiffs at issue here. *See* *Alloway v. Bowlero Corp.*, No. 24-CV-4738, 2025 WL 3145061, at *13 (E.D.N.Y. Nov. 10,

---

[3] Originally there were 75 Plaintiffs, but Gaskey joined the Second Amended Complaint. (SAC ¶ 78).

2025).[4] The Court ordered Defendants to answer the Second Amended Complaint and the previous stay on discovery was lifted. (Order dated Nov. 24, 2025). Briefing on Defendants' motion to compel arbitration was completed on January 19, 2026. (Defs.' Mot.; Pls.' Mem. in Opp'n to Defs.' Mot. dated Jan. 9, 2026 ("Pls.' Opp'n"), Dkt. No. 86; Defs.' Mem. in Reply dated Jan. 16, 2026 ("Defs.' Reply"), Dkt. No. 87).

## DISCUSSION

"[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements[.]" *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[B]ecause the FAA puts arbitration clauses 'on an equal footing with other contracts,'" *Certain Underwriters at Lloyds, London v. 3131 Veterans Blvd LLC*, 136 F.4th 404, 409 (2d Cir. 2025) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024)), an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2; *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (explaining that Section 2 "renders agreements to arbitrate enforceable as a matter of federal law"); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (noting that Section 2 reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution").

[4] The Court allowed the claims of Plaintiffs Thomas Tanase and Andrew Weimer to proceed. *See Alloway*, 2025 WL 3145061, at *13. Defendants have not moved to compel arbitration as to these plaintiffs.

"In deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation omitted). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

**I. Agreement to Arbitrate**

"Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase*, 602 U.S. at 145. "Questions concerning the formation and existence of an arbitration agreement must be resolved by courts in the first instance." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023). Therefore, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)).

"To determine whether parties agreed to arbitrate," the Court must "consider all relevant, admissible evidence submitted by the parties," drawing "all reasonable inferences in favor of the non-moving party"—a standard akin to summary judgment. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) (quotation omitted). The party seeking to arbitrate bears the burden on this threshold issue. *Id.* "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts,

the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Here, the Agreements contain choice-of-law provisions. Five of the six Agreements are governed by New York law, except that California law applies if the relevant employee worked at one of Defendants' California locations, an exception that applies to Nilsen and T. Schnieder. (*See* Arbitration Agreements § 7; Defs.' Mot. at 1–2). The Gaskey Agreement directs the arbitrator to apply "the substantive law and the law of remedies as applicable to the claim(s) asserted." (Gaskey Agreement § 7). Given that the validity of the Agreements is at issue, Defendants contend that the choice-of-law issue is immaterial as the standards for contract formation are largely uniform across all the relevant states. (Defs.' Mot. at 6). Plaintiffs concede this point. (*See* Pls.' Opp'n at 5).

The use of New York law in five of the six Agreements, with neither side objecting to the use of any particular state's law—conceding essentially that the disputes about contract formation are factual, not legal—leads the Court to apply New York contract law.

Under New York law, "[a] valid contract requires 'an offer, acceptance, consideration, mutual assent, and an intent to be bound.'" *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *2 (2d Cir. Sep. 27, 2024)

(quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). Every Arbitration Agreement at issue here satisfies this standard and is enforceable. The record reflects that each Plaintiff was presented with their Agreement in writing and signed it, expressing their assent and intention to be bound. (Arbitration Agreements § 15 (Plaintiffs agreeing that they "carefully read" their Agreement, "under[stood] its terms," and "entered into the Agreement voluntarily"); Gaskey Agreement § 15 (same)).[5] Plaintiffs' arguments to the contrary are unpersuasive.

*First*, Plaintiffs argue that the Agreements are unenforceable because "they are fraudulently signed documents" to which Plaintiffs did not meaningfully consent. (Pls.' Opp'n at 1, 5). In support, they submit emails between Plaintiffs' counsel and Plaintiffs in which counsel stated their belief that Defendants "force[d] agreements on employees across the country," asking whether the Plaintiff recalled signing the document, and informing them that counsel had previously "found instances w[h]ere Bowlmor gave false information." (Dowe Emails, attached to Pls.' Opp'n as Ex. B, Dkt. No. 85-2). Each Plaintiff then responded that they did not recall signing the Agreement. (*Id.*). A plaintiff's assertion that they do not recall signing an arbitration agreement, without any other evidence of fabrication, is insufficient to create an issue of fact as to whether a

[5] Given this language, there is no question that the Plaintiffs had notice of the terms of the Agreements. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[A] party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." (quotation omitted)). Plaintiffs' reliance on *Nicosia*, which dealt with internet-based wrap agreements, is misplaced. *See* 834 F.3d at 233, 237–38.

signature on a document is valid.[6] *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) ("Where a party merely states that she cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a declaration ordinarily fails to create a triable issue of fact."); *see, e.g.*, *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (finding plaintiff signed an arbitration agreement where he merely asserted that he did not recall signing it and defendant provided evidence to the contrary).

