FILED
CLERK

**8/27/2026**

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
JOSEPH KELLY, *et. al.*,

*Plaintiffs*,

-against-

BOWLERO CORP. *et al.*,

*Defendants*.
--------------------------------------------------------------X

**ORDER**

2:24-cv-04738 (SJB) (JMW)

**WICKS,** Magistrate Judge:

This is an action alleging employment discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 623. (ECF No. 1.) Presently before the Court is a motion to extend discovery brought by Plaintiffs Tom Tananse and Andrew Weimer ("Plaintiffs"). (ECF No. 99.) For the reasons stated below, the motion is **GRANTED** in part.

## BACKGROUND

Discovery in this action was stayed pending resolution of Defendants' motion to dismiss, which Judge Bulsara granted in part on November 10, 2025, dismissing sixty-eight of the original seventy-six plaintiffs. (ECF No. 66.) The sixty-eight who were dismissed were dismissed solely because their claims were time-barred; Judge Bulsara's opinion did not reach the merits of their claims. (*See id.* at 7–15.) With respect to the remaining eight, Judge Bulsara found that they had adequately alleged facts giving rise to a "minimal inference of but-for causality between" the plaintiffs' ages and their termination. (*Id.* at 16 (quoting *Marcus v.*

*Leviton Mfg. Co., Inc.*, 661 Fed. App'x 29, 32 (2d Cir. 2016).) For example, Plaintiff Weimer had an unblemished performance record for twenty-five years, until Defendants terminated him in 2016 ostensibly for infractions in 2014—even though he also received a favorable performance review in 2015, *after* those incidents. (*Id.* at 20–21 (citing allegations in the Second Amended Complaint).) And Plaintiff Tanase had 22 years of experience in the bowling industry, until Defendants subjected him to scrutiny, frequent criticism, and unnecessary correction of his work, eventually replacing him with someone much younger. (*Id.* at 27–28 (citing allegations in the Second Amended Complaint).)

On November 24, 2025 this Court entered a discovery schedule, pursuant to which the parties were to complete fact discovery by June 1, 2026, with the close of all discovery including expert discovery set for September 4, 2026. (Electronic Minute Order dated November 24, 2025.) On February 23, 2026, the Court stayed discovery with respect to six of the remaining eight plaintiffs, in anticipation of Defendants' motion to compel arbitration. (ECF No. 94.)[1]

On March 18, 2026, Plaintiffs' counsel's daughter fell extremely ill, causing counsel to be in and out of the hospital for weeks. (ECF No. 99.)

On April 19, 2026, Plaintiffs served their first discovery requests on Defendants. (ECF No. 101 at 2.) Defendants produced documents six weeks later on June 1, 2026—the last day of discovery. (ECF No. 99 at 2.) Plaintiffs concede that this delay was not Defendants' fault. (*Id.*)

On July 22, 2026, six weeks after the discovery deadline had elapsed, Plaintiffs filed this motion to extend the fact discovery deadline to September 30, 2026 and the close of all discovery to December 30, 2026. (*Id.* at 3.) Plaintiffs contend that additional time is needed not only because counsel's daughter was in the hospital, but also due to Defendants' "inadequate and

[1] Judge Bulsara granted Defendants' motion to compel arbitration on August 25, 2026. (ECF No. 105.)

evasive responses to Plaintiffs' interrogatories and admission requests[.]" (*Id.* at 2.) In particular, it appears that Defendants refused to produce documents pertaining to the claims of the dismissed plaintiffs, whereas Plaintiffs argue that discovery into *all* plaintiffs—present and former—is necessary in order to demonstrate that Defendants' discrimination against the remaining Plaintiffs was not isolated but rather was part of a nationwide, systemic practice. (*Id.*)

Defendants opposed the requested extension, arguing that even if counsel's delay *after* March 18, 2026 was understandable, there was no reason they did not serve discovery requests in the five months *before* then since Judge Bulsara ruled on the motion to dismiss last November. (ECF No. 101 at 2.) Furthermore, Defendants maintain that the discovery sought is irrelevant. (*Id.* at 4.)

The Court held oral argument on August 6, 2026. It quickly became apparent that the crux of the dispute is relevance. Plaintiffs maintain that they are entitled to documents and depositions of apex high-level Bowlero executives and even executives of private equity firms that invested in Bowlero (even though those firms are not named in the Second Amended Complaint; *see* ECF No. 47), because they were the ones who launched the initiative to systematically push out older employees as part of a corporate-wide rebranding. Limiting discovery to the managers who directly interacted with Tanase and Weimer would miss the point, Plaintiffs argued, because those managers were not necessarily made privy to the discriminatory motives behind the new policies they were told to implement.

