FILED
CLERK
2:44 pm, Oct 07, 2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

JO ALLOWAY, *et al.*,

*Plaintiffs*,

-against-

BOWLERO CORP., *et al.*,

*Defendants*.

---------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

2:24-cv-04738 (SJB) (JMW)

**WICKS**, Magistrate Judge:

This is an action alleging employment discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 623. (ECF No. 1.) Presently before the Court is a Motion to Compel Production of Privileged Documents brought by Defendants Bowlero Corp., AMF Bowling Centers, Inc., and Bowlmor AMF Corp. (together, the "Defendants"). (ECF No. 107.) Defendants argue that the allegations in the Complaint are rooted in attorney work-product and conversations with counsel, and therefore any purported privilege over those documents and communications is waived based upon "at issue" waiver. For the following reasons, the Defendants' Motion to Compel Production of Privileged Documents (ECF No. 107) between Thomas Tanase and Andrew Weimer (together, the "Plaintiffs") and counsel is **DENIED**.

## BACKGROUND

Plaintiffs allege violation of the Age Discrimination in Employment Act ("ADEA") in which Defendants ultimately terminated Plaintiffs because of their age. (ECF No. 47 ¶¶ 716–

717, 778–779.) These claims arose from an alleged company-wide scheme by Defendants to staff their bowling centers with younger workers to attract a younger customer base. (*Id.* at 2.)

Plaintiff Tanase alleges his discharge on May 16, 2023, at the age of 61, was specifically tied to this employee overhaul. (*Id.* at ¶¶ 716–717.) In his role, Mr. Tanase served as Chief Information Officer ("CIO") and allegedly received annual positive performance reviews and was never subject to any disciplinary incident or write-up. (*Id.* at ¶ 716(e)(iii), (g).) In the events leading to Mr. Tanase's termination, he felt he was "managed out," whereby Defendants installed a younger employee who almost immediately undermined his role; after Mr. Tanase's termination, a younger male employee was brought into his role. (*Id.* at ¶ 716(h)–(i), (m).) Mr. Tanase further alleges that he had firsthand knowledge of management's practice of removing older employees to fit the company's desired image. (*Id.* at ¶ 716(e)(i)–(ii), (v).)

Plaintiff Weimer similarly alleges that he was unlawfully discharged on or about February 26, 2016, at the age of 56. (*Id.* at ¶ 778(g).) Mr. Weimer served as general manager of Defendants' Utica, New York, facility and further alleges positive annual performance reviews, all while never being subject to a disciplinary incident or write-up. (*Id.* at ¶ 778(a), (c).) After Mr. Weimer's termination, Defendants hired employees under the age of forty for the Utica site into positions where they performed the same or similar duties as those that Mr. Weimer had been performing. (*Id.* at ¶ 778(h).)

Plaintiffs' Second Amended Complaint ("SAC") asserts that Plaintiffs swiftly filed their charges of discrimination ("CODs") with the United States Equal Employment Opportunity Commission ("EEOC") when they "learned from Plaintiff's counsel of the real facts that they were dismissed because of their age." (*Id.* at 2; *id.* ¶ 100.) "Until each Plaintiff met with Plaintiffs' counsel and reviewed the ADEA Analysis," Plaintiffs believed Defendants' stated

explanations for their terminations, including performance problems, policy violations, and position eliminations. (*Id.* at ¶ 123.) Plaintiffs previously did not know those explanations concealed a nationwide pattern of age discrimination. (*Id.* at ¶¶ 100, 123.)

The SAC alleges that counsel knew Weimer and undertook the ADEA Analysis; as word spread, prospective plaintiffs contacted Dowe Partners, which evaluated their claims and agreed to represent them. (*Id.* at ¶¶ 151, 154.) According to the SAC, Weimer filed his COD on December 12, 2016, and Tanase filed his COD on August 10, 2023. (*Id.* at ¶¶ 719, 781.) Plaintiffs subsequently commenced this action on July 8, 2024. (ECF No. 1.)

At the heart of the present discovery dispute is Plaintiffs' "ADEA Analysis," an annotated spreadsheet of management rosters for November 2013, January 2015, and January 2016 showing terminations by state resulting from an investigation by Plaintiffs' counsel. (ECF Nos. 47 at ¶¶ 149, 154; 47-3.) The Analysis is attached to the SAC as Exhibit 3. (ECF No. 47 at ¶ 106; ECF No. 47-3.) Plaintiffs allege that the Analysis revealed that "87% of managers were terminated shortly after the Defendants acquired AMF and Brunswick with most replaced by persons under 40 years of age." (ECF No. 47 at ¶ 106.) Plaintiffs' counsel subsequently shared this Analysis with the EEOC when filing the first COD; the SAC states that the group's charge filings began in November 2016. (ECF No. 47 at ¶¶ 119-120.) The assertions and allegations surrounding the Analysis provide background for Defendants' present request for communications regarding Plaintiffs' discovery and understanding of the alleged discrimination. (ECF No. 107 at 2.)

Defendants sought documents and communications concerning how Plaintiffs discovered the alleged age discrimination. Request for Production No. 4 stated:

> All Documents and Communications between Plaintiffs Tanase/Weimer and Plaintiffs' Counsel Concerning any alleged discovery that Plaintiffs

> Tanase/Weimer were allegedly terminated or constructively discharged because of their age, including but not limited to any Communications in which Plaintiffs' counsel informed Plaintiffs Tanase/Weimer of "the [alleged] real facts" that they were dismissed because of their age, as alleged in Paragraph 100 of the Complaint.

(ECF No. 107-1 at 7.)

Plaintiffs objected to the request on grounds of, *inter alia,* attorney-client privilege and work product protection. Additionally, Plaintiffs asserted that the request for production was overly broad, unduly burdensome, disproportionate to the needs of the case, and sought information already within Defendants' possession, custody, or control. Plaintiffs subsequently declined any further document production, and the parties could not resolve the dispute during a June 10, 2026 conference. (ECF No. 107 at 2.)

In the present motion, Defendants seek to compel production under Federal Rule of Civil Procedure 37(a), asserting that Plaintiffs have voluntarily waived the asserted protections stemming from disclosures regarding their counsel's role in discovering the alleged age discrimination. Specifically, Defendants argue that "[b]y pleading the centrality of their counsel's advice to their decision to bring suit, Plaintiffs voluntarily waived privilege over those communications with counsel." (ECF No. 107 at 2.) Applying the framework in Federal Rule of Evidence 502(a), Defendants argue that, by intentionally disclosing the substance of counsel's advice in the Second Amended Complaint, Plaintiffs waived privilege over undisclosed communications concerning the alleged age-related terminations. Defendants maintain that these communications concern the same subject matter and ought, in fairness, to be considered together. (ECF No. 107 at 3-5.) Defendants further argue an implied, or "at-issue", waiver. Defendants allege that Plaintiffs placed their communications with their counsel at issue by identifying counsel's advice as the basis for their legitimate claims and ultimate decision to bring suit.

**ANALYSIS**

> The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co.* v. *United States,* 449 U. S. 383, 389 (1981); *Hunt* v. *Blackburn,* 128 U. S. 464, 470 (1888). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn, supra,* at 389.[1]

The attorney-client privilege is meant to encourage frank, candid discussion between counsel and client. *See In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998)). When faced with issues of privileged matters, therefore, Courts should tread carefully and with due caution.

"[C]ourts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Cuomo v. Off. of New York State Att'y Gen.*, 754 F. Supp. 3d 334, 358 (E.D.N.Y. 2024) (quoting *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017)). "The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which protection is claimed, all must be established in order for the privilege to attach." *In re Enron Corp.*, 349 B.R. 115, 126 (Bankr. S.D.N.Y. 2006) (citation omitted).

> The work-product doctrine and the attorney-client privilege are often asserted to protect the same material from discovery; however, there is a substantial difference between the two. The attorney-client privilege exists to protect confidential communications between a lawyer and the lawyer's client. It assures the client that any statement the client makes is held in the strictest of confidence. As a result, the client holds the privilege and may assert or waive it.

*Distinction between work-product doctrine and attorney-client privilege*, HANDBK. FED. CIV. DISC. & DISCLOSURE § 1:49 (4th ed.).

[1] *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998).

Federal Rule of Evidence 502(a) provides:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

Under Rule 502(a), a voluntary disclosure that waives protection "generally results in a waiver only of the communication or information disclosed." Fed. R. Evid. 502 advisory committee's note to subdivision (a). Rule 502 "does not purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502 advisory committee's note. Under at-issue waiver principles, "a party must rely on privileged advice" to support a claim or defense. *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (emphasis omitted). Mere relevance is insufficient because "privileged information may be in some sense relevant in any lawsuit." *Id.* at 229 (emphasis omitted). These principles frame Defendants' contention that Plaintiffs disclosed and relied on counsel's advice. (ECF No. 107 at 2–4.)

"The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (discussing the attorney-client privilege). The privilege protects confidential communications involving "the giving of professional advice" and "the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. Counsel's preparation of an analysis therefore does not, by itself, establish either privilege or waiver. *See Upjohn*, 449 U.S. at 390, 394–95; Fed. R. Evid. 502(a).

Even an intentional waiver does not automatically extend to every communication concerning the same subject. Fed. R. Evid. 502(a)(2)–(3). Rule 502(a)'s fairness requirement reserves subject-matter waiver for circumstances in which additional disclosure is necessary to correct "a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note. "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proceedings,* 219 F.3d 175, 183 (2d Cir. 2000); *see, e.g.*, *Swift Spindrift, Ltd. v. Alvada Ins., Inc.*, No. 09 Civ. 9342 (AJN) (FM), 2013 WL 3815970, at *4–6 (S.D.N.Y. July 24, 2013) (finding that disclosure of attorney-client emails did not warrant disclosure of other privileged documents related to the same subject matter, because the partial disclosure did not afford any "tactical advantage" nor was it "selective or misleading in any way").

Here, in support of their argument that disclosure is warranted, Defendants principally point to Plaintiffs' allegation that they learned from counsel the "real facts" that they were dismissed because of their age, together with their disclosure of counsel's ADEA Analysis. (ECF No. 47 ¶¶ 100, 123; ECF No. 47-3.) They characterize those allegations as revealing the substance of counsel's advice and establishing that the advice supplied the factual basis for Plaintiffs' claims. (ECF No. 107 at 2–4.) Plaintiffs respond that counsel conveyed independently verifiable facts reflected in the disclosed Analysis and underlying records, rather than confidential legal advice offered to prove discrimination. (ECF No. 108 at 1–4.)

The relevant question is what Plaintiffs disclosed about counsel's communications and whether they invoked privileged advice to support their claims. *See* Fed. R. Evid. 502(a); *In re Cnty. of Erie*, 546 F.3d at 229. For instance, in *North American Foreign Trading*, an insurer

waived privilege by revealing counsel's recommendation to deny coverage and explaining that "counsel's advice was the only factor that informed Margolies' recommendation." *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, No. 05-CV-5827 (SAS) (KNF), 2006 WL 2959078, at *2 (S.D.N.Y. Oct. 16, 2006). Likewise, *Skyline Steel* reasoned that it cannot "be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny [Skyline] access to the advice given by counsel where that advice ... played a substantial and significant role in formulating [its] actions." *Skyline Steel, LLC v. PilePro, LLC*, No. 13-CV-8171 (JMF), 2015 WL 4480725, at *2–3 (S.D.N.Y. July 22, 2015) (internal citation omitted).

Those cases involved affirmative use of identifiable legal advice to support the privilege holder's position. *See N. Am. Foreign Trading*, 2006 WL 2959078, at *2; *Skyline Steel*, 2015 WL 4480725, at *2–3. Here, Defendants equate counsel's supplying the alleged facts with Plaintiffs' reliance on counsel's privileged assessment. (ECF No. 107 at 3–4.) However, while it is true that counsel's investigation was the means through which Plaintiffs learned of the alleged discrimination, Plaintiffs do not offer an undisclosed legal assessment as proof of their claims. (ECF No. 47 ¶¶ 100, 123; ECF No. 108 at 1–3.) On the submitted showing, counsel's role in investigating and communicating the alleged facts does not establish the affirmative reliance required by *Erie*. *In re Cnty. of Erie*, 546 F.3d at 229.

Regardless, even if the SAC did affirmatively rely on the opinion of counsel, Defendants must still satisfy Rule 502(a)'s remaining requirements. *See* Fed. R. Evid. 502(a)(2)–(3). The filing of the Analysis in this proceeding and its submission to the EEOC occurred in settings covered by the Rule. (ECF No. 47 ¶ 120; ECF No. 47-3.) Those circumstances do not

independently establish a waiver extending to undisclosed communications. *See* Fed. R. Evid. 502(a).

RFP No. 4 concerns communications about Plaintiffs' discovery that their terminations were allegedly age-based. (ECF No. 107-1 at 7.) That limitation creates substantial subject-matter that overlaps with the cited disclosures. (ECF No. 107-1 at 7; ECF No. 47 ¶¶ 100, 123.) However, overlap alone does not resolve whether the requested protected communications should, in fairness, be considered together with those disclosures. Even assuming an initial waiver, the question is whether fairness requires extending it to the undisclosed communications Defendants seek. *See* Fed. R. Evid. 502(a)(3).

Defendants argue that their lack of access to the communications prevents them from testing Plaintiffs' assertions and identifying information that could undermine their claims. (ECF No. 107 at 4–5.) Plaintiffs, however, represent that they disclosed the complete Analysis and identify it and the underlying records as the factual material supporting their allegations. (ECF No. 108 at 1–4.) The fact that Plaintiffs disclosed the entire Analysis does not end the inquiry; further production could still be necessary if the Analysis selectively presented protected source material. *See Felder v. Warner Bros. Discovery, Inc.*, No. 23 Civ. 8487 (AT) (GS), 2025 WL 1718098, at *18-19 (S.D.N.Y. June 20, 2025) (compelling production of underlying factual interview materials where an employer's position statement to the EEOC included "numerous disclosures" of purportedly privileged statements). Here, however, Defendants have not demonstrated a comparable selective presentation requiring access to the additional protected communications sought. (ECF No. 107 at 4–5; ECF No. 108 at 3–4.) Their general desire to scrutinize counsel's theory does not supply that showing. Defendants have failed to explain how Plaintiffs' purported disclosures were tactically incomplete or misleading so as to put Defendants

at an unfair disadvantage without seeing the underlying privileged communications. *See* Fed. R. Evid. 502 advisory committee's note to subdivision (a) (explaining that subject-matter waiver is "reserved for those unusual situations" where needed "to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary").

To summarize, Defendants have not established affirmative reliance on privileged advice or a selective disclosure warranting the requested extension of waiver to undisclosed material. *See Erie*, 546 F.3d at 229. Even assuming a limited initial waiver, shared subject matter and the desire to test Plaintiffs' allegations do not satisfy Rule 502(a)'s independent fairness requirement. *See* Fed. R. Evid. 502(a)(2)–(3); Fed. R. Evid. 502 advisory committee's note to subdivision (a).

## CONCLUSION

Defendants' Motion to Compel Production of Privileged Documents based on Plaintiffs' voluntary waiver of privileged information (ECF No. 107) is **DENIED**.

Dated: Central Islip, New York
October 7, 2026

**S O O R D E R E D:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge