FILED
CLERK
10/30/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

JOSEPH KELLY, *et. al.*,

*Plaintiffs*,

-against-

BOWLERO CORP. *et al.*,

*Defendants*.

--------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:24-cv-04738 (SJB) (JMW)

**WICKS,** Magistrate Judge:

The parties in this age-discrimination case are back before the Court once again at loggerheads over issues the Court disposed of two months ago, engendering *déjà vu*. Plaintiffs Tom Tananse and Andrew Weimer ("Plaintiffs") move to compel Defendants to supplement their purportedly deficient document production. (ECF No. 110.) That frame has ended and the pins got swept and reset long ago. Defendants in turn move for a protective order declaring Plaintiffs' recent document requests and deposition notices untimely and unenforceable. (ECF No. 111.) For the following reasons, Plaintiffs' motion is **DENIED** and Defendants' motion is **GRANTED**.

## BACKGROUND

The Court assumes familiarity with its previous order at ECF No. 106, and recounts here a truncated procedural history.

On November 24, 2025 this Court entered a discovery schedule pursuant to which the parties were to complete fact discovery by June 1, 2026. (Electronic Minute Order dated November 24, 2025.) Plaintiffs waited until April 19, 2026 to serve their first discovery requests on Defendants. (ECF No. 101 at 2.) Defendants produced responsive documents on June 1, 2026. (ECF No. 99 at 2.)

On July 22, 2026—six weeks after the fact discovery deadline had elapsed—Plaintiffs moved to extend discovery, claiming that Defendants' responses to their requests were "inadequate and evasive[.]" (*Id.* at 2–3.) Following oral argument and supplemental briefing, the Court was "persuaded that additional discovery is warranted." (ECF No. 106 at 7.) Accordingly, on August 27, 2026, the Court extended the deadline for fact discovery to October 12, 2026. The Court instructed as follows:

> To the extent Defendants have not yet produced documents, answered interrogatories, or answered requests for admission concerning [Tom Shannon, Brett Parker, and Lev Ekster], they must do so. Plaintiffs are also entitled to issue subpoenas to obtain documents and depositions from these three individuals, if need be.
>
> However, Plaintiffs are forewarned that discovery must be narrowly tailored. Plaintiffs are entitled to discovery only insofar as relevant to Tanase and Weimer. . . . Even as to Tanase and Weimer, Plaintiffs may only seek discovery that is grounded in concrete allegations.

(*Id.* at 8.) The Court cautioned that there would be "no further extensions granted, absent extraordinary circumstances." (*Id.* at 11.)

On October 14, 2026—more than six weeks after the Court extended discovery, and two days after the extended fact-discovery deadline—Plaintiffs filed the present motion to compel. (ECF No. 110.) That same day, Defendants filed their motion for a protective order. (ECF No. 111.) The Court considers each in turn.

**PLAINTIFFS' MOTION TO COMPEL**

"Motions to compel are left to the court's sound discretion." *Bartlett v. DeJoy*, No. 22-CV-03398 (GRB)(JMW), 2023 WL 3306963, at *1 (E.D.N.Y. May 7, 2023) (citation omitted). "The party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430 (PLK), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994). To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Plaintiffs' motion is conclusory and, frankly, unclear. Au fond, their core complaint is that "Defendants have produced absolutely nothing of substance regarding executive-level directives." (ECF No. 110 at 1.) Documents "of substance" apparently means documents that confirm Plaintiffs' theory of the case. Plaintiffs consider it an "insult" for Defendants to assert that they have no internal documents discussing their plans "to 'manage out,' micromanage, or intentionally purge older managers" or concerning the "new personnel restructuring to younger people[.]" (*Id.* at 1–2.) Defendants counter that "the record does not support Plaintiffs' theories because their theories are wrong." (ECF No. 112 at 3.)

Plaintiffs cite no authority for the proposition that a motion to compel can be granted based on the movant's mere suspicion that there "must be" something more or better out there. Plaintiffs do not deny that Defendants produced 9,000 pages of documents back in June. (*See*

ECF Nos. 111 at 3, 113 at 2.) Moreover, they do not appear to contend that the documents are non-responsive or irrelevant.[1]

On October 29, 2026, Plaintiffs filed supplemental briefing advising the Court of a recent press release by Defendant Bowlmor which, according to Plaintiffs, "directly contradicts Defendants' repeated representations to this Court regarding the availability of responsive corporate documents." (ECF No. 114.) The press release, dated October 27, 2026, describes the history of Defendant Tom Shannon's "rebrand" of Bowlmor:

> In 1997, Thomas Shannon acquired Bowlmor and reimagined what a bowling center could be, adding upscale food and cocktails, music, lighting, and lounge-style lanes. The concept invented bowling as entertainment, turning a classic pastime into a pop culture hotspot complete with A-listers such as Sarah Jessica Parker, Jimmy Fallon, and Al Pacino.
> . . .
> "We set out to prove that bowling could be the best day or night out in the city . . . ," said Thomas Shannon[.]

(ECF No. 114-1.) Whether this press release "directly contradicts" Defendants' representations about responsive documents depends on what exactly Defendants said. If, as Plaintiffs appear to suggest, Defendants claimed, "they possess no documents, plans, or formal strategies regarding their national initiative to convert traditional league bowling centers into youth-oriented, club-like entertainment venues" (ECF No. 114 at 1), then this press release is indeed a smoking gun. It is inconceivable that Defendants "set out" nearly thirty years ago to "reimagine[]" bowling—catalyzing the company's growth to "more than 360 locations" in an ongoing process that culminated *this week* with the conversion of Bowlmor Cupertino—and yet they have no documents at all about that entire process.

[1] Neither party describes the process by which the June documents were selected. It is not clear, for example, whether the parties went through the traditional process of negotiating search terms and then iteratively testing and refining those terms by means of "hit counts."

But if Defendants merely deny that they have documents showing a scheme to manage out older employees, then this press release proves nothing. Contrary to Plaintiffs' reading, the press release does not say anything about "an environment intentionally designed to systematically phase out older employees in favor of a younger demographic[.]" (ECF No. 114 at 2.) Even the most broad and liberal reading of the press release makes no connection whatsoever to the suspected age-related phase out.

The trouble is, the Court is attempting to navigate this dispute blind. Neither party submitted documentation detailing the discovery process. All the Court knows is that Defendants produced between 8,000 to 9,000 pages of documents in June. The Court has not seen: (1) Plaintiffs' initial discovery requests preceding the production; (2) Defendants' responses and objections thereto; (3) email correspondence memorializing any meet and confer; (4) deficiency letters, if any; (5) what ESI search terms, if any, Defendants used; or (6) hit reports, if any. Moreover, neither party describes, even at a high level, the contents of Defendants' June production.

This discovery dispute has been percolating before the Court for three months since Plaintiffs filed their initial motion to extend discovery on July 22, 2026. During all that time—which included numerous rounds of briefing as well as a hearing—the parties never submitted documentation to enable the Court to make an informed decision. The Court cannot grant a motion to compel based on vitriol, vague assertions, and self-serving conclusions based on suspicion. Because of that, Plaintiffs' motion to compel further production (ECF No. 110) is denied.

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

On August 27, 2026, the Court extended fact discovery to October 12, 2026. (ECF No. 106.) The purpose of the extension was to afford Plaintiffs an opportunity to pursue further discovery regarding Tom Shannon, Brett Parker, and Lev Ekster. (*See id.*)

Defendants did not hear from Plaintiffs until October 6, 2026, when Plaintiffs' counsel reached out to defense counsel to coordinate service of subpoenas. (*See* ECF No. 111-1.) On October 8, 2026, Plaintiffs emailed notices of intent to serve subpoenas for documents and depositions. (*See* ECF No. 111 at 2–3.) As the subpoenas were served just four days before the fact discovery deadline, the dates for compliance fell well after the deadline. (*See, e.g.*, ECF No. 111-4 at 2.)

Defendants filed this motion for a protective order on October 14, 2026, arguing that the deposition and document requests are untimely and should not be enforced.[2] (ECF No. 111.)

"Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel." *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 268 (E.D.N.Y. 2023). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by, *inter alia*, forbidding the discovery, specifying terms or limiting the scope of disclosure, or prescribing alternative methods. Fed. R. Civ. P. 26(c)(1).

"[C]ase law and statutory law require[e] that discovery demands be served in advance of the fact discovery deadline so as to provide the opposing party with sufficient time to respond to those demands prior to the expiration of that deadline." *Kashi v. STMicroelectronics, Inc.*, No. CV143774JMAAKT, 2018 WL 11491768, at *4 (E.D.N.Y. Mar. 30, 2018) (collecting cases).

---

[2] Technically, the motion before this Court concerns only Tom Shannon. Defendants intend to move to quash the subpoenas to Ekster and Parker in a different forum. (*See* ECF No. 111.)

"Failure to serve discovery requests within the time prescribed for responses is sufficient to deny those requests as untimely." *Siemens Indus., Inc. v. Great Midwest Ins. Co.*, No. 1:23-CV-05046 (JHR) (SDA), 2024 WL 3305602, at *3 n.5 (S.D.N.Y. June 4, 2024); *see also, e.g.*, *Cao v. Flushing Paris Wedding Ctr. LLC*, No. 20CV2336RPKRLM, 2021 WL 12229765, at *1 (E.D.N.Y. Nov. 15, 2021) ("[S]ince the referenced discovery demands were not served at least 30 days before the close of discovery, they were untimely."); *Bhatt v. Lalit Patel Physician P.C.*, No. 18-CV-2063-DLI-SJB, 2023 WL 2895935, at *1 (E.D.N.Y. Apr. 11, 2023) ("Because [a third-party document request] could only have been responded to after the discovery cut-off, it was *per se* late, and unenforceable.").

The Court authorized discovery regarding Shannon, Parker, and Ekster on August 27, 2026. Plaintiffs could have served notices of subpoena and begun to coordinate depositions then, but instead they sat on their hands for six weeks. By the time Plaintiffs served notices of subpoena, it was too late for Defendants to respond within the deadline. This situation is virtually identical to the situation in *Third Ave. Commons LLC v. Gobrands, Inc.*, No. 25-CV-00934 (EK) (JMW), 2026 WL 2321608 (E.D.N.Y. Aug. 11, 2026), and the holding there is dispositive here. The plaintiff there moved to reopen discovery to obtain certain documents. *Id.* at *2. This Court granted the motion on February 11, 2026, extending discovery to March 20, 2026—an extension of about five weeks. *Id.* at *2. The plaintiff waited until March 19, 2026—the day before the deadline—to serve the subpoenas. *Id.* The Court held the subpoenas unenforceable, explaining that "[w]here, as here, 'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[,]' the Court must issue a protective order limiting the discovery." *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(ii)) (second alteration in original). So too here, Plaintiffs asked for an extension, the Court granted the

extension, and Plaintiffs squandered it. *Id.* at *3. Their belated discovery requests are unenforceable. *Torres v. Trs. of St. Patrick's Cathedral*, No. 25 CIV. 1191 (PAE), 2026 WL 90017, at *1 (S.D.N.Y. Jan. 13, 2026) (finding requests "clearly untimely" where they were served on the 44th day of a 45-day extension).

Plaintiffs deny that they were dilatory, instead claiming that they "actively used the Court-ordered six-week period to review thousands of pages of production to isolate what gaps remained before locking executives into under-oath testimony." (ECF No. 113 at 2.) After all, "Plaintiffs could not safely or ethically proceed with noticing the depositions of chief corporate architects Thomas Shannon, Brett Parker, and Lev Ekster without first completing an exhaustive review of a massive, disorganized baseline production." (*Id.* at 1–2.)

That excuse is unavailing. Defendants' document production began on June 1, 2026 and was completed not long thereafter. (*See* ECF No. 99 at 2.) It does not take four months to review a few thousand pages. Indeed, based on Plaintiffs' prior submissions, it appears they already made substantial headway by the time they filed their first motion for an extension on July 22, 2026. (*See id.* (noting that "a reasonable amount of time was required to review the 8,000 pages produced").) Even if they had not, they certainly could have completed their review by August 27, 2026, when this Court granted the extension, or shortly thereafter. And even if somehow Plaintiffs really could not complete their review, that still would not justify their delay in noticing depositions. They should have reached out to defense counsel shortly after the Court granted the extension, and then, in tandem with coordinating dates, continued reviewing documents. There was no reason to wait to *finish* their document review before *starting* to

schedule depositions. Accordingly, Plaintiffs have lost the opportunity to obtain the additional discovery they sought.[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel (ECF No. 110) is **DENIED**, and Defendants' motion for a protective order (ECF No. 111) is **GRANTED**.

Dated: Central Islip, New York
October 30, 2026

**S O O R D E R E D:**

/S/ James M. Wicks
JAMES M. WICKS
United States Magistrate Judge

[3] Because the Court grants Defendants' motion on timeliness grounds, the Court need not consider Defendants' alternative argument based on relevancy. (ECF No. 111 at 4–5.)