Plaintiffs allege fraud by claiming that no company-wide policy existed in 2016 and the Agreements were actually "concocted post-facto." (Pls.' Opp'n at 7–8). But their conclusory assertions that the Agreements "scream fraud" or "never existed" are undermined by the Agreements themselves and an affidavit from Defendants' senior human resources professional, Heather Webb, attesting to the validity of the Agreements and Defendants' general practice of requesting that employees execute such agreements. (Decl. of Heather Webb, attached to Defs.' Reply as Ex. 7, Dkt. No. 88-1 ¶¶ 3, 6–8); *see Vardanyan v. Close-Up Int'l, Inc.*, 315 F. App'x 315, 318 (2d Cir. 2009) (finding that individual's claimed inability to remember signing an agreement "d[id] not conflict with the testimony and evidence that defendants h[ad] submitted about the

---

[6] Plaintiffs similarly argue that the Agreements are invalid because no Plaintiff made an "affirmative action to demonstrate an intent to be bound." (Pls.' Opp'n at 9). Yet, five of the Agreements bear the Plaintiffs' written signatures. *See Petit v. Epiq Ediscovery Sols., Inc.*, No. 24-CV-9880, 2026 WL 2020963, at *3 (E.D.N.Y. July 13, 2026) (finding plaintiff's intent to be bound by the arbitration agreement was not in dispute where plaintiff signed the agreement). And the sixth, accepted through a computer form, comparably checked a "Signature of Employee" box that reads "checking the checkbox above is equivalent to a handwritten signature." (Gaskey Agreement at 3).

terms of that agreement"). Plaintiffs otherwise make no specific factual allegations that they were misled as to the content of the Agreement, that Defendants forged the contracts, or that they were otherwise forced to sign them under duress. (*See* Pls.' Opp'n at 2, 8 (relying only on alleged instances of misconduct by Defendants that do not concern the Arbitration Agreements or Plaintiffs)). Without more, Plaintiffs' accusations of fraud amount only to *ad hominem* attacks on Defendants and their counsel. *See, e.g.*, *Fayez-Olabi v. Credit Acceptance Corp.*, No. 21-CV-5443, 2022 WL 2918119, at *6 (E.D.N.Y. July 25, 2022) (finding that "plaintiff's fraud allegation is insufficient to create a genuine issue of material fact as to the existence of the contract" because "[h]e claims only that the defendant misled him into signing the contract, but includes no specific factual allegations").

*Second*, Plaintiffs dispute whether there was sufficient consideration given that they were already employed by Defendants. (Pls.' Opp'n at 11). But under each Agreement, both Plaintiffs and Defendants agreed to arbitrate all claims against one another and waived their right to bring claims in a court. (*See* Arbitration Agreements § 1; Gaskey Agreement § 1). Such mutual promises to arbitrate are sufficient consideration. *See Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc.*, No. 18-CV-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) ("Under New York contract law, mutual promises to arbitrate constitute consideration sufficient to support an arbitration agreement." (quotation omitted)); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) ("[T]he Agreement by itself contains sufficient consideration because, as

discussed, it mutually binds both parties to submit claims exclusively to arbitration." (collecting cases)).

*Third*, Plaintiffs charge that the Agreements are "unconscionable." (Pls.' Opp'n at 9–10). But Plaintiffs' unconscionability defense necessarily fails as they do not identify the law under which they base their claim. (*Id.*). Regardless, if the Court were to determine unconscionability under New York law, the argument fails. Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [] according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quotation omitted). The contract must be shown to be both procedurally and substantively unconscionable. *See id.* at 121–22 ("The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." (quotation omitted)). Plaintiffs argue the Agreements were procedurally unconscionable given that they "had no meaningful choice in agreeing," but provide no more than speculation to support the argument. (Pls.' Opp'n at 9). They also allege the Agreements are substantively unconscionable as they provide "the arbitrator with authority to require a party to pay the fee for the other party's representation during the arbitration proceeding," making arbitration "cost-prohibitive." (Pls.' Opp'n at 10). But there is no fee-shifting provision in the Agreements, which simply grant the arbitrator the ability to award attorneys' fees "as is otherwise permitted under federal or state law." (Arbitration Agreements § 10; *see also*

Gaskey Agreement § 10). And, as the Plaintiffs note, (*see* Pls.' Opp'n at 10), "[t]he cost of the Arbitrator and other incidental costs of arbitration shall be borne by" Defendants, (Arbitration Agreements § 10*; see also* Gaskey Agreement § 10). Plaintiffs' otherwise conclusory allegations are insufficient to establish unconscionability warranting invalidation of the Agreements.

*Lastly*, Plaintiffs contend that enforcing the Agreements would "violate the vindication of claimants' statutory rights." (Pls.' Opp'n at 11–12). But there is nothing unique about Plaintiffs' ADEA claims. And the law is clear that ADEA claims may be arbitrated. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) ("This Court has squarely held that the ADEA does not preclude arbitration of claims brought under the statute.").

Plaintiffs' remaining arguments are either irrelevant or without merit. The Agreements are deemed valid.

**II. Scope of the Agreement**

Defendants argue that Plaintiffs' claims for employment discrimination under the ADEA fall within the scope of the Agreements. (Defs.' Mot. at 7; *see also* Arbitration Agreements § 1 (covering "claims for discrimination or harassment, including, but not limited to, any federal or state civil rights laws . . . based on charges of discrimination or harassment on account of . . . age")). Plaintiffs failed to address this issue, in effect conceding the point. Regardless, the ADEA claims squarely fall within the scope of the arbitration provisions.

**III. Waiver**

As a last attempt to avoid arbitration, Plaintiffs argue that Defendants have waived their right to arbitrate. (Pls.' Opp'n at 13). They claim that if Defendants "were truly interested in enforcing their arbitration agreements, the time to do so would have been when Plaintiffs filed suit in June 2024." (*Id.* at 14). In determining whether a party has waived its right to arbitrate, courts consider whether the "moving party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Doyle v. UBS Fin. Servs. Inc.*, 144 F.4th 122, 130 (2d Cir. 2025). To answer this question, courts may look to "all aspects of the moving party's conduct . . . as long as [they] do not do so through the lens of prejudice." *Id.* Those aspects include: (1) "the time elapsed from when litigation was commenced until the request for arbitration;" and (2) "the amount of litigation to date, including motion practice and discovery." *Id.* at 126 (quotation omitted).

From the beginning, Defendants have repeatedly noted their intent to move to compel arbitration. As early as October 18, 2024, three months after the case began and a week after Plaintiffs first amended their Complaint, Defendants noted this intent. (Defs.' Oct. 18, 2024 PMC Req. at 4 n.5 (noting that given the number of plaintiffs and changes in employment documentation over the years, an analysis as to the arbitrable claims was ongoing)). After the Court granted Plaintiffs leave to file a Second Amended Complaint, Defendants sought leave to dismiss, while also reserving their right to move to compel arbitration. (*See* Defs.' Feb. 25, 2025 PMC Req. at 4 n.2). Defendants continued to raise their intent to seek arbitration in briefing the motion to

dismiss and answering the Second Amended Complaint. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss dated Apr. 11, 2025, Dkt. No. 63 at 24 n.17; Defs.' Answer to SAC dated Dec. 12, 2025, Dkt. No. 74 at 1). Such conduct is not inconsistent with Defendants' right to compel arbitration. *See, e.g.*, *Eden Treatment, LLC v. Dewick*, No. 24-CV-7114, 2026 WL 786325, at *5 (E.D.N.Y. Mar. 11, 2026) (finding no waiver where plaintiff had been on notice for nearly a year that defendants were interested in seeking arbitration and reiterated this intent throughout litigation); *Pauyo v. Citibank*, No. 25-CV-1041, 2026 WL 2137609, at *3 (E.D.N.Y. July 24, 2026) (finding no waiver where defendant put plaintiff on notice of its intent to arbitrate from its first communication and consistently reiterated its intention in further communications).

Considerations of the time elapsed and amount of litigation further support this finding. While the case is over two years old, it has been marked by several amended complaints. Defendants sought arbitration less than a year after the operative complaint was filed, and shortly after the Court's ruling on the motion to dismiss.

Additionally, aside from the motion to dismiss,[7] the amount of litigation to date has been limited as discovery has effectively been stayed for the duration of the litigation. (*See* Order dated Nov. 18, 2024, Dkt. No. 39; Order dated Apr. 28, 2025, Dkt. No. 59); *see Pierre v. Rochdale Vill. Inc.*, No. 18-CV-6383, 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020) (discovery consisting of "limited production" and no depositions weighs against finding a waiver of the right to arbitrate). As such, the Court finds no waiver of the right to arbitrate.

[7] Plaintiffs argue that Defendants waived their right to arbitrate by moving to dismiss claims that could have been arbitrated. (Pls.' Opp'n at 13–14). But in doing so, they primarily rely on out-of-circuit cases. (*Id.*). While courts in the Second Circuit have considered moving to dismiss relevant to a finding of waiver, no bright-line rule exists. *See La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (rejecting a "rigid formula or bright-line rule for identifying when a party has waived its right to arbitration" and requiring analysis of the "specific context of each particular case"). And such cases often include other factors indicating waiver not present here. *See Doyle*, 144 F.4th at 131 (defendants moved to dismiss all claims against them "without any mention of the possible availability of arbitration" or "otherwise alert[ing] the District Court—or Plaintiffs—that they planned to seek such relief"); *McSweeney v. Cohen*, No. 24-CV-1503, 2026 WL 658371, at *3 (S.D.N.Y. Mar. 9, 2026) (defendant filed a motion to dismiss without mentioning arbitration until after the Court had decided the motion).

## CONCLUSION

The Defendants' motion to compel arbitration is granted. Defendants and Plaintiffs Gaskey, Kelly, Nilsen, Reese, M. Schneider, and T. Schneider are directed to proceed in arbitration, and the case is stayed as to these Plaintiffs. *See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023) ("[The FAA] requires federal courts, upon application of a party to the contract, to stay adjudication of claims covered by an enforceable arbitration agreement until such arbitration has been had.").

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: August 25, 2026
Central Islip, New York