The Court ordered supplemental briefing, instructing Plaintiffs to "detail[] each additional witness they seek to depose and why." (Electronic Minute Order for a Motion Hearing/Oral Argument held on August 6, 2026.) Plaintiffs filed their supplemental brief on

August 14, 2026 (ECF No. 103), and Defendants filed their reply on August 21, 2026 (ECF No. 104).[2]

## DISCUSSION

### I. "Good Cause" Under Rule 16(b)

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "It is the movant's burden to establish good cause." *Kontarines v. Mortgage Electronic Registration Systems, Inc.*, No. 15-CV-2206 (ARR), 2016 WL 3821310, at *3 (E.D.N.Y. July 12, 2016) (citations omitted). "Good cause requires that the delay stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake or comply with the Scheduling Order." *Jipeng Du v. Wan Sang Chow*, No. 18-CV-1692 (ADS) (AKT), 2019 WL 3767536, at *3 (E.D.N.Y. Aug. 9, 2019) (internal quotation and citations omitted). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have reasonably been met." *Leonard v. Abbott Laboratories, Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *3 (E.D.N.Y. Mar. 5, 2012) (internal quotations and citations omitted).

A court may consider other factors, such as prejudice to non-moving parties, but "diligence remains the central focus of the court's inquiry." *Desir v. Austin*, No. 13-CV-0912 (DLI) (VMS), 2015 WL 4546625, at *2 (E.D.N.Y. July 28, 2015) (citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (movant must demonstrate good cause by showing that she exercised diligence). "The following factors are not compatible with a finding of diligence and do not provide a basis for relief: carelessness, an attorney's

[2] Plaintiffs' supplemental brief is more than twice the length permitted under this Court's individual rules. *See* Individual Practice Rules of Magistrate Judge James M. Wicks § 3.A (limiting discovery motions to 1,500 words). The Court overlooks the infraction this time, but Plaintiffs are forewarned that future lapses in compliance could lead to rejection of the defiant document.

otherwise busy schedule, or a change in litigation strategy." *Furry Puppet Studio Inc. v. Fall Out Boy,* No. 19-CV-2345 (LJL), 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020) (citation omitted).

Because the "good cause" inquiry turns primarily on diligence, it is hard to conclude that Plaintiffs have met their burden. Plaintiffs could have served document requests since December. The fact that counsel's daughter was hospitalized in March does not explain why Plaintiffs sat on their hands before then. Courts have denied extensions under similar circumstances. *See Sec. & Exch. Comm'n v. Thurlow*, No. 21-CV-7700 (VSB) (SN), 2026 WL 878938, at *4 (S.D.N.Y. Mar. 31, 2026) (denying application for extension following counsel's wife's illness and death, because counsel had had ample time to conduct discovery earlier before his wife took ill); *Cardew v. New York State Dep't of Corr. & Cmty. Supervision*, 743 F. Supp. 3d 523, 528 (W.D.N.Y. 2024) (similar).

That said, the Court notes that Plaintiff's delay—essentially just three months, from December through February—is not altogether egregious, which distinguishes this case from the cases cited above. *Cf. Thurlow*, 2026 WL 878938, at *3 (denying extension after discovery "stretched for sixteen months"); *Cardew*, 743 F. Supp. 3d at 528 (denying extension where party could have served discovery requests "years ago"). Importantly, there have been no discovery extensions to date.

Furthermore, although "good cause" under Rule 16 is mostly about diligence, courts have noted that other factors can be relevant too, including, *inter alia*, "the nature of the relief sought." *Salib v. P & O Ports N. Am., Inc.*, No. CV20055313NGMDG, 2007 WL 9718945, at *1 (E.D.N.Y. Apr. 13, 2007) (quoting *Bernstein v. Bernstein*, No. CV 91-0785 (RR)(MDG), 1993 WL 466402, *1 (E.D.N.Y. Aug. 13, 1993)). Here, Plaintiffs assert that they need additional time

to obtain discovery from upper management into the reasons behind Plaintiffs' terminations. The question, then, is whether Plaintiffs have made a sufficient showing that the discovery they seek is likely to yield evidence that is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *see also Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) ("When a party merely speculates as to what evidence would be produced upon further discovery, a court is correct in denying the party's request to allow more discovery.").

To that end, Plaintiffs filed a supplemental brief detailing each additional individual they seek to subpoena and depose. (ECF No. 103.) Plaintiffs describe a complex corporate arrangement dating back to 2012, involving mergers, acquisitions, and capital infusions from two private equity firms. (*See id.*) None of these allegations is mentioned in the Second Amended Complaint (ECF No. 47), nor do Plaintiffs explain how they have come to learn these "facts." Moreover, the allegations in Plaintiffs' supplemental briefing are overwhelmingly conclusory and speculative. The following sample is representative:

> Michael Angelakis – Lead Director and Representative of Atairos Capital [one of the private equity firms the purportedly controlled Defendants]:
>
> Mr. Angelakis managed Atairos' acquisition of Cerberus' controlling stake in Defendant. Under his board oversight, Atairos permitted the discriminatory termination policy to continue despite explicit knowledge of 76 formal EEOC Charges of Discrimination . . . . Because these regulatory liabilities and findings were actively detailed in the company's SEC filings, Mr. Angelakis possesses direct knowledge of the underlying corporate strategy.

(ECF No. 103 at 4.) Even assuming that Angelakis may have known about the EEOC charges publicized in Bowlero's SEC filings, it does not follow that he "permitted the discriminatory termination policy to continue[.]" (*Id.*) Plaintiffs do not explain what authority or involvement Angelakis had over Bowlero's personnel decisions.

As another example, Plaintiffs assert that Angelakis "actively approved a corporate legal strategy designed to delay adjudication, create procedural roadblocks, and frustrate Plaintiffs and their counsel." (*Id.*) These are conclusions, not facts.

The Court therefore concludes that ten of the thirteen individuals identified in Plaintiffs' letter are unlikely to yield relevant evidence, and pursuing a fishing expedition on these ten in the hopes of gleaning relevant information is simply not sufficient, nor is it proportional to the needs of the case.

With respect to three individuals on Plaintiffs' list, however, the Court is persuaded that additional discovery is warranted. First is Tom Shannon, CEO of Bowlero. (*See* ECF No. 103 at 5.) The Second Amended Complaint is replete with allegations about Shannon's involvement in Bowlero's hiring decisions. Plaintiff Tanase "witnessed first-hand how closely involved Shannon was in personnel decisions[.]" (ECF No. 47 at ¶ 716.e.v.) "Notwithstanding that Defendants employed thousands of workers, . . . CEO Tom Shannon would insist on conducting Skype interviews himself[.]" (*Id.* at ¶ 108.) These interviews would typically last only a minute or two, leading Plaintiffs to conclude that the interviews were merely a pretext for Shannon to "conduct a beauty contest and see if a person's age and appearance met the new hip, youthful image he desired for the Bowlero bowling centers." (*Id.* at ¶ 109.) Regardless of whether that conclusion is true, Shannon certainly took a hands-on approach to hiring. Clearly, then, he is relevant to Plaintiffs' case, which is about Defendants' personnel decisions. (*See generally* ECF No. 66 at 16–18 (laying out legal standard for age discrimination, including that, at summary judgment, Plaintiffs will need to address whether Defendants' stated reasons for terminating them were mere pretexts).) Furthermore, the Second Amended Complaint alleges direct

interaction between Tanase and Shannon on at least one occasion. (*See* ECF No. 47 at ¶ 716.e.vii.)

Next is Brett Parker, another high-ranking executive of Bowlero.[3] The Second Amended Complaint alleges that Tanase met with Parker in April 2023 to discuss his concerns that he was being "managed-out," and that Parker threatened Tanase against complaining to the EEOC. (*Id.* at ¶¶ 716.j, o.)

Third is Lev Ekster. Though Ekster is not mentioned in the Second Amended Complaint, Plaintiffs state in their supplemental brief that he was involved in "managing out" Tanase. (ECF No. 103 at 6.) Plaintiffs further state that Ekster maintained that Tanase "voluntarily resigned." (*Id.*)

Shannon, Parker, and Ekster are directly relevant to Plaintiffs' claims. To the extent Defendants have not yet produced documents, answered interrogatories, or answered requests for admission concerning these three individuals, they must do so. Plaintiffs are also entitled to issue subpoenas to obtain documents and depositions from these three individuals, if need be. However, Plaintiffs are forewarned that discovery must be narrowly tailored. Plaintiffs are entitled to discovery only insofar as relevant to Tanase and Weimer. (For the avoidance of doubt, the fact that a particular request or line of questioning may *also* be relevant to the dismissed plaintiffs is not disqualifying. If, however, it is *only* relevant to the dismissed plaintiffs, then it is off-limits.) Even as to Tanase and Weimer, Plaintiffs may only seek discovery that is grounded in concrete allegations.

---

[3] Plaintiffs' supplemental discovery brief identifies Parker as "President" (ECF No. 103 at 5), but the Second Amended Complaint identifies him as "Vice President" (ECF No. 47 at ¶ 87).

## II. "Excusable Neglect" Under Rule 6(b)

Because Plaintiffs' request comes after the deadline already passed, they must clear an additional hurdle—Rule 6's "excusable neglect" requirement. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). The Supreme Court has explained that the term "excusable neglect" embodies something of a dichotomy. On the one hand, a retroactive extension may be granted only if the party's failure to act was "excusable." But because the Rule uses the word "neglect"—which connotes negligence, inattentiveness or carelessness—the movant need not show that its failure was due to an act of God. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388–92 (1993). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392 (internal citation omitted).

In determining whether neglect is excusable for purposes of Rule 6, the Second Circuit has instructed courts to take into account the following: "'[1] [t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Bolin v. Harvard Prot. Servs., Inc.*, 277 F. App'x 102, 105 (2d Cir. 2008) (quoting *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004)) (alterations in original).

The first factor, prejudice to the opposing party, does not militate against extending discovery. At oral argument the Court inquired of defense counsel what prejudice they would

suffer from the proposed extension. Counsel stated that producing discovery concerning plaintiffs whose claims were dismissed would be prejudicial in the sense that it would be a waste of money; the whole reason Defendants moved to have those plaintiffs' claims dismissed was so that they would *not* be burdened with such discovery. Defendants misapprehend what Plaintiffs seek. Plaintiffs are not seeking discovery into the circumstances of each dismissed plaintiff. They are seeking to understand senior executives' motivation in firing *them*—Tanase and Weimer. The fact that that motivation might be common to other plaintiffs as well does not make it disproportionate; it is still directly relevant to Tanase and Weimer's claims. Hence, Defendants will not be prejudiced by this extension.

The next factor, length of delay and its impact on judicial proceedings, likewise favors Plaintiffs. Discovery in this action only began on November 24, 2025, when this Court entered a scheduling order. As noted above, there have been no extensions thus far. No party has moved for summary judgment, and trial has not been scheduled. Extending discovery by a few months will not impair judicial proceedings.

The third factor is the reason for the delay, including whether it was in the reasonable control of the movant. Plaintiffs certainly could have been more diligent in serving discovery requests before counsel's daughter took ill in March, and after she took ill counsel could have sought an extension before the June 1, 2026 deadline. Courts have denied retroactive extensions under similar circumstances. *See Johannes v. Lasley*, No. 17-CV-3899 (CBA)(AYS), 2019 WL 1958310, at *1 (E.D.N.Y. May 2, 2019) (applying Rule 6(b)'s excusable neglect standard and denying retroactive extension where counsel could have requested extension before expiration of the deadline); *Beckles v. The City of New York*, No. 08 CIV.3687 JCF, 2010 WL 1841714, at *2 (S.D.N.Y. May 10, 2010) (same). On balance, however, denying the extension on this basis

alone would be draconian given counsel's sympathetic family situation. As explained above, excusable neglect "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. Although Plaintiffs have exhibited some neglect, the Court concludes that their neglect is excusable in this particular case.

Finally, the fourth factor is whether the movant has acted in good faith. There is no dispute that this factor is met.

Accordingly, the Court finds that Plaintiffs' delay is excusable and grants the extension.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to extend discovery (ECF No. 99) is GRANTED in part. There will be no further extensions granted, absent extraordinary circumstances. The amended discovery deadlines are extended as follows:

| Discovery Category | Prior Deadline | New Deadline |
| --- | --- | --- |
| Fact discovery | June 1, 2026 | **October 12, 2026** |
| Case-in-chief experts | July 1, 2026 | **October 30, 2026** |
| Rebuttal experts | August 3, 2026 | **November 30, 2026** |
| All discovery, including expert discovery | September 4, 2026 | **December 30, 2026** |

Dated: Central Islip, New York
August 27, 2026

**S O O R D E R E D:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge